**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DANIEL ZAGORIA, On Behalf of Himself And All Others Similarly Situated, | **Case No.:**   **1:20-cv-3610** |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **Jury Trial Demanded** |
| NEW YORK UNIVERSITY, | |
| Defendant. | |

Plaintiff Daniel Zagoria ("Plaintiff"), on behalf of himself and all others similarly situated, invokes the Court's jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), and complains against Defendant New York University ("NYU") as follows:

## NATURE OF THE ACTION

1.   This is an action for breach of contract, unjust enrichment, and for recovery under the law of money had and received brought by Plaintiff on behalf of himself and all other similar situated students enrolled at NYU who did not enroll at NYU's online degree programs.  NYU has shut down its campus facilities, discontinued all on-campus in-classroom instruction of any courses at any of NYU's campuses and schools, and instead moved all instruction to remote online media.  While these actions are attributable to the COVID 19 pandemic and the shelter-in-place order in effect in the State of New York, NYU has continued holding Plaintiff and all students liable for the full pre-shutdown tuition and fee obligations.   This, despite the fact that NYU is unable to provide, and is not providing, the services or facilities that the students bargained for and are being billed for as part of their tuition and fees—fees and tuition costs that easily amount to thousands of dollars per student.

2.   While NYU may not bear culpability for the campus closures or the inability to provide any classroom instruction, neither do the enrolled students.  Yet, while NYU has used the current COVID 19 shutdown circumstances to excuse NYU's duty to fully perform the obligations of its bargain with its students, NYU continues to demand that all students fully perform their contractual bargain to pay in full all tuition and fees without any reduction for NYU's lack of full performance.  This is contrary to ordinary tenets of contract law.  And this indefensible breach is saddling wholly innocent students with mounting debt as a result of having to pay tuition and fees for services they are not receiving and facilities that are not being

provided.  In so acting, NYU is unjustly enriching itself at the expense of Plaintiff and the members of the class he seeks to represent.

3.      The relationship between a matriculated student and NYU is contractual. Separately from any express enrollment contract that may exist between the students and NYU, New York law recognizes an implied-in-fact contract brought about by the conduct of the parties during the students' enrollment.

4.      NYU has breached its contractual duties by ceasing all in-classroom instruction at all campuses and shutting down campus facilities while continuing to assess and collect full tuition and fee payment from Plaintiff and the class members as if full performance had been rendered to them.  Undoubtedly, however, the performance now being provided by NYU and NYU's campus facilities are of a different nature and of lesser value than what was bargained for at the time of Plaintiff's and the class members' enrollment.

5.      Plaintiff therefore brings this action on behalf of himself and all other similarly situated students of NYU to seek redress for NYU's breach of contract, unjust enrichment, and acts amounting to the action of money had and received.

## PARTIES AND JURISDICTION

6.      Plaintiff Daniel Zagoria is a resident of New York and attends NYU.  He is scheduled to graduate at the end of the summer semester of 2020 with a Master of Science Degree in Real Estate Investment and Finance.  For the 2019-2020 academic year, NYU charged tuition in excess of $2,000 per credit unit.   This tuition amount does not include the myriad of fees charged by NYU—including fees allocated to use of campus facilities—which for the 2019-2020 academic year totaled an additional amount well over $1,000.   Moreover, Plaintiff paid additional fees to attend a Global Real Estate Markets course, which was described as a field

course involving visits to Paris and Amsterdam to directly survey real estate in those locales.
That course never was offered in that manner; instead of visiting real estate properties across the
globe, the entire course was moved to remote video instruction.  So too, the other courses in
Plaintiff's program have been all moved to remote distance learning, thereby depriving Plaintiff
and his classmates of the benefit from the live in-classroom instruction that they bargained for,
including direct interaction and networking with the professors which was a major selling point
of these course offerings and programs.

7.    Defendant New York University is a non-profit entity organized under the laws of the
State of New York having its principal place of business in New York City.

8.    The Court has personal jurisdiction over Defendant NYU because it is
headquartered in the State of New York and conducts business in the State in the form of
operating a university at its New York City campus.

9.    Venue is proper in this judicial district because NYU is headquartered in this judicial
district, its campuses are located in New York City within this judicial district, and the acts
complained of occurred within this judicial district.   Venue in this court therefore is proper
under 28 U.S.C. §1391.

