**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

DANIEL ZAGORIA, on behalf of himself and
all others similarly situated,

        Plaintiff,

        v.

NEW YORK UNIVERSITY,

        Defendant.

Case No. 1:20-cv-3610-GBD

**DEFENDANT NEW YORK UNIVERSITY'S MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF DANIEL ZAGORIA'S
<u>MOTION FOR CONSOLIDATION</u>**

**DLA PIPER LLP (US)**

Brian S. Kaplan
Keara M. Gordon
Colleen Carey Gulliver
Rachael C. Kessler
1251 Avenue of the Americas
New York, New York 10020-1104
Phone: (212) 335-4500
Facsimile: (212) 335-4501
brian.kaplan@us.dlapiper.com
keara.gordon@us.dlapiper.com
colleen.gulliver@us.dlapiper.com
rachael.kessler@us.dlapiper.com

*Attorneys for Defendant New York
University*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 4

   A.   The Covid-19 Pandemic Forces NYU's Transition to Remote Learning. ............................ 4

   B.   NYU Refunded Numerous Charges and Provided Emergency Aid to Students. ............... 4

   C.   The Plaintiffs and Their Varying Complaints. .................................................................... 5

      1.   *Zagoria* ............................................................................................................... 5

      2.   *Rynasko* ............................................................................................................. 6

      3.   *Morales* .............................................................................................................. 8

      4.   *Romankow* ......................................................................................................... 9

ARGUMENT ...................................................................................................................... 10

I.    LEGAL STANDARD ................................................................................................. 10

II.   THE COURT SHOULD NOT CONSOLIDATE THE *RYNASKO*, *ZAGORIA*, *MORALES,*
AND *ROMANKOW* ACTIONS. ............................................................................. 11

   A.   Individualized Issues of Fact Exist. ................................................................................ 11

   B.   Different Questions of Law Could Negate Consolidation. ............................................. 13

   C.   Consolidation Will Not Serve Judicial Economy. .......................................................... 17

   D.   Consolidation Will Confuse the Issues and Prejudice NYU. ......................................... 18

CONCLUSION ................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Page(s)**

*In re China XD Plastics Co. Limited Sec. Litig.*,
  2016 WL 1241522 (S.D.N.Y. Mar. 23, 2016) ........................................................................17

*CIS Commc'ns, LLC v. Republic Servs., Inc.*,
  2019 WL 2075892 (E.D. Mo. May 10, 2019) ........................................................................15

*Flintkote Co. v. Allis-Chalmers Corp.*,
  73 F.R.D. 463 (S.D.N.Y. 1977) .............................................................................3, 15, 16, 19

*Jakobsen v. Aphria, Inc.*,
  2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) ........................................................................17

*Kamdem-Ouaffo v. Pepsico, Inc.*,
  314 F.R.D. 130 (S.D.N.Y. 2016) ...........................................................................................10

*KGK Jewelry LLC v. ESDNetwork*,
  2014 WL 7333291(S.D.N.Y. Dec. 24, 2014) ............................................................10, 11, 19

*Klimaski v. Parexel Intern.*,
  2005 WL 857350 (E.D. Pa. Apr. 4, 2005) .................................................................13, 18, 19

*Lehman Brothers Hold'gs Inc. v. Universal Am. Mortgage Co.*,
  2013 WL 12214041 (D. Col. Apr. 17, 2013)....................................................................15, 16

*Papaspiridakos v. Educ. Affiliates, Inc.*,
  2013 WL 4899136 (E.D.N.Y. Sept. 11, 2013) .......................................................................14

*Paynter v. NYU*,
  319 N.Y.S.2d 893 (1st Dep't 1971) ........................................................................................14

*Regents of the Univ. of Cal. v. Bakke*,
  438 U.S. 265 (1978).................................................................................................................14

*Smith v. Everson*,
  2007 WL 2294320 (E.D.N.Y. Aug. 6, 2007)............................................................11, 18, 19

**Statutes**

Family Educational Rights and Privacy Act of 1974......................................................................7

**Other Authorities**

Fed. R. Civ. P. 42(a) ....................................................................................................................10

# PRELIMINARY STATEMENT[1]

The global coronavirus disease 2019 ("Covid-19") has created unprecedented and unanticipated disruption and health risks across the world of a scale never before seen. New York City became the epicenter of the virus in the United States. As the crisis intensified, New York State ordered businesses, courts, government offices, colleges, universities, and all but "essential" operations shut and imposed lockdowns and stay-at-home restrictions that impacted millions of people. Following public health guidance and applicable government directives, and to protect the health and safety of its students, faculty, and staff, defendant New York University ("NYU") announced on March 16, 2020 that it had made the difficult but well-considered decision to transition completely from in-person teaching to remote classes for the remainder of the Spring 2020 semester.

