UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL ZAGORIA, On Behalf of Himself And All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NEW YORK UNIVERSITY,<br><br>Defendant. | **Case No.: 1:20-CV-3610-GBD** |

**PLAINTIFF DANIEL ZAGORIA'S REPLY IN SUPPORT OF HIS MOTION FOR CONSOLIDATION AND APPOINTMENT OF HIS COUNSEL AS INTERIM CLASS COUNSEL**

**TABLE OF CONTENTS**

I.  DESPITE NYU'S OPPOSITION, THE CASES SHOULD
    BE CONSOLIDATED……………………………………..………..……..………1

II. ZAGORIA'S COUNSEL SHOULD BE APPOINTED INTERIM
    CLASS COUNSEL……………………………………………………...…..….2

   A. Zagoria's Counsel Are The Only Ones Who Pled A Complaint With
      A Plaintiff Who Has Standing To Seek The Full Relief Sought On
      Behalf Of The Class…………………………………………………….……..2

   B. Rynasko's And Morales' Attacks On Zagoria Are Wrong As A Matter
      Of Law……………………………………………………………………………5

   C. Under Rule 23(g), Zagoria's Counsel Are The Best Class Counsel
      Candidates……………………………..…………………………………………7

III. ZAGORIA'S COUNSEL'S QUALIFICATIONS ARE UNIMPEACHABLE…..…….7

CONCLUSION…………………………………………………….…………...………10

# **TABLE OF AUTHORITIES**

**Cases:**

*Feinstein v. Firestone Tire and Rubber Co.*,
535 F. Supp. 595 (S.D.N.Y. 1982)……………………………………………………..………4

*Friends of the Earth, Inc. v. Laidlaw Environmental Srvcs., Inc.*,
528 U.S. 167 (2000)………………………………………………………….………..6

*Gally v. Columbia Univ.*,
22 F. Supp.2d 199 (S.D.N.Y. 1998)……………….………………………………....………1

*In re Vitamin C Antitrust Litig.*,
279 F.R.D. 90 (E.D.N.Y. 2012)……………………………………………...….……4-5

*White v. First American Registry*,
230 F.R.D. 365 (S.D.N.Y. 2005)………………………………….………….…..5, 6


**Statutes and Rules:**

Fed. R. Civ. P. 23(g)………………………………………………………..….………7

I.      **DESPITE NYU'S OPPOSITION, THE CASES SHOULD BE CONSOLIDATED.**

There are now four related class action complaints pending before this Court against NYU that allege claims for refunds due to NYU's cessation of all in-person instruction and campus shutdown—*Rynask*o, *Zagoria*, *Morales*, and *Romankow*.  Despite the undeniable common thread linking these cases, NYU opposes consolidation.  Its reasons for arguing that the Court instead should hear four separate sets of motions to dismiss are unconvincing.

NYU argues in conclusory fashion that, "resolution of each plaintiff's breach of contract claim will involve individualized legal analysis because each plaintiff's vaguely and inadequately alleged 'contract' with NYU contains different terms and the purported breaches of those terms are different." NYU Opp., at 14.  But despite attaching 48 exhibits to its Opposition, NYU *attaches no* contracts of the plaintiffs in any of the related actions to show they contain materially "different terms." *Id*.  It fails to mention which contractual terms differ.  Under New York law, "[w]hen a student enrolls at a university, an implied contract arises." *Gally v. Columbia Univ.*, 22 F. Supp.2d 199, 206 (S.D.N.Y. 1998).  Zagoria alleged that a material term of each student's implied contract with NYU was that, unless the student matriculated in NYU's online programs at the outset, the agreement provided for in-person instruction.  *See* Zagoria CAC, at ¶ 39.

This is so because NYU offers an online instruction program through its overseas programs and otherwise, but to participate in those online programs, the applicant must enroll in that remote learning program specifically.  *Id.*  None of the class members did so. (Zagoria's defined class excludes students who enrolled in NYU's online program. *Id.*, at ¶ 27).  The natural implication is that, having not registered for NYU's online program, the expectation of, and agreement between, class members and NYU was for in-person instruction at NYU facilities.

NYU also concedes the key factual predicate common to each case:

> Consistent with its policy that undergraduate and graduate students who remained enrolled in courses after February 24, 2020 are not eligible for a tuition refund (see Exs. 25, 26, 27), and consistent with the fact that students continued to receive the benefit of their courses through remote instruction, NYU has not refunded tuition.

NYU Opp., at 5.