10.    This Court has subject-matter jurisdiction over all counts of this Class Action
Complaint under the Class Action Fairness Act because Plaintiff seeks to represent a class whose
members are of worldwide citizenship (*i.e.,* they are students having citizenship of their
respective various states of residency and also international students who are citizens of their
respective foreign countries of origin) and Defendant NYU is a New York citizen for purposes of
the federal diversity statute.  The amount in controversy exceeds $5 million exclusive of costs,

interest and attorneys' fees.  This Court therefore has subject-matter jurisdiction under 28 U.S.C. § 1332(d) over all counts alleged in this Class Action Complaint.

## FACTUAL ALLEGATIONS

11.    Plaintiff Daniel Zagoria is a graduate student at NYU and is enrolled in a Master's Degree program in Real Estate Investment and Finance.  He has been enrolled at NYU since the 2018 academic year and is scheduled to graduate with a Master of Science degree in 2020.   For the current 2019-2020 academic year, NYU charged tuition in an amount exceeding $2,000 per credit unit.  Given the number of years and credits required to complete NYU's graduate degree (or any undergraduate degree at NYU, for that matter) a student is expected to incur tens of thousands of dollars or more in tuition and fees during their enrollment at NYU.

**NYU Touted And Emphasized The Importance Of Its Schools' Facilities And In-Person Instruction**

12.    The marketing and recruitment materials for NYU's Schack Institute of Real Estate within NYU's School of Professional Studies where Plaintiff is enrolled went to great lengths to highlight and tout the benefits of the in-classroom in-person teaching experience of its Real Estate program.  Describing these benefits, the school's website specifically pointed out this benefit:

> **Networking**
>
> Direct engagement with industry, through the nation's leading conferences, regular speakers, internships, and more.

https://www.sps.nyu.edu/homepage/academics/divisions-and-departments/schack-institute-of-real-estate.html (last visited May 6, 2020) (attached hereto as Exhibit 1 to Class Action Complaint).

13.    And aside from the networking benefit touted by NYU for its Real Estate program

within the Schack Institute, the specific coursework that Plaintiff signed up for also called for in-person instruction and field visits across the globe.  In this regard, Plaintiff's Global Real Estate Markets course was to include visits to Paris and Amsterdam to survey actual real estate properties in those cities.  None of that has occurred.  NYU cancelled the site visits, moved all of its instruction online, and announced that it was retooling the course to offer such "visits" by way of video instead.  Students' complaints about the different nature and quality of the course offering than what they had bargained for have gone unanswered.  NYU has refused to make any tuition accommodation or provide any reimbursement despite plainly not providing the services and instruction for which students bargained (it has merely refunded some of the travel-related costs for the travel that the course entailed but did not happen, without refunding any tuition).

14.     Of course, NYU's representations as to the benefits of its campus facilities and in-person instruction were not limited merely to those it made in connection with Plaintiff's graduate program in Real Estate Investment.  Instead, NYU touted the benefits of its facilities and campus instruction across the board to students and prospective students in all its schools and programs.  For example, with respect to NYU's Tandon School of Engineering, NYU's website informed students and prospective applicants about the state-of-the-art laboratory facilities that students could avail themselves upon enrolling at NYU's engineering school:

> **Why NYU Tandon?**
>
> Our reputation as a global education leader with a world-class faculty and state-of-the-art labs producing groundbreaking research make the School of Engineering the perfect place to pursue your degree.

https://engineering.nyu.edu/admissions/why-nyu-tandon#chapter-id-23766 (last visited May 6, 2020) (attached hereto as Exhibit 2 to Class Action Complaint).

15.   NYU makes similar representations about its College of Arts and Sciences.  For

example, within its webpage for the science program forming part of NYU's College of Arts and Sciences, NYU presents the breadth of its lab and center facilities, listing over a dozen "Interdisciplinary Centers" as facilities furthering the students' instruction: the Applied Mathematics Laboratory; the Biomedical Chemistry Institute; the Center for Atmosphere Ocean Science; the Center for Brain Imaging; Center for Cosmology and Particle Physics; the Center for Development Genetics; the Center for Genomics and Systems Biology; the Center for Soft Matter Research; the Center for Study of Human Origins; the Emotional Brain Institute; the Institute for Study of Decision Making; the Materials Research Science and Engineering Center; the Molecular Design Institute; and the Sloan-Swartz Center for Theoretical Visual Neuroscience.  *See* https://as.nyu.edu/science/centers.html (last visited May 6, 2020) (attached hereto as Exhibit 3 to Class Action Complaint).