Despite the myriad of challenges attendant to operating a university in the face of a global pandemic, NYU remained committed to delivering a world-class educational experience for its students. Professors continued to teach; students continued to learn. Professors rapidly adapted to conducting courses via video conferencing services: NYU held remote classes all across its 18 different schools and colleges, 147 centers and institutes, and over 230 areas of study. Students

---

[1] Defendant New York University's time to answer, move or otherwise respond to the complaint in this case, as well as in *Rynasko v. New York University*, No. 1:20-cv-3250-GBD (S.D.N.Y., filed Apr. 24, 2020) ("*Rynasko*"), *Morales v. New York University*, No. 1:20-cv-4418-GBD (S.D.N.Y., filed Jun. 9, 2020) ("*Morales*") and *Romankow v. New York University*, No. 1:20-cv-04616 (S.D.N.Y., filed Jun. 16, 2020) ("*Romankow*"), has not yet passed. As a result, counsel for NYU makes a limited appearance to oppose the motion to consolidate. NYU reserves its right to move to dismiss or otherwise respond to the merits of the complaints and does not waive, but explicitly reserves, all substantive rights and defenses.

performed Shakespeare, engaged in nursing clinical simulations, refined tap dance techniques, composed musical projects, and created self-sustaining gardens.  *See* Ex. 1.[2]  Every day, students continued to benefit from NYU's intellectually stimulating and creative learning environment, taught by the same teachers they selected, and surrounded (although virtually) by the same NYU community of faculty, staff, and alumni who continued to collaborate, connect, and create.

The NYU community was also at the forefront of combatting Covid-19 through innovation, scholarship, community service, public health guidance, research, and more.  Ex. 2.  NYU's efforts were extensive and varied, but included, for example, "[r]esearchers at the NYU Grossman School of Medicine and the Division of Infectious Diseases and Immunology and the Vaccine Center at NYU Langone Health partner[ing] with major pharmaceutical companies to launch two COVID-19-related clinical trials: one for the development of a vaccine and one to test an antibody therapy." *Id*.  During the spring, NYU continued to pay student workers, provided Covid-19-related grants to students, and maintained wellness and health services. Exs. 3, 4.  And, at the end of the semester, approximately 56,400 NYU students continued to make academic progress and approximately 13,000 earned their degrees.

Notwithstanding the effort required to transition to remote delivery of the educational experience, and ignoring the fact that this transition was not NYU's choice, but rather was mandated by truly extraordinary circumstances and government edicts that no one predicted, plaintiffs' lawyers rushed in and filed four different complaints against NYU (and over 100 other universities) attacking the decision to move to remote learning.  In this case, the plaintiff, Mr. Daniel Zagoria, is a graduate student enrolled in NYU's Schack Institute of Real Estate in the

---

[2] Exhibits cited "Ex." are attached to the Declaration of Keara M. Gordon, dated June 30, 2020. NYU has redacted certain personal information regarding the plaintiffs and other students from certain of these exhibits.  NYU can provide unredacted copies upon the Court's request.

School of Professional Studies ("Schack Institute").  Even though Mr. Zagoria completed his coursework for the Spring Semester – and voluntarily chose to enroll in remote learning classes over the Summer *knowing full well that they would be remote* – he now purports to demand every cent of his tuition money back.  And not only for him, but he purports to represent a putative class of NYU students who supposedly did not obtain the education they "bargained for at the time" upon their enrollment at some unspecified time in the past.  *See* Complaint (ECF No. 1) at ¶¶ 4, 27, 37-61 ("Zagoria Compl.").  Mr. Zagoria also alleges that NYU has failed to refund various fees even though, in truth, NYU has refunded room, board, meal plans, and a number of course, school-based, and study abroad fees to its students, including to Mr. Zagoria.

In the present Motion for Consolidation and Appointment of His Counsel as Interim Class Counsel (the "Motion"), Mr. Zagoria seeks consolidation of his case with two others filed against NYU, *Rynasko* and *Morales*, and presumably also with yet a fourth filed the same day as the Motion, *Romankow*.  As Mr. Zagoria highlights in his Motion, and as described further herein, however, there are substantial and material factual differences between the four cases.  For example, the five students involved were in different schools, different programs at different locations, different courses within NYU, enrolled in NYU at different times, had different expectations about their educational experience based on their particular programs, and were exposed to different admissions-related materials relevant to their particular school, programs, and courses at different times.  NYU has 18 different schools and colleges, each of which is unique, and many of which have different admissions processes (*see*, *e.g.*, Exs. 5, 6, 7, 8, 9), and describes itself differently to prospective students (*see*, *e.g.*, Exs. 10, 11, 12).  And consolidation is not necessary to conserve judicial resources.  While the separate cases can and should proceed on the same timeline to maximize efficiencies, motion practice and any discovery or trial (should any of

the actions survive a motion to dismiss, which NYU respectfully submits they should not), will necessarily require focus on the distinct and individualized circumstances of each plaintiff's enrollment and experiences with NYU, as well as the terms of each plaintiff's alleged contract (if any) with the university.

For these and other reasons as described more fully below, NYU respectfully requests that the Court deny Mr. Zagoria's request for consolidation.  NYU takes no position on the issue of which firm, if any, should serve as lead counsel.