This admits what the four cases plead: all NYU students were denied in-person instruction and use of NYU facilities, and all were denied any tuition refund. This now-conceded common fact also raises a legal question common to all complaints: did NYU have the right either under the law of contract or tort to withhold such refunds after it failed to provide in-person instruction? These common issues more than suffice for consolidation.

Admittedly, unlike Zagoria, some plaintiffs in the remaining cases lack standing to assert some or all of the claims they pled. *See* Zagoria's Mem., at 6-13. That, however, does not mean consolidation should be denied. Instead, it supports appointment of Interim Class Counsel so counsel may select the best named plaintiffs and best claims for a Consolidated Class Complaint.

## II.  ZAGORIA'S COUNSEL SHOULD BE APPOINTED INTERIM CLASS COUNSEL.

### A. Zagoria's Counsel Are The Only Ones Who Pled A Complaint With A Plaintiff Who Has Standing To Seek The Full Relief Sought On Behalf Of The Class.

It should take no particular insight to observe that in a class action complaining about students being deprived of in-person instruction and campus facilities by NYU, one should expect the action to name an enrolled NYU student as a plaintiff. Yet, remarkably no counsel other than Zagoria's attorneys name a currently enrolled NYU student as a plaintiff-class representative. Rynasko's counsel selected a parent instead of a student; Morales' lawyers selected two former NYU students who no longer are enrolled (one of them was merely a part-time NYU student at that); and, the latest-filed *Romankow* action names a Boston University student, who was never

present or enrolled at NYU's campus but merely participated overseas during one semester through a study-abroad program sponsored by NYU, and her parent.

Only Zagoria's complaint and counsel names a currently enrolled NYU student who was and continues to be directly aggrieved. The remaining complaints, plaintiffs, and plaintiffs' counsel run headlong into standing problems that may either doom their claims or call into question their suitability to be the best representative. This alone should make the choice of Interim Class Counsel straightforward. It should not be too much to ask that counsel who seek to lead a class actually have a client with standing to assert the claims and relief sought on behalf of that class.

Zagoria detailed at length the flaws in the *Rynasko* and *Morales* pleadings that either doom these plaintiffs' standing as to all or most claims for relief asserted or, at the very least, raise serious questions about this threshold requirement. *See* Zagoria's Mem., at 6-13. His brief cited New York law on point and explained why, as a parent, Christina Rynasko could not recover money damages because the claims asserted belonged to her daughter, the actual NYU student. *Id.*, at 7-10 (citing and quoting cases). Zagoria also showed the disconnect between Rynasko's allegations and her conversion claim. *Id.*, at 10-11. Last, he explained why, given that both *Morales'* plaintiffs no longer were enrolled at NYU, they lacked standing to seek injunctive relief despite alleging that as a key remedy. *Id.*, at 11-13 (citing and quoting cases).

It is now transparently obvious that the shortcomings in Rynasko's and Morales' pleadings, as drafted by their counsel, are recognized by all. As NYU succinctly puts it, "Christina Rynasko lacks standing to bring this suit." NYU Opp., at 6. Even the latest *Romankow* Letter Motion filed yesterday in support of the *Rynasko-Morales* Joint Motion for appointment of Interim Class Counsel tacitly admits the standing problems plaguing those counsel's pleadings. Romankow's lawyers contend that "[i]nclusion of the Romankow Plaintiffs in a consolidated complaint would

resolve the standing arguments made by Zagoria's counsel." *Romankow* Ltr. Motion [Dkt. No. 7 in *Morales*], at 2-3.

Neither Rynasko's nor Morales' counsel address these serious flaws in their clients' standing to sue or seek the relief pled. Neither their Joint Response [Dkt. No. 13] nor their separate Joint Motion attempts to show why Zagoria's analysis is incorrect. The *Rynasko-Morales* Joint Motion does not even mention "standing." The most these lawyers muster in the Joint Response is the meaningless adage that they "reserve the right to fully respond to all such arguments should the appropriate time arise." *Rynasko-Morales* Joint Resp., at 6.