16.   None of these Centers or Institutes—key facilities that NYU used to market the value of the science education afforded to students at the College of Arts and Sciences—actually is open or available for use to the students.  Despite this, NYU continues to charge and demand tuition as though it were actually making these facilities and instruction therein available for students.

17.   NYU's marketing materials' emphasis on the in-classroom instruction and campus facilities spanned the gamut of its educational offerings.  This marketing campaign has not been limited to the technological or scientific disciplines or courses.  NYU has similarly touted the benefits of its classroom teaching and facilities when marketing its arts-based curricula and programs.  By way of example, in its website description for NYU's Institute of Fine Arts, which offers graduate degree programs in various fine arts disciplines, NYU made the following

representation:

**In the classroom and in the field**

Institute students are taught in small groups. They have opportunities to take classes in New York City's museums and galleries.

Institute students have full access to the resources of NYU and to graduate classes taught throughout the University.

Unique in art history and conservation programs, all Institute students take courses together and in both fields.

Institute students can participate in archaeological excavations at major monumental sites in Egypt, Greece, Italy, and Turkey.

Institute students can benefit from funded travel opportunities, in group trips with professors and for independent experience.

http://www.nyu.edu/gsas/dept/fineart/prospective/index.htm (last visited May 7, 2020) (attached hereto as Exhibit 4 to Class Action Complaint).

18.    The reality, however, is that contrary to the foregoing representation, NYU's Institute of Fine Arts is not offering any such instruction nor any access to the facilities or travel opportunities that NYU marketed as key benefits of its program.  Instead, students at NYU's Institute of Fine Arts have seen all the Institute's facilities closed and have been relegated to instruction only through video remote learning.  Despite this, NYU is charging and continues to demand full tuition and fees as though such instruction and facilities were being made available.

19.    In a similar vein, NYU's marketing materials for its Stern School of Business programs also extolled the advantages offered specifically by its classroom instruction. Describing one of its most popular undergraduate programs—the Entertainment, Media and Technology program at NYU's Stern School of Business—NYU specifically highlighted the program's classroom experience coupled with the ability to participate in in-person field events:

The Stern EMT Program is unique within a business school, for it focuses on both the business and content aspects of the entertainment industries. The program offers students a range of different courses to choose from, depending on their career needs and interests.

One of the more innovative courses within the EMT Program is called 'Craft and Commerce of Cinema: Tribeca Film Festival.' It involves classroom instruction, as well as access to the Tribeca Film Festival held every spring in Lower Manhattan. For a glimpse of this course, please visit: NYU Stern and the Tribeca Film Festival.

https://www.stern.nyu.edu/experience-stern/about/departments-centers-initiatives/interdisciplinary-initiatives/entertainment-media-and-technology-program/academic-programs/undergraduate (last visited May 7, 2020) (attached hereto as Exhibit 5 to Class Action Complaint) (emphasis added).

20.    Despite these representations about the value of its "classroom instruction," the fact is that no classroom instruction is being provided by NYU's Stern School of Business.  Instead, as with all other NYU schools, all courses have been moved to a remote learning video format. Despite this, NYU continues to charge and demand full tuition and fees as if the promised in-classroom instruction were actually being offered.

**NYU Now Recants And Implicitly Contends Online Distance Learning Without Campus Facilities Provides The Same Learning Experience And Value As Its On-Campus Classroom Instruction, Such That NYU Refuses To Provide *Any* Tuition Reimbursement.**

21.    Despite extolling the value and benefits of its in-classroom instruction throughout its marketing materials, now that NYU is unable to deliver any of this on-campus classroom instruction, it has recanted.  NYU now has implicitly taken the position that distance remote learning by video is of the same value, nature and quality as the on-campus classroom instruction it consistently highlighted as a key benefit of education at NYU.  NYU therefore recently announced the following in response to student inquiries and demands for some tuition reimbursement:

**Will my tuition be refunded or discounted for the Spring semester?**

As classes continue to be conducted remotely, tuition will not be refunded.