## STATEMENT OF FACTS

### A.    The Covid-19 Pandemic Forces NYU's Transition to Remote Learning.

On March 7, 2020, Governor Andrew Cuomo declared a State of Emergency across New York state due to a rapid increase in confirmed cases of Covid-19.  Ex. 13.  A little more than a week later, March 16, 2020, Governor Cuomo issued an Executive Order closing all schools in the state, prohibiting all large gatherings, and shuttering bars and restaurants.  Exs. 14, 15.  That same day, consistent with the government orders and to protect the health and safety of its students and employees, NYU announced the difficult, but essential, decision to move all classes to remote learning for the duration of the semester, following its previous announcements of a temporary transition to remote learning.  Exs. 16, 17, 18.

### B.    NYU Refunded Numerous Charges and Provided Emergency Aid to Students.

NYU assesses tuition and fees based on a student's particular school within NYU, the program within that school, and the particular courses in which the student is enrolled.  *See Rynasko*, Compl. at ¶ 19 ("Fees paid by or on behalf of NYU students vary based on program of study"); *Zagoria*, Compl. at ¶ 6 (NYU fees are "myriad" and Zagoria paid "additional fees" for unique coursework); *Morales*, Compl. at ¶ 34 ("[NYU] assess[es] tuition and fees based on the

4

school or college within NYU, the program, and credit hours enrolled"); *Romankow*, Compl. at ¶ 24 ("Fees paid by or on behalf of NYU students vary based on program of study").  After suspending in-person instruction and closing virtually all of its residence halls, NYU refunded a pro rata amount for the costs of housing and dining services after the campus' closure.  Ex. 18. These housing and dining refunds alone totaled over $60 million.  Ex. 4.  Schools promptly began refunding certain activity fees, including to Mr. Zagoria (Ex. 19), including through evaluation of "dozens of individual school and course-based fees for the purpose of determining potential refunds, which are based on whether or not students received all or part of the services, supplies, or equipment associated with the fee."  Ex 20.  The percentage of the fees refunded as part of that review are described on NYU's website, a copy of which is attached as Exhibit 21.  Ex. 21.  And, as stated below in Section C, NYU provided relief and/or refunds to each of the students in these actions.  *See* Exs. 19, 22, 23, 24.  NYU also distributed over $4 million of emergency funding to assist students during the COVID-19 pandemic, including Mr. Zagoria, Ms. Morales, and Ms. Guidry.  Exs. 19, 22, 23.

Consistent with its policy that undergraduate and graduate students who remained enrolled in courses after February 24, 2020 are not eligible for a tuition refund (*see* Exs. 25, 26, 27), and consistent with the fact that students continued to receive the benefit of their courses through remote instruction, NYU has not refunded tuition.  *See* Ex. 3.

## C.  The Plaintiffs and Their Varying Complaints.

### 1.  *Zagoria*

Mr. Zagoria is a graduate student in the Schack Institute, which is a center within NYU's School of Professional Studies focused on research and education in the real estate field.  He enrolled in 2018 and is scheduled to graduate in 2020.  (Zagoria Compl at ¶ 11; Ex. 28).  He does not specify a particular contract with NYU that was supposedly breached, but, among other things,

he focuses his complaints on a Spring 2020 Global Real Estate Markets course that he alleges "was to include visits to Paris and Amsterdam to survey actual real estate properties in those cities," but Covid-19 precluded that travel.  Zagoria Compl at ¶ 13.  Although Mr. Zagoria admits that NYU refunded the unused activity fee related to travel (*id.*), he complains that it did not refund his tuition.  Mr. Zagoria, however, continued to attend the class, earned the associated credits, and received the benefit of continued instruction through remote means, including the addition of guest lecturers to enhance the student experience in lieu of the travel.  Exs. 29, 30.  Notably, despite his allegations that "online education devoid of campus interaction and facilities plainly is not equivalent in nature or value or the traditional in-classroom on-campus education for which NYU students matriculated and paid," Mr. Zagoria chose to enroll in NYU's Summer 2020 term, knowing it would be remote, and paid the tuition and fees for that remote learning experience. (*Compare id.* ¶ 25 *with* Ex. 28).

In addition to the $1,915 refund Mr. Zagoria received for travel costs (*see* Ex. 19), NYU also provided him with emergency Covid-19 funding to help with immediate financial needs during the crisis.  *Id.*  NYU is also reimbursing Mr. Zagoria for the flights he booked for the trip, even though he was responsible for his own flight costs and booked his tickets directly.  *See* Ex. 31.