The "appropriate time" is now. This is because questions about the standing of the plaintiffs in those cases to sue or seek the relief pled goes to the heart of their and their counsel's adequacy to represent putative class members' interests. If Christina Rynasko lacks standing to bring any claims against NYU, as all now appear to agree, then neither she nor her counsel can lay claim to being the best representative of the class. And, if neither Morales nor Guidry have standing to seek the injunctive relief they prayed for, this also goes to the heart of their and their counsel's adequacy. This is so because a lawyer whose clients lack standing to seek injunctive relief necessarily will have to refrain from seeking to certify any claim for injunctive relief, opting at most to seek certification of money damages claims. That resultant "claim splitting" undeniably prejudices the putative class members who will have their claims for injunctive relief disposed of by res judicata at the conclusion of this case despite those claims not having been pressed by named plaintiffs who lacked standing to do so. *See Feinstein v. Firestone Tire and Rubber Co.*, 535 F. Supp. 595, 606, n.16 (S.D.N.Y. 1982) ("The sacrifice by a putative class representative of the rights of absent class members implicates due process considerations as well as the Rule 23(a)(4) requirement of 'adequate representation.'"); *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 114

(E.D.N.Y. 2012) ("some courts have held that a class representative who splits the claims of absent class members—thereby exposing their non-litigated claims to foreclosure through claim preclusion—is inadequate to represent the class."). This Court has noted the inadequacy of a plaintiff to represent a class when, from the time the complaint was filed, that plaintiff lacked standing to seek the injunctive relief being sought:

> As White did not have standing to pursue injunctive relief at the time the complaint was filed, he cannot rely upon these exceptions to the mootness doctrine to allow him to go forward on behalf of the putative class. He therefore is not an adequate class representative.

*White v. First American Registry*, 230 F.R.D. 365, 367-68 (S.D.N.Y. 2005) (footnotes omitted).

### B. Rynasko's And Morales' Attacks On Zagoria Are Wrong As A Matter Of Law.

Instead of addressing their pleadings' own shortcomings, Rynasko's and Morales' counsel incorrectly assert that Zagoria suffers the same fate because he is scheduled to graduate NYU after the summer session, well before this case will conclude. *See Rynasko-Morales* Joint Resp., at 6 ("NYU's summer session ends August 16, 2020 so Plaintiff Zagoria will shortly be in the same position as other plaintiffs in the case – an NYU graduate."). This misapprehends the concepts of standing, mootness, and their exceptions.

Unlike the other named plaintiffs, Zagoria was the only litigant enrolled at NYU *when he sued* and therefore is the only one who had standing to seek injunctive relief when he sued (and still does so). By contrast, the other plaintiffs—none of whom were NYU students when they sued—*never had standing* to seek such relief. The distinction is critical. A plaintiff who has standing at the inception of his lawsuit, but has events occur thereafter that moot his claim, may avail himself of the "capable of repetition yet evading review" doctrine.

In a college lawsuit class action, where enrollment always is limited to a few years or less and litigation is likely to take several years, any plaintiff with standing to seek declaratory or

injunctive relief at the beginning of the suit is likely to find that the case continues even after that student graduates.  The "capable of repetition yet evading review" doctrine ensures that a plea for injunctive relief will not evade adjudication.  An indispensable prerequisite to invoking this ability to seek injunctive relief, however, is that the plaintiff have had standing to seek that relief when the complaint was filed.  Only Zagoria had that standing; the other plaintiffs' counsel elected to plead complaints' seeking injunctive relief when their clients lacked standing to seek that redress when their suits were filed.  This Court has explained that distinction and why it renders Rynasko, Morales, Guidry (and now also Romankow) inadequate:

> He [plaintiff] correctly identifies the legal principles, as there are exceptions to the mootness doctrine where a plaintiff has standing to pursue a claim at the commencement of the case but loses a personal interest as the case moves forward. But when 'a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review,' for example, 'will not entitle the complainant to a federal judicial forum.' As White did not have standing to pursue injunctive relief at the time the complaint was filed, he cannot rely upon these exceptions to the mootness doctrine to allow him to go forward on behalf of the putative class.  He therefore is not an adequate class representative.

*White*, 230 F.R.D. at 368-69 (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Srvcs., Inc.*, 528 U.S. 167, 191 (2000)).

Rynasko's and Morales' counsel bristle at Zagoria's arguments.  They accuse his counsel of improperly raising these issues in a manner that prejudices the putative class members.  This is not so.  The true prejudice to putative class members would result if they were forced to be represented by counsel and clients who lacked standing to assert the full measure of relief that class members otherwise could seek.  When the issue before the Court is which counsel merits appointment as Interim Class Counsel, Zagoria would be derelict if he did not raise real concerns likely to prejudice the absent class members.

Nor is there any basis to characterize Zagoria's filing as an "*ad hominem* attack" on Rynasko's and Morales' counsel. *Rynasko-Morales* Joint Resp., at 5. To the contrary, Zagoria clarified that "the firms in the remaining related cases are undoubtedly experienced." Zagoria's Mem., at 6 and that "[a]ll firms possess the requisite experience in class action litigation." *Id.*, at 1. He properly explained, however, that while "[a]ll firms possess the requisite experience in class action litigation . . . Zagoria's counsel are the only ones who pled a Class Action Complaint naming as plaintiff a currently enrolled full-time NYU student who has standing to seek the entire relief being prayed for in the pleadings." *Id.*, at 1-2.