**Will Registration and Services Fees be refunded?**

As classes continue to be conducted remotely, University Registration and Services Fees will not be refunded.

**Am I eligible for a refund if I withdraw from my Spring 2020 classes?**

Students withdrawing from classes after February 24, 2020 are not eligible for a tuition refund.

https://www.nyu.edu/life/safety-health-wellness/coronavirus-information/information-for-students.html#finop (last visited May 7, 2020) (attached hereto as Exhibit 6 to Class Action Complaint).

**NYU Students Publicly Decry The Difference In Quality And Value Of The Current "Remote Distance Learning" Instruction Provided By NYU.**

22.     That the putative class member students are not receiving the benefit of the bargain for which they contracted when they agreed to enroll at NYU for this academic year is independently evidenced by an online petition started by a NYU student.   That petition entitled, "*Partial Refund on NYU Tuition*" is available online at https://www.change.org/p/nyu-students-request-partial-refund-from-nyu (last visited May 7, 2020).  The petition demands a partial tuition and fee refund for NYU students for the Spring 2020 semester, as it maintains students are being charged fees and tuition for facilities and instruction they are not receiving.

23.     Within days of its posting, the online petition received over 11,000 signatures in support, a majority coming from NYU students.  Students who signed or joined the petition were also given the opportunity to post an explanation why they did so.  These postings, a sample of which are quoted below, are revealing:

a.  "I paid 40000 dollars for this semester. Literally. I don't think it's fair that I don't get the access to equipment, facilities, and community and still have to pay full tuition." (posted by Amrut Ayyala);

b.  "I didn't pay to attend Zoom" (posted by Elain Frousios);

c.  "I am in Tisch and the hands-on training and connections I have paid for are not going to be the same on zoom" (posted by Sara Rhuda)

d.  "I have not paid this amount of money just to be sitting in front of my computer screen and not being able to fully utilize what NYU has to [sic] over. We are only getting a small portion for the full price." (posted by Joseph Kim);

e.  "I helped my granddaughter spend her spring semester in Paris as an NYU student studying art history. The virus closed The Louvre and public places and NYU sent students home to distance learn with different instructors and less vigorous class material & resources for this field of study." (posted by Dee Searing);

f.  "My son did not complete even half of the semester. Buildings are locked and he is unable to complete his 6 hours of daily practice, lessons, etc as he cannot find a place to do so." (posted by Katherine Short);

g.  "i find it insane that more people has not petitioned for a refund. why are we paying more than 35k for something that i could have learned on youtube? at the very least they should refund us half of the tuition for the semester. and make summer classes heavily discounted, since they are going to be on zoom as well." (posted by Zhen Qi Teo);

h.  "i didn't sign up for online classes." (posted by Katarina Nowack);

i.  "I am a international grad student and I didn't pay this much for an online class. I have a student loan to pay at 14%." (posted by Sumeet Kumar);

j.  "Personally, I didn't pay for the program to attend Zoom and not get the benefit of networking and using the facilities." (posted by Marc Hershberg);

k.  "Because zoom university is not worth 50k a year." (posted by Mariana Acosta);

l.  "An NYU education in art history is an object-based program which also includes access to academic lectures, events, museum visits, unlimited library access, hands-on access to our conservation center labs, close mentoring from professors, etc., which zoom alone cannot replace." (posted by Maria Barney);

m.  "I am 19 years old and financially independent ... I did not apply to an online school, even though it would have been cheaper. I applied to NYU for the

chance to experience NYU campus life and connect with professors and other students in person, not through digital means.." (posted by Jeniffer Rodriguez);

n.   "NYU needs to be aware that they are hurting their students by passively observing the situation they're all in financially. I, like many other students, go to their laptop every day rather than to class in-person and now learn a curriculum that was drastically cut down and changed to fit the world's situation. This is not what we are paying objectively large amounts of money to go to this school for. NYU, please take this petition into consideration." (posted by Alex Moudgil);

o.   "No matter how much NYU insists to the contrary, it is simply not possible to provide a full performing arts education via Zoom." (posted by Molly Riddick);