### 2.   *Rynasko*

Unlike *Zagoria*, the plaintiff in *Rynasko* is a parent, not a student.  Rynasko Compl. at ¶ 10.  Christina Rynasko is the mother of Emily Rynasko, who was a senior majoring in musical theater enrolled in Tisch, NYU's school for the performing, cinematic, and media arts.  *Id.* As the Motion demonstrates, Christina Rynasko lacks standing to bring this suit.  (Motion at 6–11).  Emily Ryansko enrolled at NYU in 2016.  Ex. 32.  Like Zagoria, Ms. Rynasko does not articulate or attach the purported "contract," but rather references undated brochures that discuss the benefits

of being in New York City and that the City has "some pretty good food." Rynasko Compl. at ¶ 27. In her complaint, Christina Rynasko focuses on the "musical theater" aspect of her daughter's NYU educational experience, alleging that NYU should refund her daughter's tuition because her daughter allegedly was unable to "participate in required performances" when learning transitioned to remote. *Id.* at ¶ 10. Studio courses, however, are only one aspect of a Tisch musical theater student's curriculum, which in any given semester also includes lectures and seminars in theater studies, general education, and electives from across the University. Ex. 33.[3] Further, the final academic work for students in the designated musical theater studio, "New Studio on Broadway," includes such curriculum as preparing a vocal book (*i.e.*, selecting songs to be used at auditions), understanding acting as a business, and preparing professional credentials. Ex. 34. Moreover, during the Spring 2020 semester, Emily Rynasko (who at times goes by the name Emily van Vliet Perea) participated in NYU's New Studio on Broadway's showcase performance of "When Things Stop" (*see* Ex. 35), as well as in its senior showcase (*see* Ex. 36). As Emily Rynasko was only enrolled in 11 credits during the Spring 2020 semester, she was considered a "three-quarter time" student rather than a full-time. *See* Ex. 32. At the end of the Spring 2020 semester, Emily Rynasko earned her NYU degree. *Id.*

Following NYU's transition to remote instruction, NYU provided students like Emily Rynasko with prorated refunds for certain fees, meal plans, and on-campus housing. Ex. 3.

---

[3] Although the applicable student privacy law, the Family Educational Rights and Privacy Act of 1974 ("FERPA") permits a university to disclose student records to defend itself in a legal action brought by a parent or student, NYU is, at this time for purposes of this memorandum, refraining from disclosing certain education records of Emily Rynasko that are not already public or could be made public without the student's consent under FERPA, especially given the fact that the plaintiff is her mother, who lacks standing to bring the action.

3.     *Morales*

There are two named plaintiffs in the *Morales* case.  Ms. Morales was a student enrolled in NYU's College of Arts and Sciences, which is NYU's liberal arts college.  Ex. 37.  Ms. Morales enrolled at NYU in 2018 as a transfer student.  *Id.*  She too fails to identify the contract on which she predicates her claim, but she focuses on the alleged impact that remote learning had on her as an English major.  Morales Compl. at ¶ 11.  During the Spring 2020 semester, Ms. Morales was enrolled in English literature lectures and reading and writing seminars, such as "Reading as a Writer" and "Literatures in English," which proceeded remotely.  Ex. 38.  The "Interviewing Strategies" course that Ms. Morales claims required "in-person" work (Morales Compl. at ¶ 11), was a "lecture" course, focused on exploring "career development theory," including preparation of a cover letter, a resume, and an interview guide.  Exs. 38, 39.  Ms. Morales earned her NYU degree and graduated at the end of the Spring 2020 semester.  Ex. 37.  NYU provided Ms. Morales with emergency Covid-19 funding.  Ex. 22.

The other named plaintiff, Ms. Guidry, was a Drama major enrolled in Tisch.  *Morales* Compl. at ¶ 17.  Ms. Guidry enrolled in NYU in the fall of 2016.  Ex. 40.  She claims that remote learning harmed her as a Drama student because it prohibited her from "participat[ing] in [her classmates'] acting projects," even though she does not identify any contractual promise from NYU that participating in her classmates' projects would be part of her degree.  In January 2020, long before NYU was forced to transition to remote learning, she withdrew from two of her classes.  Ex. 41.  As a result, during the Spring 2020 semester, Ms. Guidry was a part-time student enrolled in only two classes: a seminar on climate change and a seminar on art and public policy, neither of which was a drama class.  *Id.*  Ms. Guidry also earned her NYU degree and graduated at the conclusion of the Spring 2020 semester.  Ex. 40.  In celebration of her graduation, Ms. Guidry participated in a project with several of her fellow graduates to create a video "reflecting on their

journey at the studio and connecting more deeply to this significant rite of passage in their lives."
Ex. 42.

After NYU's transition to remote instruction, NYU provided Ms. Guidry with: prorated refunds of $35.50 for an "Insurance and Equipment Fee" unique to certain Tisch students; $1,287.76 for her meal plan; and emergency Covid-19 funding from the University.  Ex. 23.

Neither Ms. Morales nor Ms. Guidry articulate the contract allegedly breached and instead point to their unique experiences and unspecified, undated webpages that allegedly discussed "the campus experience," "innovation," "incandescent teaching," and the "best faculty."  Morales Compl. at ¶¶ 24, 26–32.  Their teachers remained the same after Covid-19 required a move to remote teaching.