### C. Under Rule 23(g), Zagoria's Counsel Are The Best Class Counsel Candidates.

Selection of Interim Class Counsel does not depend on which firm produces the shiniest or lengthiest firm resume. Nor is the inquiry which firm is "best" in the abstract. Instead, Rule 23 tethers the inquiry to the case and class in which class counsel appointment is sought: "If more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of <u>the</u> class." Fed. R. Civ. P. 23(g)(2) (emphasis added).

While all firms here are experienced in class actions, when it comes to analyzing what each firm did in advancing the interests of the class in *this* case, Zagoria's counsel's work makes them the "best" candidate for Interim Class Counsel of "the class" in this case. They are the only counsel who researched the claims and selected a named plaintiff who had standing and was best suited to advance the full relief being prayed for on behalf of the putative class. All other counsel— experienced as they may be—raced to the courthouse with claims that their clients had no standing to assert or seeking relief their clients had no entitlement to obtain.

### III.   ZAGORIA'S COUNSEL'S QUALIFICATIONS  ARE UNIMPEACHABLE.

Zagoria demonstrated his counsel's superb qualifications. The firm resumés attached to Zagoria's motion [Dkt. Nos. 9-4 and 9-5] summarized the firms' expertise, providing a sample of

recent class actions where the firms have litigated successfully.  Focusing on this case, the following five-lawyer team with unimpeachable credentials and expertise will spearhead the litigation:

- **Roy A. Katriel—Senior Partner**:  Mr. Katriel graduated *Summa Cum Laude* and *First In His Class* from American University's Washington College of Law.  His legal career began at Arnold & Porter in Washington, D.C. where he defended nationwide class actions, antitrust, and intellectual property cases before joining a boutique plaintiff class action firm and eventually opening his own practice over 15 years ago.  He was Adjunct Professor of Law at American University where he taught Evidence and, with the late Professor Paul R. Rice, co-authored *Evidence: Federal Rules and the Common Law*, a core Evidence textbook used by law schools across the country.  Mr. Katriel has been lead counsel in numerous class actions involving complex matters and his representation in these has garnered superlative praise from judges across the country, including judges of this Court.  *See, e.g.,* Judge William H. Pauley, III's final approval and attorney-fee opinion in *Park v. The Thomson Corp.*, 2008 WL 4684232, at *6 (S.D.N.Y.  Oct. 22, 2008) ("Class Counsel [The Katriel Law Firm] have provided extremely high-quality representation."); Judge Josephine L. Staton's attorney fee opinion in *Tawfilis v. Allergan, Inc.*, 2018 WL 4849716, at *5 (C.D. Cal. Aug. 27, 2018) ("Class Counsel [The Katriel Law Firm and The Kalfayan Law Firm] also demonstrated exceptional skill in litigating this case."); Judge James V. Selna's attorney fee opinion in *Vizzi v. Mitsubishi Motors North Am.*, 2010 WL 11508375, at *2 (C.D. Cal. Mar. 29, 2010) ("As discussed in the Court's order granting preliminary approval, the Court is sufficiently impressed with the experience and competency of class counsel, The Katriel Law Firm and [its co-counsel]."); Judge Edward Davila's attorney fee opinion in *Villa v. San Francisco Forty-Niners, Ltd.*, No. 5:12-cv-5481-EJD (N.D. Cal. Nov. 17, 2016) ("Although Class Counsel [The Katriel Law Firm and The Kalfayan Law Firm] do not seek such a multiplier in the first instance, the Court finds

that Class Counsel would be entitled to such a multiplier given the . . . the complexities and unprecedented nature of the legal claims asserted here, and the outstanding results achieved.").

- **Ralph. B. Kalfayan—Senior Partner:** Mr. Kalfayan, who for over 25 years has been a named partner in his own law firm devoted to class action litigation, holds an LL.M degree with an emphasis in Intellectual Property. Among his recent class action achievements, Mr. Kalfayan and his co-counsel, Roy A. Katriel, were lead counsel in a complex antitrust action against 33 NFL defendants. The case settled classwide in a result lauded by the Honorable Edward J. Davila of the United States District Court for the Northern District of California. *See Villa v. San Francisco Forty-Niners, Ltd.*, No. 5:12-cv-5481-EJD (N.D. Cal.). In *Tawfilis v. Allergan, Inc.*, 2018 WL 4849716 (C.D. Cal. Aug. 27, 2018), Mr. Kalfayan was co-lead counsel in an antitrust class action that entailed depositions in Ireland, Spain, the United Kingdom, and across the United States, leading to a nationwide multi-million dollar classwide settlement. He is lead counsel in *In re Antelope Valley Groundwater Litigation*, JCCP 4408, representing a class of landowners who have lost their constitutional right to use natural water in the largest groundwater adjudication in the State of California with water rights valued at over one billion dollars.