p.   "I'm signing because being a performance major means that not only am I not getting the same standard of education promised, a lot of my classes have been cancelled due to being not fit to an online environment. My senior recital has been cancelled as well as industry showcase which is a part of the reason I chose to go to NYU in the first place" (posted by Madison Ligtermoet);

q.   "NYU Silver School of Social Work officially cancelled my field placement (a 4-credit course) with 3 weeks to terminate remotely and compete any remote assignments. The last month of school I will not have the minimum 21 hours/week of hands on learning I paid for. Not even anything virtual for the last 1/4 of the semester. AND I already am missing out on other things I paid for including NYU Health Insurance, access to facilities and events, and dining dollars for campus restaurants. We deserve to be reimbursed and compensated." (posted by Laura Smith);

r.   "I am an international student. Cancelling the in-person classes makes me feel that I am doing a phantom American education. Not enough interaction with prof and my classmates. And the evaluation of each course will be compromised." (posted by Wenyuan Li);

s.   "Zoom is not adequate for music majors' courses." (posted by Kayla Lewis);

t.   "As a Tisch Drama student, I feel I have been robbed. I appreciate the school's efforts to make zoom "work" but drama cannot be taught as effectively over zoom. IT CANT! The very idea of virtual classes goes against so much of what we work on with scene partners…" (posted by Sofia Mahdavi);

u.   "Most of my courses are reliant upon me being in class. I can't film in my filmmaking class; I can't pitch in my producing class; I can't argue in a mock trial in my law class; I have to present my colloquium, which is supposed to be the culmination of my education, on Zoom. This is not the same standard of education my parents and I paid for unfortunately" (posted by Ella Freudenberger);

v. "Remote class is nothing like the normal class!!!!" (posted by Yijia Lu);

w. "I did not pay an absurd amount of money to sit in my own home and watch my teacher present on my laptop :))))." (posted by Kate Pina);

x. "Losing the collaborative learning environment - as well as access to facilities and equipment - means getting far less out of my education this semester than I could have." (posted by Jordan Rickman);

y. "Some classes simply can't be done online. ITP being a production heavy and feedback focused program, going virtual takes away an essential part of our learning experience. Furthermore a lack of access to equipment from both the ER and shop (that we have also paid additional costs for) hinders students ability to get the full education they initially signed up for. For example, a production class that I now have to take virtually, forces students to watch our professor use equipment that we cannot use ourselves. At that point, I'm better off watching YouTube tutorials online - which are completely free. A lot of us have taken on debt and risks in order to be here. NYU should acknowledge that while we are forced with no choice but to continue virtually, we should account for the unfair consequences and burden this has placed on the students." (posted by Anna Gudnason);

z. "I paid over $11k in grad school tuition for 6 credits, which included a lab. Now because of the school closing, we're losing out on more than half the semester worth of lab sessions which teach you invaluable technical skills. I believe students should be compensated with a refund for these missed sessions, as we never fully got to utilize these facilities that we already paid for." (posted by Notoya Arthur).

24.     The foregoing is just an illustrative sample of students' postings.  Countless postings expressing similar sentiments by NYU students are online expressing the view that neither the online instruction nor the lack of campus facilities equate with the bargained for service and instruction that students signed up for when they enrolled at NYU.  NYU changed the bargain but has refused to make any refund of tuition or fees to the aggrieved students.

**Professors and Deans Publicly Agree That "Remote Distance Learning" Is Not Equivalent To, And Less Valuable Than, Traditional On-Campus University Education.**

25.     These sentiments are hardly surprising.  College educators agree with the obvious proposition that online education devoid of campus interaction and facilities plainly is not equivalent in nature or value to the traditional in-classroom on-campus education for which NYU

students matriculated and paid.  This much was confirmed in a recent April 26, 2020 Op-Ed in the New York Times in which Brown University President, Christina Paxson, pushed for a return to campus instruction in the fall, "invoking all that makes in-person education so valuable: the fierce intellectual debates that just aren't the same on Zoom, the research opportunities in university laboratories and libraries, and the personal interactions among students with different perspectives and life experiences."

26.     Other education experts are even more blunt.  Professor Jonathan Zimmerman who specializes in the history of education at the University of Pennsylvania, was quoted in a recent Philadelphia Inquirer op-ed: "Most online instruction isn't as effective as the traditional kind, which is why elite schools have consistently resisted it."

### CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(3) and 23(b)(2) on behalf of himself and all other similarly situated students enrolled at NYU who pay or are obligated to pay any tuition or fees and any students enrolled at NYU in any future summer session or semester in which NYU does not provide access to its campus facilities or on-campus instruction yet continues to charge full tuition and fees without any proration.  Excluded from the class are students who expressly registered for online courses at NYU before the commencement of the Spring 2020 semester.  Also excluded from the class definition are all judicial officers assigned to this case and their staff.

28.     Class certification is proper because the question raised by this complaint is one of a common or general interest affecting numerous persons, such that it is impracticable to bring them all before the court.

29.     The class is sufficiently numerous, as NYU boasts an enrollment of approximately

51,000 students.  The overwhelming majority of these students pay or are obligated to pay at least some portion of tuition or fees that are at issue in this litigation.

30.     Plaintiff and his counsel are adequate representatives of the interests of the putative class.  Plaintiff is a student at NYU who is being charged tuition or fees as part of his enrollment. He did not sign up for online instruction.  He contends that NYU has breached its agreement with students by continuing to charge and demand full tuition and fees despite NYU not providing any in-person classroom instruction at any of its campuses and not making campus facilities available for students.

31.     Plaintiff has retained counsel experienced in class action litigation to litigate and represent the interests of the class.

32.     Plaintiff's claims are typical of the claims being raised on behalf of the absent class members.  Like all absent class members, Plaintiff seeks redress for NYU's failure to provide any in-person campus instruction or campus facilities while continuing to charge full tuition and fees.  The claims Plaintiff asserts are the same and co-extensive as the claims raised on behalf of the absent class members.

33.     Plaintiff's complaint raises questions of fact or law common to the class that predominate over questions affecting only individual class members.    Among these predominating common questions are:

> a.   Whether the relationship between NYU and students matriculated at NYU is contractual in nature;
>
> b.   Whether NYU and its member schools ceased providing in-person classroom instruction across the board;

c.   Whether NYU and its member schools deprived class members of the use and enjoyment of campus facilities;

d.   Whether the value of online instruction is not equivalent to the value of the in-person classroom instruction that class members bargain for and are for which they were and are continuing to be charged;

e.   Whether the value of campus facilities for which class members are still being charged has been lessened as a result of NYU shutting down the campus facilities;

f.   Whether the action of NYU in continuing to charge and demand full tuition and fees has harmed the class members;

g.   Whether a method of computing classwide damages or restitution exist;

h.   Whether class members are entitled to declaratory or injunctive relief against NYU;

i.   Whether NYU has unjustly enriched itself at the expense of the class members.

34.   Classwide litigation provides a superior means of adjudicating this dispute over individual litigation.  The cost of litigating an individual student's claim for partial refund of tuition or fees make such individual litigation unfeasible given the costs of bringing such an action relative to the amount of damages that could be recovered in an individual action.  Further, individual litigation risks the prospect of inconsistent rulings that would unsettle the legal obligations or expectations of NYU and class members.

35.   The class is ascertainable, as NYU maintains rosters of all its attending students and their financial obligations and payments.

36.     In the event that the Court were to find the proposed Class definition inadequate in any way, Plaintiff respectfully prays for certification of any other alternative, narrower class definition or for the certification of subclasses, as appropriate.  Plaintiff reserves the right to modify the class definition and to define subclasses as case circumstances warrant.

## FIRST CAUSE OF ACTION

(Breach of Contract)

37.     Plaintiff realleges and incorporates by reference all previous allegations, as though set forth in full herein.

38.      By the act of matriculation, together with payment of required fees, a contract between Plaintiff and the absent class members on the one hand and, on the other hand, NYU was created.  Thus, in addition to any enrollment contract that may exist between NYU and the Plaintiff and class members, an implied-in-fact contract independently exists between the parties as a matter of New York law.

39.     A material component of this contractual relationship—whether documented in an express enrollment contract or in an implied-in-fact contract whose terms are defined by the parties' conduct is that instruction by NYU to the class members would not take place through online remote learning but would occur at NYU's campus classrooms and facilities.  This is confirmed by the fact that NYU does offer prospective students an option to matriculate in online instruction for certain courses and programs offered in an online format from the outset.  But to do so, a student must specifically elect to apply for, and matriculate in, an online course or program.  The class members elected *not* to apply for or matriculate in online courses or programs offered by NYU, thereby confirming that what they bargained for was in-classroom instruction.