### 4.    *Romankow*

There are also two named plaintiffs in the *Romankow* case – student Jaclyn Romankow and her father David Romankow.  *See* Romankow Compl.  Ms. Romankow enrolled at NYU London's study-abroad program in collaboration with the London Royal Academy of Dramatic Arts ("RADA") in Spring 2020.  *Id.* at ¶ 7; Exs. 44, 46.  Ms. Romankow was a visiting student from Boston University who enrolled at NYU only for the Spring 2020 semester to participate in the study-abroad program.  Ex. 45.  Ms. Romankow enrolled in four courses for the semester, two of which were "studio" or "recitation" courses and two of which were lectures.  Ex. 46.  Ms. Romankow alleges that as a result of the move to remote learning, she "suffered a decreased quality of experience and education" including "access to her peers."  Romankow Compl. at ¶¶ 13, 15.  At

the end of the semester, however, Ms. Romankow and her classmates put on a performance of Shakespeare's *Coriolanus* via a video conferencing service.  *See* Exs. 47, 48.

After her courses were transitioned to remote instruction, Ms. Romankow received a refund of $5,309.00 for her housing costs as well as $241.50 for tickets to performances in London.  Ex. 24.

The Romankows also fail to tether their claims to an identifiable contract, instead pointing to undated webpages regarding the London Program that emphasized the benefits of attending events in London, which was, of course, impossible given Covid-19.  *Id.* at ¶ 33.

## ARGUMENT

### I.     <u>Legal Standard</u>

A court may consolidate multiple actions when the claims "involve a common question of law or fact." Fed. R. Civ. P. 42(a).  The party moving for consolidation has the burden of demonstrating that consolidation is appropriate.  *KGK Jewelry LLC v. ESDNetwork*, 2014 WL 7333291, at *2 (S.D.N.Y. Dec. 24, 2014).  "[D]istrict courts have broad discretion to determine whether consolidation is appropriate under the particular circumstances presented." *Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 136 (S.D.N.Y. 2016) (citation omitted).  "[T]he court must balance the interests of judicial convenience against any delay, confusion, or prejudice that might result from such consolidation." *Kamdem-Ouaffo*, 314 F.R.D. at 136 (quotation omitted). Specifically, the court must consider "[w]hether the specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives." *Smith v. Everson*, 2007 WL 2294320, at *3 (E.D.N.Y. Aug. 6, 2007) (internal citation omitted).

In undertaking this analysis, "[c]onsiderations of convenience and economy must yield to a paramount concern for a fair and impartial trial." *Id.* (internal citation omitted). Before consolidating cases, "the court must determine that the parties will not be prejudiced." *KGK Jewelry*, 2014 WL 7333291, at *2.

## II.    The Court Should Not Consolidate the *Rynasko*, *Zagoria*, *Morales*, and *Romankow* Actions.

### A.    Individualized Issues of Fact Exist.

While Covid-19 prompted all of these lawsuits and they assert similar (but not identical) causes of action, a multitude of material factual differences between the cases make consolidation inappropriate, including that the individual students: are a mix of graduate and undergraduate students; were enrolled in different schools and were involved with different programs; were exposed to different websites and other admissions-related materials at different times; were subject to different admissions processes; had different expectations about their educational experience based on the particular schools, offerings, programs, and courses in which they enrolled; were subject to different fees and costs; and received different refunds. Because of these substantial differences, which are material and impact the analysis of each plaintiff's claims, consolidation is not warranted here.

Such differences include:

- Mr. Zagoria, unlike the other plaintiffs, has already knowingly enrolled in future courses at NYU, including the summer term – fully aware that they would be remote (Ex. 28);

- Plaintiff Christina Rynasko is the parent of a student (Rynasko Compl. at ¶ 10), while plaintiffs Mr. Zagoria, Ms. Morales, and Ms. Guidry are current or former students (Zagoria Compl. at ¶ 6; Morales Compl. ¶¶ 7, 13), and the plaintiffs in *Romankow* are both a student and her parent (Romankow Compl. at ¶ 7);

- Ms. Romankow is a visiting student from Boston University who enrolled at NYU only for the Spring 2020 semester (*see* Exs. 44, 45), while the other named plaintiffs are or were (or are the parent of former) matriculated NYU students;

11

- Ms. Romankow was enrolled in a study-abroad program in London during the Spring 2020 semester (Romankow Compl. at ¶ 7), while the other plaintiffs were enrolled at NYU's New York campus;

- Mr. Zagoria is a graduate student, while the others are either undergraduate students or the parent of an undergraduate student (Zagoria Compl. at ¶ 6; Rynasko Compl. at ¶ 10; Morales Compl. at ¶¶ 11, 17; Romankow Compl. at ¶ 7);

- The plaintiffs who are matriculated NYU students are enrolled in different degrees at different schools within NYU, including the Schack Institute at SPS (Mr. Zagoria), Tisch (Emily Rynasko and Ms. Guidry), and the College of Arts and Sciences (Ms. Morales) (Exs. 28, 32, 37, 40);

- Of the two plaintiffs who graduated from Tisch's theater program in New York, Emily Rynasko was a musical theater student, while Ms. Guidry was not.  (Rynasko Compl. at ¶ 10; Morales Compl. at ¶ 17);

- Certain of the students are no longer NYU students: Emily Rynasko, Ms. Morales and Ms. Guidry all graduated at the conclusion of the Spring 2020 semester (Exs. 36, 37, 40), and Ms. Romankow's enrollment at NYU as a visiting student ended at the conclusion of the Spring 2020 semester (*see* Ex. 46);

- Emily Rynasko and Ms. Guidry were not full time students during the Spring 2020 semester (Exs. 36, 40); and

- The students all financed their tuition payments differently, including through different combinations of financial aid, loans, and scholarships (*see* Exs. 19, 22, 23, 24).