- **Azra Mehdi—Senior Partner:** Ms. Mehdi, with over 24 years' experience handling large-scale class actions, founded The Mehdi Firm ("TMF") (serving as Zagoria's local counsel), a Minority Women-Owned Business. TMF was appointed co-lead counsel for an injunctive relief class in *Sidibe v. Sutter Health*, No. 12-cv-4854 (N.D. Cal). TMF was lead counsel and secured reversal of dismissal of the complaint in *Townsend v. Monster Beverage Corporation*, No. 12-02188 and No. 13-57094 (9th Cir. July 18, 2016), claiming energy drink labels deceived consumers. TMF represented consumers in *O'Brien v. Bloomstoday*, No. 3:12-cv-30041 (D. Mass) asserting claims under Massachusetts' Consumer Protection Act, the Electronic Fund

Transfer Act, and federal RICO statutes. It represented Mashreqbank, psc, one of the largest commercial banks in the United Arab Emirates, in a private commercial contract dispute in *Mashreqbank, psc v. ING Groep N.V.*, No. 1:13-cv-2318-LGS-RLE (S.D.N.Y). It represented Mashreqbank in *Maine State Ret. Sys. v. Countrywide Financial Corp.*, No. 2:10-cv-00302 and *Luther v. Countrywide Financial Corp.*, No. 2:12-cv-05125, which settled for $500 million.

- **Andrew J. Kubik—Senior Associate:** Mr. Kubik brings nearly 15 years' experience in litigating class actions involving Telephone Consumer Privacy Act, data breach, and consumer fraud claims. Mr. Kubik was part of the lead counsel team that represented purchasers of Bosch front-load washing machines alleging a defect, No. 10-00711 (C.D. Cal). The case was certified as a class action, and Bosch appealed to the Ninth Circuit Court and United States Supreme Court. After extensive expert discovery and motion practice, consumers ultimately prevailed, reaching a multi-million dollar classwide settlement on the eve of trial. Other favorable classwide settlements Mr. Kubik has helped to achieve include: $175 million settlement in antitrust case *Comes v. Microsoft Corp.*, No. CL82311 (D. Iowa); a $137.5 million settlement in securities fraud case *Carpenters Health & Welfare Fund v. The Coca-Cola Co.*, No. 00-2838 (N.D. Ga.); a $48 million settlement in the antitrust case *In re Reformulated Gasoline (RFG) Antitrust & Patent Litigation*, No. 05-01671 (C.D. Cal.); a $75 million settlement *In Re Wachovia Sec. Litig.*; and, *Ticho v. Budget Rent-a-Car Sys.*, which settled for a 100% refund of unfair fees to class members.

- **Veneeta Jaswal—Associate:** Ms. Jaswal, a graduate of the University of San Diego Law School with a concentration in Business and Corporate Law, focuses on class action litigation, and has been involved in the drafting of pleadings and discovery in this matter.

## CONCLUSION

For the foregoing reasons, Zagoria's motion should be granted.

Dated: July 7, 2020								Respectfully submitted,

                                              THE KATRIEL LAW FIRM. P.C.

                                              /s/ Roy A. Katriel

Roy A. Katriel, Esq. (*pro hac vice*)
**THE KATRIEL LAW FIRM, P.C.**
2262 Carmel Valley Road, Suite 201
Del Mar, CA  92014
Telephone: (619) 363-3333
e-mail: rak@katriellaw.com

Ralph B. Kalfayan, Esq. (*pro hac vice*)
e-mail: ralph@rbk-law.com
Veneeta Jaswal, Esq. (*pro hav vice*)
e-mail: veneeta@rbk-law.com
**THE KALFAYAN LAW FIRM, APC**
2262 Carmel Valley Road, Suite 200
Del Mar, CA 92014
Telephone: (619) 232-0331
Facsimile: (619) 232-4019

Azra Mehdi (AM-9719)
**THE MEHDI FIRM, P.C.**
347 5th Avenue, Suite 1402
New York, NY 10016
Telephone: (415) 293-8039
e-mail: azram@themehdifirm.com

*Counsel for Plaintiff Daniel Zagoria and the Putative Class*