18

40.    By ceasing all in-person classroom instruction, relegating Plaintiff and the class members to online instruction only, and shutting off campus facilities to Plaintiff and the class members, NYU has failed to provide the services that Plaintiff bargained for in entering his contractual relationship with NYU.

41.    Although NYU may not bear culpability for the campus closures or the inability to provide any classroom instruction, neither do the enrolled students.  Yet, while NYU has used the current COVID 19 shutdown circumstances to excuse its obligation to fully perform the obligations of its bargain with its students, NYU continues to demand that all students fully perform their contractual bargain to pay in full all tuition and fees without any reduction for NYU's lack of full performance.  This is contrary to ordinary tenets of contract law.

42.    The nature of the instruction provided by NYU at the time Plaintiff and the class members enrolled (*i.e.,* in-person classroom instruction) as well as the campus facilities offered by NYU across its schools and campuses were and are material terms of the bargain and contractual relationship between students and NYU.

43.    NYU's failure to provide any in-person classroom instruction and its shutdown of campus facilities amount to a material breach of the contract.

44.    As a result of NYU's material breach—regardless of whether NYU's performance may be excused—Plaintiff and the class members are not to be held liable to continue to perform their contractual obligations.  That is, regardless of whether NYU's failure to offer in-person classroom instruction or to provide campus facilities is to be excused as a result of the COVID 19 pandemic, NYU cannot continue to demand full payment of tuition and fees from Plaintiff and class members for services and facilities that NYU indisputably has failed and is failing to provide.

45.    NYU's breach and continued demand for full payment from Plaintiff and the absent class members are the proximate causes of Plaintiff's and the class members' injury.

46.    Plaintiff and the class members have all been harmed as a direct, foreseeable, and proximate result of NYU's actions because Plaintiff and the class members are being charged full tuition and fees for services that NYU is not providing.

47.    Plaintiff and class members are entitled to an award of money damages or partial restitution in an amount to be determined at trial as redress for NYU's breach.  Plaintiff prays for the establishment of a Court-ordered and supervised common fund from which the claims of affected class members may be paid and the attorneys' fees and costs of suit expended by class counsel, as approved by the Court, may be awarded and reimbursed.

48.    NYU continues to insist that full tuition and fees are due from Plaintiff and the students despite NYU's failure to fully perform their contractual obligations.  Unless restrained by way of injunctive relief, NYU's conduct is reasonably likely to lead to irreparable harm.  Plaintiff and the class members are entitled to and do hereby pray for injunctive relief to enjoin NYU's continued conduct.

49.    NYU continues to falsely represent on its website that it offers campus facilities with significant benefit and value to students and continues to falsely represent the value of its in-person on-campus classes.  Unless restrained by way of injunctive relief, NYU's conduct is reasonably likely to lead to irreparable harm.  Plaintiff and the class members are entitled to and do hereby pray for injunctive relief to enjoin NYU's continued conduct.

50.    As the online petition referenced in paragraph 23 s*upra* makes clear, NYU evidently disputes its obligation to refund any tuition or fees to Plaintiff or any class member.  Given this dispute and the contractual relationship between the parties, Plaintiff and the class

members are entitled to and do hereby pray for declaratory relief to have the Court declare the parties' respective obligations.

## COUNT II

### (Unjust Enrichment)

51.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-36 as though set forth in full herein.

52.    Plaintiff and the class members conveyed money to NYU in the form of tuition and fees for on-campus instruction and facilities that NYU did not provide and is not providing. NYU has continued to retain these monies, despite not providing the on-campus instruction or facilities

53.    Through this conduct, NYU has been unjustly enriched at the expense of Plaintiff and the class members.

54.    As between the two parties (NYU and the class members), it would be inequitable to permit NYU to fully retain all the benefits conferred upon it by Plaintiff and the class members in the form of tuition and fees paid.

55.     Plaintiff and the class members are entitled to and do hereby pray for an order of partial restitution as redress for NYU's unjust enrichment.  Plaintiff prays for the establishment of a Court-ordered and supervised common fund from which the claims of affected class members may be paid and the attorneys' fees and costs of suit expended by class counsel, as approved by the Court, may be awarded and reimbursed.