Indeed, Mr. Zagoria's *own Motion* highlights many of these considerable differences in support of his argument that these distinctions impact the other named plaintiffs' standing to assert their claims.  Motion at 2, 6–13.

Mr. Zagoria – who bears the burden of demonstrating commonality – neglects to provide any factual support for his argument that all cases are predicated on common facts.  Instead, in his one-and-a-half page argument in support of consolidation, Mr. Zagoria makes the conclusory argument that common factual questions will be before the court simply because the complaints "allege the same or overlapping claims."  Motion at 4.  Not so.  *See, e.g.*, *Flintkote Co. v. Allis-Chalmers Corp.*, 73 F.R.D. 463, 465 (S.D.N.Y. 1977); *Klimaski v. Parexel Intern.*, 2005 WL

857350, at *3 (E.D. Pa. Apr. 4, 2005).  For example, in *Flintkote Co.*, the Court acknowledged that even though two cases involved allegations of defective equipment and breach of contract claims, there was "practically no overlap in the alleged defective equipment.  Therefore, if the cases were consolidated, the trial of each would be impeded by the introduction of voluminous irrelevant evidence."  73 F.R.D. at 465.

Similarly, in *Klimaski*, the Court rejected the plaintiffs' attempt to consolidate several cases alleging unlawful termination.  2005 WL 857350, at *3.  There, the Court acknowledged that the plaintiffs' claims "rest[ed] upon the single legal theory of retaliatory discharge and there [wa]s some similarity in terms of the allegedly improper activities."  *Id.*  However, the Court concluded that consolidation was not appropriate because "the circumstances of each party's termination [we]re *factually distinct*."  *Id.* (emphasis added).  Specifically, the Court noted that the "roster of witnesses presented by each party [wa]s likely to be different [and] the evidence relevant to each party's claim [wa]s likely to differ significantly."  *Id.* at *5.

So too here.  While the plaintiffs' claims are all premised on NYU's transition to remote instruction as a result of Covid-19, the circumstances of their (or their child's) enrollment, the scope of their purported contracts, and their experiences at NYU are each factually distinct, and resolution of their claims will necessarily involve different witnesses and evidence relevant to each plaintiff's school, program, and courses.  Therefore, common factual questions do not exist to support consolidation here.

## B.    Different Questions of Law Could Negate Consolidation.

At bottom, each of the cases complains about the quality of the education provided after the move to remote learning.  But, as NYU will establish in its motion to dismiss, the Supreme Court has held that a university must be able "to determine for itself . . . what may be taught [and] how it shall be taught . . .."  *Regents of the Univ. of Cal. v. Bakke*, 438 U.S. 265, 312 (1978).  "As

a matter of public policy, New York courts consistently decline to entertain actions . . . where 'the essence of the complaint is that the school breached its agreement by failing to provide an effective education' [because] 'professional educators – not judges – are charged with the responsibility for determining the method of learning that should be pursued for their students.'" *Papaspiridakos v. Educ. Affiliates, Inc.*, 2013 WL 4899136, at *3 (E.D.N.Y. Sept. 11, 2013), *aff'd* 580 F. App'x 17 (2d Cir. 2014)); *Paynter v. NYU*, 319 N.Y.S.2d 893 (1st Dep't 1971). In fact, "claims about the quality of an education 'are not statements of fact capable of proof, but rather opinions which should not provide a basis for the imposition of liability.'" *Papaspiridakos*, 2013 WL 4899136, at *3.

In *Paynter*, for example, the First Department reversed and held that the trial court "erred in substituting its judgment for that of the University administrators and in concluding that the University was unjustified in suspending classes for the time remaining in the school year prior to the examination period" following the Kent State massacre and other events. 319 N.Y.S.2d at 894. In so doing, the Court expressly observed that, "while in a strict sense, a student contracts with a college or university for a number of courses to be given during the academic year, the services rendered by the university cannot be measured by the time spent in a classroom." *Id*.

While this premise is common across all four cases, and will require dismissal of all of them, resolution of each plaintiff's breach of contract claim will involve individualized legal analysis because each plaintiff's vaguely and inadequately alleged "contract" with NYU contains different terms and the purported breaches of those terms are different. *See* Section II.A. This is in addition to the issues of Article III standing Mr. Zagoria raises (*see* Motion at 6–13), which impact the claims of both Christine Rynasko and David Romankow. Therefore, resolution of the plaintiffs' breach of contract claims will involve individualized legal analysis.