56.     NYU continues to falsely represent on its website that it offers campus facilities with significant benefit and value to students and continues to falsely represent the value of its in-person on-campus classes (false because such on-campus instruction is not being offered). NYU also continues to defy and deny any requests for partial tuition or fee reimbursement,

claiming falsely that it is offering the same services as had been bargained for by Plaintiff and the class members.   Thus, NYU is continuing to demand full tuition and fees even when it already has announced it will not be providing any on-campus instruction for the summer sessions and is uncertain whether it will do so for the Fall 2020 semester. Unless restrained by way of injunctive relief, NYU's conduct is reasonably likely to lead to irreparable harm. Plaintiff and the class members are entitled to and do hereby pray for injunctive relief to enjoin NYU's continued conduct.

## COUNT III
**(Money Had And Received)**

57.    Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-36 as though set forth in full herein.

58.    NYU received money from Plaintiff and the class members in the form of tuition and fee payments.

59.    This money received by NYU from Plaintiff and the class members was supposed to be used by NYU for the benefit of the Plaintiff and class members; namely, it was supposed to be used for NYU's provision of on-campus university instruction and campus facilities to Plaintiff and the class members.

60.    NYU received and pocketed the money provided by Plaintiff and the class members in the form of tuition and fee payments but has not provided any campus facilities or on-campus instruction.  NYU, therefore, is indebted to Plaintiff and the class members for this failure to provide on-campus instruction and campus facilities.

61.    Plaintiff and the class members hereby pray for the full panoply of remedies

available as redress for a claim of money had and received, including: a constructive trust over

such monies had and received for which the benefit was not provided; restitution or

disgorgement, as appropriate; and declaratory and injunctive relief.

## <u>PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL</u>

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant NYU as

follows:

1.    For an order certifying this action as a class action as defined herein, appointing

Plaintiff and his counsel as class representatives, and directing notice be disseminated to the

absent class members;

2.    For judgment in favor of Plaintiff and the class members and against Defendant NYU

on all counts and claims for relief;

3.    For damages and/or restitution awarded to the class against Defendant NYU in an

amount to be determined at trial;

4.    For the establishment of a Court-ordered and supervised common fund to be funded by

Defendant NYU and from which: claims of all eligible class members will be paid; attorneys'

fees awarded to Class counsel will be paid; costs of suit approved by the Court and incurred by

Class counsel will be reimbursed; and, any award of interest will be disbursed;

5.    For interest as permitted by law;

6.    For an award of attorneys' fees;

7.    For costs of suit;

8.    For declaratory relief to have the Court declare the obligations of the parties;

9.    For injunctive relief to enjoin Defendant's ongoing conduct; and,

10.   For such other and future relief as this Court deems just and proper.

Plaintiff demands a trial by jury on all counts and claims so triable.

Dated: May 8, 2020                    Respectfully submitted,

                                      THE MEHDI FIRM

                                      /s/ Azra Mehdi
                                      Azra Mehdi, Esq.

                                      Azra Mehdi (AM-9719)
                                      **THE MEHDI FIRM, P.C.**
                                      347 5th Avenue, Suite 1402
                                      New York, NY 10016
                                      Telephone: (415) 293-8039
                                      e-mail: azram@themehdifirm.com

                                      Roy A. Katriel, Esq. (*pro hac vice* to be filed)
                                      **THE KATRIEL LAW FIRM, P.C.**
                                      2262 Carmel Valley Road, Suite 201
                                      Del Mar, CA  92014
                                      Telephone: (619) 363-3333
                                      e-mail: rak@katriellaw.com

                                      Ralph B. Kalfayan, Esq. (*pro hac vice* to be filed)
                                      e-mail: ralph@rbk-law.com
                                      Veneeta Jaswal, Esq. (*pro hav vice* to be filed)
                                      e-mail: veneeta@rbk-law.com
                                      **THE KALFAYAN LAW FIRM, APC**
                                      2262 Carmel Valley Road, Suite 200
                                      Del Mar, CA 92014
                                      Telephone: (619) 232-0331
                                      Facsimile: (619) 232-4019

                                      *Counsel for Plaintiff Daniel Zagoria and the*
                                      *Putative Class*