Courts have found consolidation inappropriate even where two cases involve similar causes of action involving a generally similar set of facts where (as here) the claims are premised on contracts allegedly containing differing terms. *See, e.g., CIS Commc'ns, LLC v. Republic Servs., Inc.*, 2019 WL 2075892, at *2 (E.D. Mo. May 10, 2019); *Lehman Brothers Hold'gs Inc. v. Universal Am. Mortgage Co.*, 2013 WL 12214041, at *1 (D. Col. Apr. 17, 2013). In *CIS Communications*, for instance, the defendant in two putative class actions moved to consolidate, arguing that the cases "assert[ed] the same causes of action against the same defendants and [were] based upon the same factual predicates" and also "propose[d] the exact same class definition." 2019 WL 2075892, at *2. The court disagreed. The court held that "complete consolidation" was inappropriate because "there [was] a subtle but material difference in [contractual] terms" which was "significant" and "inconsistent with the policy of judicial economy underpinning consolidation." *Id.*

The *Flintkote Co.* Court reached a similar conclusion. There, the plaintiff sought to consolidate two cases dealing with cement plants the defendant manufactured, each of which alleged "inadequate design and installation . . . in breach of the applicable contract." 73 F.R.D. at 464. The plaintiff asserted that consolidation was appropriate because "the contracts contain[ed] many similar provisions and the complaints proceeded upon common legal theories." *Id.* at 465. The Court disagreed and held that "the mere fact that two cases assert similar legal theories of recovery does not constitute a common question of law so as to warrant consolidation." *Id.*

Similarly, in *Lehman Brothers*, the plaintiff sought to consolidate seven cases asserting breach of contract claims against the defendant "pursuant to the parties' loan purchase agreement." 2013 WL 12214041, at *1. The plaintiff's claims alleged "various misrepresentations" and "implicate[d] different sections of the" contract. *Id.* The Court held that consolidation was not

appropriate because "there [we]re not common questions of law and fact to warrant consolidation." *Id.* at *2. The Court explained that "distinct legal analyses" needed to be performed because different "borrowers, property, and loan product, defects, and documentation" were implicated. *Id.* Moreover "each case may require divergent proof of damages." *Id.*

Here, too, the scope of each plaintiff's particular contract and its purported breach is distinct. While the plaintiffs' causes of action may superficially appear similar, resolution of each of the plaintiff's breach of contract claims will necessarily involve legal analysis of the unique terms of each plaintiff's situation. The resulting legal analysis will be impacted by a number of factors, including whether the plaintiff is a student or parent, the circumstances and timing of the student's enrollment at NYU, the statements to which they were exposed, the student's specific college, school, or program, and the student's individual experience with remote education. As such, consolidation is not appropriate here.

Mr. Zagoria fails to meet his burden of demonstrating that the cases should be consolidated based on common legal questions when he only makes the conclusory assertion that "all three cases allege the same or overlapping claims . . . whether a contract between NYU and its students exists, whether a contract may be implied based on the parties' conduct, whether NYU actions amounted to a breach . . ." Motion at 4. He does not explain how common legal questions exist in light of the numerous distinctions he himself highlights, nor does he acknowledge that the adjudication of a contract (if any) between the named plaintiffs and NYU may differ based on those distinctions. Merely parroting the standards for consolidation does not satisfy Mr. Zagoria's burden of demonstrating commonality, let alone that the balance weighs in favor of consolidation.

The securities fraud cases Your Honor consolidated that Mr. Zagoria cites are inapposite. *Jakobsen v. Aphria, Inc.*, 2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019); *In re China*

*XD Plastics Co. Limited Sec. Litig.*, 2016 WL 1241522 (S.D.N.Y. Mar. 23, 2016).  Both involved allegations of misrepresentations in public statements that were *uniform* for all investors.  In *Jakobsen*, the claims were premised on whether the defendant's officers and directors "made materially false and misleading statements and failed to disclose material adverse facts about [the defendant's] business, operations, and prospects," which allegedly caused a stock price drop. 2019 WL 1522598, at *1.  Similarly, in *China XD Plastics*, the claims were premised on whether the company and its officers and directors made "material misrepresentations by overstating their 2012 and 2013 financial position in filings with the SEC."  2016 WL 1241522, at *1.  Unlike here, where the plaintiffs' claims are premised on over 25 different statements across at least 6 different programs' websites, those cases involved the exact same underlying facts and law – a single company that made uniform statements to all investors that the investors claimed were misleading.

Accordingly, common legal and factual issues do not warrant consolidation here.

### C.   Consolidation Will Not Serve Judicial Economy.

The Motion should also be denied because consolidation of the cases would not further the interests of justice and judicial efficiency.  Mr. Zagoria argues in a superficial and conclusory manner that consolidation would avoid "duplication of discovery, motions, and inconsistent rulings that may arise if the actions proceeded separately."  Motion at 4.  Not so.  The numerous material differences between the individual circumstances of the various plaintiffs do not lend themselves to gained efficiency as a result of consolidation.  First, if the cases make it past a motion to dismiss (which they should not), discovery will necessarily be individualized.  The plaintiffs attended different schools at NYU, had different expectations regarding their educational experience, chose different courses, that involved different levels of interaction, were subject to different tuition and fees, and received different refunded amounts for different reasons.  Discovery in each case will therefore necessarily entail production of information specific to each plaintiff's

particular school, program, and courses, which is unlikely to be relevant to the claims of the other plaintiffs. As a result, combining the differently situated plaintiffs into one action will not make discovery more economical or streamlined, which weighs against consolidation. *See, e.g., Klimaski*, 2005 WL 857350, at *6 (denying consolidation; "[g]iven the varied nature of the evidence required to prove each party's case, this Court remains unconvinced that consolidation of the claims . . . will significantly further convenience or economy"); *Smith*, 2007 WL 2294320, at *3 (denying motion for consolidation in part because "the same amount of discovery would be required with or without consolidation.").

In addition, because each of the plaintiffs' claims involve varying facts and defenses, consolidation will not make motions practice materially more efficient. While there are legal principles that apply to all four cases, there are others that do not, as the Court may consider discrete expectations of uniquely-situated students within different schools, centers, and institutes at NYU, and highly individualized circumstances. As Mr. Zagoria points out in his Motion, these differences affect various legal issues differently, including the plaintiffs' standing. *See* Motion at 6-13. Accordingly, because the facts and defenses involved in each motion will be as highly unique and individualized as each plaintiff, consolidation will not materially streamline motions practice.

**D.      Consolidation Will Confuse the Issues and Prejudice NYU.**

Finally, the cases should not be consolidated due to the substantial risk that consolidation would confuse the issues, resulting in prejudice to NYU. "[C]ourts generally deny consolidation requests when consolidation of disparate claims would muddle the issues before the court or trier of fact." *KGK Jewelry*, 2014 WL 7333291, at *3 (citing to *Smith*, 2007 WL 2294320, at *3).

In *Smith*, for instance, the court denied the plaintiff's motion for consolidation based in part on its finding that "in light of the distinct transactions involved in the two cases, the risk of

confusion would occur as a result of consolidation, rather than vice versa." 2007 WL 2294320, at *3. Similarly, in *Flintkote Co.*, the court found consolidation inappropriate where the two cases involved substantial factual differences because "the trial of each would be impeded by the introduction of voluminous irrelevant evidence" relevant to one claim and not the other, and the risk of "possible prejudice [to the] defendant due to the likelihood of confusion in the minds of the jurors because of this irrelevant evidence . . . far outweighs the benefit of any possible convenience or economy to be obtained from consolidation." 73 F.R.D. at 465. Finally, in *Klimaski*, the court denied consolidation after finding that "allowing the [multiple claims] to proceed in a single action will bias Defendants generally and deflect the jury's attention from the merits of each individual plaintiff's claim" and "the evidence admissible for the purposes of one party's claim may not be admissible or relevant to the claims of his co-parties" making it "extremely difficult for the jury, even if given limiting instructions, to consider each party's claim . . . independently of the others." 2005 WL 857350, at *5.

The consolidation of the four actions here increases the potential for confusion if all of the plaintiffs' claims are lumped together into a single consolidated action. For instance, it is likely that confusion could arise regarding the individualized legal analysis of the unique terms of each plaintiff's alleged contract and the distinct evidence required to evaluate each plaintiff's claims based on that plaintiff's particular school or program. Additionally, should this case proceed to trial, it may be difficult for the jury to consider each of the plaintiff's claims independently of one another. The resulting confusion could prejudice NYU. On the other hand, Zagoria will not be prejudiced if consolidation is denied. He will still be able to fully and fairly litigate his claims before this Court – indeed, his case will continue to proceed as it currently stands without consolidation.

Accordingly, the risk of confusion and prejudice that would result from consolidating the cases far outweighs any purported benefit, and therefore Mr. Zagoria's Motion should be denied. Of course, even as non-consolidated cases, nothing prevents the Court from exercising its discretion to appropriately manage the cases to promote efficiencies and conserve judicial resources while not prejudicing NYU, by, for example, coordinating deadlines for the briefing schedule for the responses to the four complaints and, as the Court has already done, scheduling conferences at the same time.

## CONCLUSION

For the foregoing reasons, Mr. Zagoria's Motion should be denied.

Dated: June 30, 2020

Respectfully submitted,

**DLA PIPER LLP (US)**

  */s/  Keara M. Gordon*
Brian S. Kaplan
Keara M. Gordon
Colleen Carey Gulliver
Rachael C. Kessler
1251 Avenue of the Americas
New York, New York 10020-1104
Phone: (212) 335-4500
Facsimile: (212) 335-4501
brian.kaplan@us.dlapiper.com
keara.gordon@us.dlapiper.com
colleen.gulliver@us.dlapiper.com
rachael.kessler@us.dlapiper.com

*Attorneys for Defendant New York University*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I am one of the attorneys for the defendant in this action and that on June 30, 2020, I caused a copy of the foregoing to be filed with the Court's ECF system, which will cause notice of its filing to be served electronically upon all counsel who have appeared in this action.

_/s/ Keara M. Gordon_____

Keara M. Gordon
