**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

DANIEL ZAGORIA, on behalf of himself and all
others similarly situated,

        Plaintiff,

        v.

NEW YORK UNIVERSITY,

           Defendant.

Case No. 1:20-cv-3610-GBD

**DEFENDANT NEW YORK UNIVERSITY'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS
<u>PLAINTIFF DANIEL ZAGORIA'S COMPLAINT</u>**

**DLA PIPER LLP (US)**

Brian S. Kaplan
Keara M. Gordon
Colleen Carey Gulliver
Rachael C. Kessler
1251 Avenue of the Americas
New York, New York 10020-1104
Phone: (212) 335-4500
Facsimile: (212) 335-4501
brian.kaplan@us.dlapiper.com
keara.gordon@us.dlapiper.com
colleen.gulliver@us.dlapiper.com
rachael.kessler@us.dlapiper.com

*Attorneys for Defendant New York University*

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS .........................................................................................3

      A.     NYU's Various Schools, Colleges, and Programs Have Varying Approaches to Admissions, Tuition, and Fees............................................ 3

      B.     The Covid-19 Pandemic Forces NYU's Transition to Remote Learning.............. 4

      C.     NYU Provides Certain Refunds to Students. ................................................ 5

      D.     The Plaintiff ...................................................................................... 5

ARGUMENT ........................................................................................................6

I.      Standard of Review.......................................................................................... 6

II.     Mr. Zagoria's Claims Should Be Dismissed Because The Court Should Not Intervene in Educational Decisions. .................................................................. 7

III.    Mr. Zagoria Does Not Have Article III Standing To Assert Certain Claims. ................. 10

      A.     Mr. Zagoria Lacks Standing to Assert Claims Relating to Colleges, Schools, and Programs In Which He Was Not Enrolled.................................................. 10

      B.     Mr. Zagoria Lacks Standing to Seek Injunctive Relief......................................... 12

IV.    Mr. Zagoria's Breach of Contract Claim Must Be Dismissed........................................... 12

      A.     Mr. Zagoria Has Not Identified a Specific Promise That Was Broken. .............. 13

      B.     NYU Did Not Breach Any Contract. ................................................................ 16

      C.     Covid-19 Rendered Performance of the Alleged Contract Impossible. .............. 19

      D.     Mr. Zagoria Failed Adequately to Allege Damages. ........................................... 20

V.     Mr. Zagoria's Unjust Enrichment Claim Must Be Dismissed........................................ 21

      A.     The Unjust Enrichment Claim Is Duplicative of Mr. Zagoria's Breach of Contract Claim. ...................................................................................... 21

      B.     NYU Was Not Unjustly Enriched.......................................................................... 22

VI.    Mr. Zagoria's Money Had and Received Claim Must Be Dismissed............................... 24

      A.     Mr. Zagoria's Money Had and Received Claim Must Be Dismissed Because His Relationship with NYU Is Governed by Agreement...................................... 24

      B.     Mr. Zagoria Fails to State a Claim for Money Had and Received. ..................... 24

CONCLUSION....................................................................................................25

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*,
    731 F.2d 112 (2d Cir. 1984)....................................................................24

*Andre v. Pace Univ.*,
    655 N.Y.S.2d 777 (2d Dep't 1996)............................................................7

*Anthes v. New York Univ.*,
    2018 WL 1737540 (S.D.N.Y. Mar. 12, 2018), *aff'd sub nom. Anthes v.
    Nelson*, 763 F. App'x 57, 60 (2d Cir. 2019) ....................................14, 15

*Architectural Body Research Found. v. Reversible Destiny Found.*,
    335 F. Supp. 3d 621 (S.D.N.Y. 2018)........................................................3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................6

*Babiker v. Ross Univ. School of Med.*,
    2000 WL 666342 (S.D.N.Y. May 19, 2000), *aff'd* 86 F. App'x 457 (2d Cir.
    2004) .......................................................................................................18

*Barsoumian v. Williams*,
    29 F. Supp. 3d 303 (W.D.N.Y. 2014) ........................................................7

*Bautista v. CytoSport, Inc.*,
    223 F. Supp. 3d 182 (S.D.N.Y. 2016).......................................................21

*Belfon v. Credit Check Total Consumerinfo.com, Inc.*,
    2018 WL 4778906 (E.D.N.Y. Oct. 1, 2018)................................................3

*Broder v. Cablevision Sys. Corp.*,
    418 F.3d 187 (2d Cir. 2005)........................................................................3

*Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*,
    2016 WL 5416498 (S.D.N.Y. Sept. 28, 2016)..........................................17

*Cheves v. Trustees of Columbia Univ.*,
    89 A.D.3d 463 (1st Dep't 2011) ...............................................................14

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)....................................................................................12

*DiMuro v. Clinique Labs. LLC*,
    572 F. App'x 27 (2d Cir. 2014) ................................................................10

*Distributorsoutlet.com, LLC v. Glasstree, Inc.*,
    2016 WL 3248310 (E.D.N.Y. Jun. 10, 2016) ....................................................................15

*Doe v. Columbia Univ.*,
    2020 WL 1528545 (S.D.N.Y. Mar. 31, 2020) ..............................................................13, 17

*Doyle v. MasterCard Int'l Inc.*,
    2016 WL 9649874 (S.D.N.Y. Dec. 15, 2016) ...................................................................20

*Gally v. Columbia Univ.*,
    22 F. Supp. 2d 199 (S.D.N.Y. 1998).............................................................................8, 13

*Gertler v. Goodgold*,
    107 A.D.2d 481 (1st Dep't 1985) .......................................................................................7

*Global Entm't, Inc. v. New York Tel. Co.*,
    2000 WL 1672327 (S.D.N.Y. Nov. 6, 2000).................................................................24, 25

*Goel v. Ramachandran*,
    111 A.D.3d 783 (2d Dep't 2013) ......................................................................................23

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
    8 F. Supp. 3d 467 (S.D.N.Y. 2014) ..................................................................................23

*Kamen v. Am. Tel. & Tel. Co.*,
    791 F.2d 1006 (2d Cir. 1986)..............................................................................................3

*Keefe v. New York Law Sch.*,
    71 A.D.3d 569 (1st Dep't 2010) .......................................................................................13

*Kolodin v. Valenti*,
    115 A.D.3d 197 (1st Dep't 2014) ................................................................................19, 20

*L. N. Jackson & Co. v. Royal Norwegian Gov't*,
    177 F.2d 694 (2d Cir. 1949)..............................................................................................19

*Maas v. Cornell Univ.*,
    94 N.Y.2d 87 (1999) ...........................................................................................................7

*Magi XXI, Inc. v. Stato Della Cita Del Vaticano*,
    22 F. Supp. 3d 195 (E.D.N.Y. 2014) ................................................................................24

*Mahoney v. Endo Health Solutions, Inc.*,
    2016 WL 3951185 (S.D.N.Y. Jul. 20, 2016) ....................................................................21

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)............................................................................................3, 6

*Metal Cladding, Inc. v. Brassey,*
    159 A.D.2d 958 (4th Dep't 1990) ........................................................................24

*Mihalakis v. Cabrini Med. Ctr.*
    151 A.D.2d 345 (1st Dep't 1989) ........................................................................21

*Morrison v. Nat'l Austl. Bank Ltd.,*
    547 F.3d 167 (2d Cir. 2008).................................................................................6

*Mueller v. Michael Janssen Gallery Pte. Ltd.,*
    225 F. Supp. 3d 201 (S.D.N.Y. 2016)................................................................23

*Nicosia v. Amazon.com, Inc.,*
    834 F.3d 220 (2d Cir. 2016)...............................................................................12

*Matter of Olsson v. Bd. of Higher Educ. of City of N.Y.,*
    49 N.Y.2d 408 (Ct. App. 1980) ..........................................................................18

*Organizacion JD LTDA v. U.S. Dep't of Justice,*
    18 F.3d 91 (2d Cir. 1994)............................................................................19, 20

*Paladino v. Adelphi Univ.,*
    454 N.Y.S.2d 868 (2d Dep't 1982)......................................................................7

*Panix Promotions, Ltd. v. Lewis,*
    2002 WL 122302 (S.D.N.Y. Jan. 22, 2002) ......................................................25

*Patterson v. Morgan Stanley,*
    2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ................................................10, 11

*Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.,*
    2005 WL 1214281 (S.D.N.Y. May 20, 2005) ......................................................7

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v.*
    *Bank of N.Y. Mellon,*
    775 F.3d 154 (2d Cir. 2014)..........................................................................10, 12

*Rodriguez v. New York Univ.,*
    2007 WL 117775 (S.D.N.Y. Jan. 16, 2007) .......................................................18

*Roe v. Loyola Univ. New Orleans,*
    2007 WL 4219174 (E.D. La. Nov. 26, 2007) ................................................17, 23

*Samad v. Goldberg,*
    2016 WL 6678923 (S.D.N.Y. Nov. 14. 2016)....................................................23

*Schachter v. U.S. Life Ins. Co. in City of New York,*
    77 F. App'x 41 (2d Cir. 2003) .............................................................................6

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)..........................................................................................12

*Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.*,
    196 F. Supp. 2d 378 (S.D.N.Y. 2002)....................................................................24

*Ward v. New York Univ.*,
    2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000)....................................14, 15, 17, 18

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
    127 F. Supp. 3d 156 (S.D.N.Y. 2015)......................................................................3

*WestLB AG v. BAC Fla. Bank*,
    912 F. Supp. 2d 86 (S.D.N.Y. 2012)......................................................................21

*Yalincak v. New York Univ.*,
    2009 WL10714654 (D. Conn. Sept. 3, 2009) .......................................................22

## Other Authorities

Fed. R. Evid. 201 ...........................................................................................3, 15, 16

Fed. R. Civ. P. 12(b)(1)............................................................................................6

Fed. R. Civ. P. 12(b)(6)............................................................................................6

## PRELIMINARY STATEMENT

The novel coronavirus disease 2019 ("Covid-19") unleashed unprecedented and unanticipated threats to global public health and safety. Public health officials and New York State issued directives designed to protect the public – including the students, faculty, and staff at universities including defendant New York University ("NYU") – from the growing danger from Covid-19. These directives and the threats attendant to large groups congregating on a college campus forced NYU to make the difficult but well-considered decision to transition completely from in-person to remote teaching for the remainder of the Spring 2020 semester following NYU's spring break. Notwithstanding the significant logistical effort and expense involved, NYU and its faculty remained committed to delivering a world-class educational experience for its students by implementing creative ways to continue to conduct nearly all classes by remote instruction.

NYU followed through on its commitment. Professors continued to teach; students continued to learn. *See, e.g.*, Ex. 1.[1] Professors rapidly adapted; NYU held remote classes all across its 18 different schools and colleges, 147 centers and institutes, 400 programs, and over 230 areas of study. *See* Exs. 2, 3, 4, 5. Every day, teachers worked to deliver NYU's intellectually stimulating and creative learning environment in new and different ways, and students continued to benefit from those efforts. *See* Ex. 1. And, at the end of the semester, thousands of NYU students received education credits and earned their degrees. *See* Ex. 6.

Nevertheless, plaintiff Daniel Zagoria brought a putative class action against NYU that: asks this Court to second guess the judgment of NYU's educators and administrators who made and implemented the decision to transition to remote learning; argues that, in Mr. Zagoria's opinion, the remote learning environment to which NYU's faculty was forced to transition, and

---

[1]      "Ex." are exhibits attached to the Declaration of Keara M. Gordon, dated August 3, 2020.

the manner in which each of his teachers then delivered that instruction over a myriad of courses, was ineffective (apparently in total); and demands the return of his tuition in full.[2]  Despite the fact that Covid-19 – not NYU – caused the need to transition to remote learning, and that he and his fellow students continued to learn and earn academic credits, Mr. Zagoria asserts three claims: (1) breach of contract; (2) unjust enrichment; and (3) money had and received.

Each fails, and the Complaint should be dismissed for numerous reasons, including:

- At their core, each of Mr. Zagoria's claims impermissibly asks this Court to second guess NYU's educational decisions including the manner and effectiveness of the provision of educational services, which longstanding New York precedent precludes.  Indeed, to adjudicate these claims, the Court would have to review and assess Mr. Zagoria's (and potentially the entire putative class') course materials, syllabi, assignments, the method of teaching provided by each of his professors, both before and after the transition to remote learning, any subsequent lessening of effectiveness (however measured), the student's input and work product, the student's subjective learning preferences, and a plethora of other factors, and then ascribe some monetary value to any supposed deviation from the prior or promised standard (whatever that may be) (*see* Section II);

- Mr. Zagoria, a graduate student, lacks Article III standing to assert these claims on behalf of absent putative class members who attended colleges, schools, or programs within NYU that he did not attend.  Each school, college, and program is different – the experience will differ, for example, between graduate students versus undergraduates, law students versus medical students, versus engineering students, versus MBAs, versus actors, versus dancers, versus education majors, versus biology majors, for example (*see* Section III.A);

- Mr. Zagoria lacks Article III standing to seek injunctive relief, as he does not allege that he will be taking NYU classes after the current Summer 2020 term (*see* Section III.B);

- The breach of contract claim must be dismissed because (1) Mr. Zagoria does not allege a specific promise that NYU allegedly broke; (2) NYU did not breach any contract or act in bad faith; (3) even if NYU had breached a contract, (which it did not), Covid-19 rendered its performance impossible; and (4) Mr. Zagoria failed adequately to allege damages (*see* Section IV);

---

[2]      Three other sets of plaintiffs also filed similar actions against NYU.  *See Rynasko v. New York University*, No. 1:20-cv-3250-GBD (S.D.N.Y., filed Apr. 24, 2020), *Morales v. New York University*, No. 1:20-cv-4418-GBD (S.D.N.Y., filed Jun. 9, 2020), and *Romankow v. New York University*, No. 1:20-cv-04616-GBD (S.D.N.Y., filed Jun. 16, 2020).

- The unjust enrichment claim must be dismissed because: (1) it is duplicative of the other causes of action; and (2) Mr. Zagoria has not pled that NYU was unjustly enriched (*see* Section V); and

- The money had and received claim must be dismissed because: (1) a contract governed the parties' relationship; and (2) Mr. Zagoria intentionally paid money to NYU in exchange for its performance (*see* Section VI).

Respectfully, the Court should dismiss the Complaint in its entirety with prejudice.

## STATEMENT OF FACTS[3]

### A.   NYU's Various Schools, Colleges, and Programs Have Varying Approaches to Admissions, Tuition, and Fees.

NYU is an educational institution that, during the 2019-2020 school year alone, delivered higher education to over 50,000 enrolled undergraduate and graduate students.   Compl. ¶ 7. NYU's academic offerings include certificate programs, accelerated programs, study abroad, exchange programs, part-time studies, full-time studies, and associate, bachelor's, post-bachelor's, master's, post-master's, or doctoral programs. *See, e.g.*, Exs. 2–5.

These wide-ranging academic offerings are delivered across and through NYU's 18 different schools and colleges, 147 centers and institutes, 400 programs, and over 230 areas of

---

[3]   For purposes of this motion, NYU accepts the plaintiff's allegations as true except to the extent that they are contradicted by documentary evidence.   NYU reserves the right to dispute the accuracy of any factual allegation if the case proceeds past this motion (which it should not).   But, the Court is not required to accept as true allegations that are contradicted by documents.   When a "complaint relies on the terms of [an] agreement," the Court "may look to the agreement itself." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005). The Court may consider official government documents, publicly available documents, and published websites. *See, e.g.*, *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166–67 (S.D.N.Y. 2015) (judicial notice of "official government websites [and] governmental records") (applying Fed. R. Evid. 201); *Belfon v. Credit Check Total Consumerinfo.com, Inc.*, 2018 WL 4778906, at *3 (E.D.N.Y. Oct. 1, 2018) (judicial notice of "documents on published websites").   The Court can consider materials beyond the pleadings to resolve jurisdictional questions (*Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000)), and on a factual challenge to jurisdiction, "evidentiary matter may be presented by affidavit or otherwise." *Architectural Body Research Found. v. Reversible Destiny Found.*, 335 F. Supp. 3d 621, 633 (S.D.N.Y. 2018) (quoting *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).

study.  Exs. 2, 3, 4, 5.  Many of NYU's 18 different schools and colleges have their own admissions process (*see*, *e.g.*, Exs. 7, 8, 9, 10, 11) and used different admissions-related materials for prospective students,  on different websites, which highlight the different options and the distinct aspects unique to them, which have changed over time (*see*, *e.g.*, Exs. 12, 13, 14).

NYU assesses each student's tuition and fees based on the student's particular circumstances, including the school within NYU, the program within that school, and the particular courses.  *See* Compl. at ¶ 6 (NYU fees are "myriad" and Mr. Zagoria paid "additional fees" for unique coursework).

### B.    The Covid-19 Pandemic Forces NYU's Transition to Remote Learning.

On March 7, 2020, Governor Andrew Cuomo declared a State of Emergency across New York state due to a rapid increase in confirmed cases of Covid-19.  Ex. 15.  On March 11, 2020, the President of the United States announced that his administration would suspend all travel from Europe (including Netherlands and France) to the United States.  Exs. 16, 17.  Five days later, Governor Cuomo issued an Executive Order expanding upon his prior order; he closed all schools in the state, prohibited all large gatherings, and shuttered bars and restaurants.  Exs. 18, 19.  That same day, on March 16, 2020, consistent with the government orders and to protect the health and safety of its students and employees, NYU announced the difficult, but essential, decision to move all classes to remote learning for the duration of the semester, following its previous announcements of a temporary transition to remote learning.  Exs. 20, 21, 22.  On March 20, 2020, Governor Cuomo announced he would be signing the "New York State on PAUSE" Executive Order, which "ban[ned] all non-essential gatherings of individuals of any size for any reason."  Ex. 23.

4

**C.      NYU Provides Certain Refunds to Students.**

After suspending in-person instruction and closing virtually all of its residence halls, NYU refunded a *pro rata* amount for the costs of housing and dining services after the campus' closure. Ex. 22.  NYU's various schools also refunded certain activity fees, following evaluation of "dozens of individual school and course-based fees for the purpose of determining potential refunds, which are based on whether or not students received all or part of the services, supplies, or equipment associated with the fee."  Ex 24; *see* Ex. 25.  Consistent with its policy that undergraduate and graduate students who remained enrolled in courses after February 24, 2020 are not eligible for a tuition refund (*see* Exs. 26, 27, 28), and consistent with the fact that students continued to receive the benefit of their courses through remote instruction, NYU has not refunded tuition (*see* Ex. 29).

**D.      The Plaintiff**

Mr. Zagoria, a graduate student enrolled in NYU's Schack Institute of Real Estate ("Schack") (*see* Compl. ¶ 6) demands a refund of his Spring 2020 semester tuition.  Mr. Zagoria was accepted into Schack on March 28, 2018.  Ex. 30.  Notwithstanding his claim that remote instruction is allegedly subpar to in-person instruction (*see* Compl. ¶¶ 14, 25, 27), Mr. Zagoria voluntarily chose to enroll in remote classes *during the Summer 2020 semester*, with full knowledge that those classes would be conducted remotely.  *See* ECF No. 8, at 14 (emphasizing "Zagoria's ongoing status as an enrolled NYU student" including for the summer term).  Mr. Zagoria is scheduled to graduate from NYU with a Master of Science Degree in Real Estate Investment and Finance at the end of the Summer 2020 semester.  Compl. ¶ 6.

Mr. Zagoria admits that NYU's transition to remote learning was "attributable to the COVID 19 pandemic and the shelter-in-place order" Governor Cuomo issued and that "NYU may not bear culpability for the campus closures or the inability to provide any classroom instruction."  Compl. ¶¶ 1, 2.  Nevertheless, he claims that NYU breached an alleged contract with him; he does

not articulate or attach the purported "contract," instead referencing undated websites and course descriptions that discuss networking and travel opportunities specific to Schack. *See* Compl. ¶¶ 12, 13. Although Mr. Zagoria alleges that NYU has failed to refund various fees (*id.* ¶ 2), elsewhere in his complaint, he admits that NYU issued him a refund for activity fees associated with course-related travel that Covid-19 necessitated be canceled. *Id.* ¶ 13.

Mr. Zagoria seeks to represent a putative class of "all other similarly situated students enrolled at NYU who pay or are obligated to pay any tuition or fees and any students enrolled at NYU in any future summer session or semester in which NYU does not provide access to its campus facilities or on-campus instruction yet continues to charge full tuition and fees without any proration." *See* Compl. ¶ 27.

**ARGUMENT**

## I.   <u>Standard of Review</u>

In deciding Rule 12(b)(6) motions to dismiss, courts apply a "plausibility standard," which is guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, although the Court must accept all of a complaint's well-pled allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, only complaints that state a "plausible claim for relief" may survive a motion to dismiss. *Id.* at 679.

"A case is properly dismissed for lack of subject-matter jurisdiction under 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova,* 201 F.3d at 113; *see also Morrison v. Nat'l Austl. Bank Ltd.,* 547 F.3d 167, 170 (2d Cir. 2008) (same). Courts lack subject matter jurisdiction when the plaintiff does not have Article III standing. *Schachter v. U.S. Life Ins. Co. in City of New York,* 77 F. App'x 41, 42 (2d Cir. 2003). The plaintiff bears the burden of establishing standing. *Morrison,* 547 F.3d at 170.

6

## II.    Mr. Zagoria's Claims Should Be Dismissed Because The Court Should Not Intervene in Educational Decisions.

As a threshold matter, Mr. Zagoria's claims should be dismissed because they are premised on allegations that improperly ask the Court to evaluate whether NYU made the right decision to transition to remote learning and then, once made, to examine whether individual faculty members failed to provide an effective education in particular courses during the period of remote instruction.   "[C]ourts retain a 'restricted role' in dealing with and reviewing controversies involving colleges and universities." *Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*, 2005 WL 1214281, at *10 (S.D.N.Y. May 20, 2005) (finding that student failed to state a breach of contract claim) (quoting *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 92 (1999) (affirming dismissal of breach of contract claim and noting that administrators are "better suited" to make decisions)).

It is well-settled that New York does not recognize claims that require the Court to second guess the decisions of educators or are akin to claims "that the school breached its agreement by failing to provide an effective education," particularly where such claims would require a court to "evaluate the course of instruction" or "review the soundness of the method of teaching that has been adopted by an educational institution." *Andre v. Pace Univ.*, 655 N.Y.S.2d 777, 897 (2d Dep't 1996) (quotations omitted) (reversing trial court judgment for student). "Such injury would constitute a clear 'judicial displacement of complex educational determinations' that is best left to the educational community." *Id.* (quoting *Paladino v. Adelphi Univ.*, 454 N.Y.S.2d 868 (2d Dep't 1982)). "This public policy is grounded in the view that in matters wholly internal these institutions are peculiarly capable of making the decisions which are appropriate and necessary to their continued existence." *Gertler v. Goodgold*, 107 A.D.2d 481, 485 (1st Dep't 1985), *aff'd* 66 N.Y.2d 946 (1985); *see also*, *e.g.*, *Barsoumian v. Williams*, 29 F. Supp. 3d 303, 322 (W.D.N.Y. 2014) (dismissing breach of contract claim premised on an allegation that school "failed to provide

[plaintiff] 'with an education environment conducive to learning'"; it was not "a sustainable breach of contract claim [but instead] an impermissible one for educational malpractice.").

Indeed, "[n]ot every dispute between a student and a university is amenable to a breach of contract claim . . . Where the essence of the complaint is that the school breached its agreement by failing to provide an effective education, the complaint must be dismissed as an impermissible attempt to avoid the rule that there is no claim in New York for 'educational malpractice.'" *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206–207 (S.D.N.Y. 1998) (dismissing breach of contract claims on a motion to dismiss). "[E]ven while applying contract principles, the courts have been careful to disallow claims that would involve the judiciary in reviewing the day-to-day judgments of educators." *Id.* at 209.

This longstanding line of authority is directly applicable here. In *Paynter v. New York University*, for example, the plaintiff sued for a tuition refund after NYU suspended classes on May 7, 1970 as a result of anti-war demonstrations reacting to the deployment of American troops to Cambodia and the events at Kent State. 319 N.Y.S.2d 893, 893 (1st Dep't 1971). The First Department reversed the trial court's decision that a refund was warranted and held that the trial court "erred in substituting its judgment for that of the University administrators and in concluding that the University was unjustified in suspending classes for the time remaining in the school year prior to the examination period." *Id.* at 894. In so doing, the Court recognized the general principle that "[p]rivate colleges and universities are governed on the principle of self-regulation, free to a large degree, from judicial restraints, and they have inherent authority to maintain order on their campuses." *Id.* The Court expressly observed that, "while in a strict sense, a student contracts with a college or university for a number of courses to be given during the academic year, the services rendered by the university cannot be measured by the time spent in a classroom." *Id.*

8

Precisely the same result follows here, for the same reasons. Mr. Zagoria challenges NYU's decision to move all courses to remote instruction and alleges that, in his opinion, the resulting education that each faculty member provided, in each class, was not as effective as it would have otherwise been. Compl. ¶ 1. Specifically, Mr. Zagoria's complaint is predicated on the assertion that "online education devoid of campus interaction and facilities plainly is not equivalent in nature or value to the traditional in-classroom on-campus education for which NYUs students matriculated and paid." *Id.* ¶ 25. He alleges that this "not equivalent . . . and less valuable" education entitles him to a refund of tuition and fees. *Id.* at 14, ¶ 27. As a result, to examine and evaluate the actual quality of the education provided, the Court would be required to review and assess Mr. Zagoria's (and potentially every NYU student's) course materials, syllabi, objectives, assignments, the method of teaching provided, both before and after the transition to remote learning, its effectiveness (however measured), the student's input and work product, and a plethora of other factors, and then ascribe some monetary value to any supposed deviation from the prior or promised standard. Such an analysis would be further complicated by the fact that this calculus may be different depending upon whether the course at issue is statistics versus Shakespeare, versus law, versus medicine, versus finance, versus education, versus engineering, versus chemistry. And, the Court would need to factor in the subjective desires and preferences of students, which are not uniform and many of whom learn differently.

Well-established precedent mandates finding that the Court should not wade into such day-to-day judgments of educators – precisely what courts in New York expressly and uniformly have declined to do for decades. Accordingly, Mr. Zagoria's claims are impermissible and must be dismissed.

**III.**     <u>Mr. Zagoria Does Not Have Article III Standing To Assert Certain Claims</u>.

     **A.**     **Mr. Zagoria Lacks Standing to Assert Claims Relating to Colleges, Schools, and Programs In Which He Was Not Enrolled.**

Mr. Zagoria does not have standing to assert claims related to the various schools, colleges, and programs he did not attend. Courts hold that a named plaintiff lacks standing to assert claims on behalf of putative class members where the putative class members' claims would not raise "a set of concerns nearly identical" to those raised by the named plaintiff. *DiMuro v. Clinique Labs. LLC*, 572 F. App'x 27, 29 (2d Cir. 2014) (summary order) (quotation omitted) (dismissing claims for lack of standing in consumer class action where named plaintiffs bought only four of seven products at issue because "each of the seven different products have different ingredients, and [defendant] made different advertising claims for each product" thus "[e]ntirely unique evidence" would be required to assess claims pertaining to each product); *see also, e.g.*, *Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of N.Y. Mellon*, 775 F.3d 154, 162 (2d Cir. 2014) (affirming dismissal for lack of standing); *Patterson v. Morgan Stanley*, 2019 WL 4934834, at * 17 (S.D.N.Y. Oct. 7, 2019) (dismissing claims for lack of standing).

In *Retirement Board*, for example, the Second Circuit found that a plaintiff lacked standing where its claims, including for breach of contract, "turn[ed] on very different proof" in relation to different loans being held by different trusts at the same bank. 775 F.3d at 162 (quotations omitted). The Court held that the issue of "whether [the defendant] breached its obligations under the governing agreements . . . require[d] examining its conduct with respect to each trust" because there is "no way in which answering these questions for the trusts in which Plaintiffs invested [would] answer the same questions for the numerous trusts in which they did not invest." *Id.*

Similarly, in *Patterson*, the Court held that the named plaintiffs in an ERISA case did not having standing to assert claims on behalf of absent class members who invested in funds in which

the named plaintiffs did not invest.  2019 WL 4934834, at *4–7.  The Court reasoned that "the evidence that Plaintiffs will have to put forward to establish liability will vary from fund to fund, and Plaintiffs' ability to establish liability as to decisions made in connection with one fund will do little to advance their case for liability as to other funds."  *Id.* at * 6.

So too here.  Mr. Zagoria purports to represent a class that consists not only of students in his particular school or program, but everyone who attended any program within NYU, whether it be undergraduate, graduate, or doctorate, in any discipline whatsoever, running the gamut from English, to musical theater, to real estate investment and finance, to the drama program, to medicine, to law, to statistics, to engineering, to education, and more.  The admissions-related materials describing these varied programs were different across NYU's various colleges, schools, and programs, and have changed over time.  *See* Ex. 31.  And, the manner and method of the delivery of classes within each – much less across all – colleges, schools, and programs, varied, as did the student's subjective views of each course.

Mr. Zagoria bases his contract claim on the representations that he alleges NYU made to him.  Obviously, he was not exposed to representations made across each of NYU's various disciplines, nor did any alleged contract encompass all of them.  Indeed, Mr. Zagoria highlights the differences between himself—a graduate student in Schack within NYU's School of Professional Studies—and the rest of NYU students by quoting different admissions materials applicable to different colleges, schools, and programs.  *Compare* Compl. ¶¶ 12, 13 with ¶¶ 14, 15, 17, 19.  By way of example, Mr. Zagoria cannot claim that any contract with him required NYU to ensure that he participated in "archaeological excavations" in Greece.  *Id.* at ¶17.

Moreover, NYU provided different refunds to students with various school or course-based fees or equipment that differed across the different schools, colleges, and programs.  *See* Ex. 25.

11

Thus, "whether [NYU] breached its obligations under the governing agreements . . . require[s] examining its conduct with respect to" the different admissions materials for each school, college, and program, *see Ret. Bd.*, 775 F.3d at 162, *see also* Section IV.A, *infra*, and therefore Mr. Zagoria does not have standing to assert claims on those other students' behalf.

**B.      Mr. Zagoria Lacks Standing to Seek Injunctive Relief.**

Mr. Zagoria does not have standing to seek injunctive relief, and therefore his claims must be dismissed to the extent they seek such relief.  The "'irreducible constitutional minimum' of standing" requires a plaintiff to plead a "'concrete and particularized injury . . . fairly traceable to the challenged conduct of the defendant.'"  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-1548 (2016) (quotation omitted).  A plaintiff "lack[s] standing to pursue injunctive relief [if he or she is] unable to establish a 'real or immediate threat' of injury."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983)).  "[P]ast injuries . . .  [therefore] do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that [he or she] is likely to be harmed again in the future in a similar way." *Id.*

Here, Mr. Zagoria's purported injuries resulting from the now concluded Spring 2020 semester purport to allege past harms which do not confer standing to seek prospective injunctive relief.  Moreover, he will graduate from NYU at the conclusion of the current Summer 2020 semester, and therefore cannot possibly suffer any harm relating to future semesters at NYU.  *See* Compl. ¶ 6.  Accordingly, Mr. Zagoria does not and cannot allege a threat of future harm, and therefore does not have standing to seek injunctive relief.

**IV.     Mr. Zagoria's Breach of Contract Claim Must Be Dismissed.**

Mr. Zagoria's breach of contract claim must be dismissed for several reasons.  He fails to allege: (1) a specific promise by NYU sufficient to establish a contract; (2) any breach of an alleged contract; or (3) any resulting damages or harm to him.  Further, even if there was a contract to

provide in-person instruction (which there was not), Covid-19 and the related government edicts shuttering schools and businesses rendered NYU's performance impossible.

### A.   Mr. Zagoria Has Not Identified a Specific Promise That Was Broken.

Mr. Zagoria's breach of contract claim must be dismissed because he fails to allege a specific promise by NYU that was broken.  As an initial matter, the implied contract between NYU and Mr. Zagoria was, at most, that NYU would provide him ability to earn academic credits, and ultimately a degree, in exchange for tuition payments.  *See Gally*, 22 F. Supp. 2d at 206 ("When a student enrolls at a university, an implied contract arises: if the student complies with the terms prescribed by the university, she will obtain the degree she seeks.").  NYU performed: during the Spring 2020 semester, NYU continued to provide Mr. Zagoria with instruction and academic credits.  Thus, NYU did not breach this contract.

To the extent Mr. Zagoria attempts to state a claim based on an implied contract arising out of the admissions materials, the claim fails.  To state a claim for breach of an implied contract against a university under New York law, "a plaintiff must identify: (1) a specific contract, (2) specified services offered or promises made, and (3) the university's failure to provide those services or keep those promises."  *Doe v. Columbia Univ*., 2020 WL 1528545 (S.D.N.Y. Mar. 31, 2020) (dismissing breach of contract claim where plaintiff failed to "make specific, non-conclusory allegations" regarding how the defendant university breached an alleged contract). "The application of contract principles to the student-university relationship does not provide judicial recourse for every disgruntled student" and "the mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted."  *Gally*, 22 F. Supp. 2d at 207.  "[O]nly specific promises set forth in a school's bulletins, circulars and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract."  *Keefe v. New York Law Sch.*, 71 A.D.3d 569,

13

570 (1st Dep't 2010) (affirming dismissal of breach of contract claim; no specific language where defendant "promised that it would utilize a pass/fail grading system").  General statements of policy are insufficient.  *See Anthes v. New York Univ.*, 2018 WL 1737540, at *13 (S.D.N.Y. Mar. 12, 2018), *aff'd sub nom. Anthes v. Nelson*, 763 F. App'x 57, 60 (2d Cir. 2019) (dismissing claim); *Ward v. New York Univ.*, 2000 WL 1448641, at *3-4 (S.D.N.Y. Sept. 28, 2000) (same).

In *Ward*, for instance, the plaintiff sought to premise her breach of contract claims against NYU on "a number of the University's general policy statements and broad and unspecified procedures and guidelines" including "that defendants promised: i) to provide a great learning environment for adult students; ii) to respect adult students and treat them with respect; iii) to not discriminate against adult students; iv) to provide supervision and teaching by honest and unbiased instructors; and v) to provide and to follow guidelines for student treatment."  2000 WL 1448641, at *4.  Initially, the Court noted that "courts should not substitute their judgments for those of the educators" and that it was "reluctant to venture into the domain of the University."  *Id.* at *3.  The Court further held that the statements were insufficient in any event to serve as the basis for a breach of contract claim because they were "more akin to general statements of policy" and not "designated and discrete promises, relating to the incidents of the forthcoming education, such as the provision of a designated number of hours of instruction[.]"  *Id* at *4. (citation omitted).

Similarly, in *Cheves v. Trustees of Columbia Univ.,* the plaintiff alleged that Columbia breached a contract with him by not permitting him on campus.  89 A.D.3d 463, 464 (1st Dep't 2011).  The First Department affirmed dismissal of the contract claim, finding that "nothing in [the Alumni Relations brochure serving as the basis of the plaintiff's claims] guarantee[d] unfettered, irrevocable access for alumni to the campus or its facilities" and therefore "the complaint fails to rely on a specific promise material to plaintiff's relationship with Columbia that has been

14

breached."  *Id.*; *see also Anthes*, 2018 WL 1737540, at *13 (dismissing breach of contract claim alleging a failure to assist in plaintiff's employment search where the plaintiff "fail[ed] to articulate the nature of the agreement that was breached," and "even if Plaintiff expected such assistance, Plaintiff does not allege that there was ever an agreement, express or implied, to do so.").

Here, similarly, Mr. Zagoria fails to specify a particular contract with NYU that was allegedly breached, instead premising his claims on puffery and generic statements from the NYU website.  He does not point to any language promising that classes would be held in person. Instead, with regard to the particular school in which Mr. Zagoria is enrolled, Schack, he points to two alleged representations: (1) a claim on the school's website that the real estate program involves "[d]irect engagement with industry, through the nation's leading conferences, regular speakers, internships, and more," (Compl. ¶ 12); and (2) a Global Real Estate Markets course in which he enrolled for the Spring 2020 semester that was expected to involve travel to Europe (*id.* ¶ 13).  As to the first statement containing the statement regarding networking (Compl. ¶ 12), historical versions of the webpage indicate that that statement did not appear on NYU's website until at least August 2019, after Mr. Zagoria applied to and enrolled at NYU.  *See* Ex. 31.[4]  Thus, that statement cannot be the basis of any contract between Mr. Zagoria and NYU.  In any event, like the statements in *Ward* and *Anthes*, both statements do not constitute a specific promise by NYU to provide a particular service (much less a promise to provide in-person classes), and cannot serve as the basis for a breach of contract claim.  *See* 2000 WL1448641, at *4.

---

[4]        "[C]ourts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned under Federal Rule of Evidence 201.*" Distributorsoutlet.com, LLC v. Glasstree, Inc.*, 2016 WL 3248310, at *2 (E.D.N.Y. Jun. 10, 2016).

Mr. Zagoria's Complaint also describes marketing materials for various colleges, schools, and programs within NYU, including the Tandon School of Engineering (Compl. ¶ 14), the College of Arts and Sciences (*id.* ¶ 15), the Institute of Fine Arts (*id.* ¶ 17), and the Stern School of Business  (*id.* ¶ 19).  Mr. Zagoria, however, alleges that he is a graduate student enrolled in Schack (*id.* ¶ 12), and does not allege that he ever enrolled in any of these other colleges, schools, or programs.  As discussed in Section III.A, Mr. Zagoria does not have standing to assert claims on behalf of students in colleges, schools, or programs in which he was not enrolled, and therefore his claims must be dismissed to the extent they are premised on such representations.

Finally, Mr. Zagoria mentions a string of online posts from purported NYU students, pulled from a Change.org online petition, in an attempt to support his claims.  *Id.* ¶¶ 22, 23, 50.  This petition, however, does not provide a basis for any of Mr. Zagoria's claims.  First, the Court need not presume the facts alleged in the Change.org petitions to be true, as none of these facts "can be accurately and readily determined" and do not derive "from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).[5]  Further, the petitions are not relevant to Mr. Zagoria's claims.  None of these purported "students" are named plaintiffs, and may not in fact even be NYU students, as anyone has the ability to access and sign a Change.org petition.  Mr. Zagoria's breach of contract claim must be dismissed.

### B.      NYU Did Not Breach Any Contract.

Even if Mr. Zagoria's breach of contract claim was premised on a sufficiently specific promise by NYU (which it is not), he has not sufficiently alleged that NYU breached any such

---

[5]      If the Court takes judicial notice of the Change.org petition the Complaint references (which it should not), there were at least three other Change.org petitions urging NYU to close its campus to ensure the safety of students and staff because of Covid-19.  *See* Exs. 32–34.

contract, and therefore the breach of contract claim must be dismissed.  *See*, *e.g.*, *Ward*, 2000 WL 1448641, at *5.  "[S]tating in a conclusory manner that an agreement was breached," as Mr. Zagoria has done here, "does not sustain a claim of breach of contract."  *Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*, 2016 WL 5416498, at *8 (S.D.N.Y. Sept. 28, 2016).

In *Ward*, the Court dismissed a breach of contract claim against NYU because "bald assertions and conclusory allegations claiming that the University's rules or procedures were not followed, do not state a valid claim" and the plaintiff "failed to allege any facts demonstrating that defendants failed to abide by the University's regulations or procedures."  2000 WL 1448641, at *5.  Similarly, in *Doe v. Columbia Univ.*, the Court dismissed a breach of contract claim that was "not viable because [the plaintiff] fails to make specific, non-conclusory allegations regarding how Columbia failed to comply with its disciplinary procedures."  2020 WL 1528545, at *6.

Here, as in *Ward* and *Doe v. Columbia*, Mr. Zagoria fails adequately to plead a breach by NYU.  He admits that NYU upheld its end of the bargain: it continued to provide him educational services and it awarded him academic credits for the coursework he completed during the Spring semester.  Compl. ¶ 1.  He then enrolled in the Summer 2020 semester, and is expected to graduate at the conclusion of the summer term.  *See id.* ¶ 11; ECF No. 8, at 14.  As a result, there is no breach of contract.  *See Roe v. Loyola Univ. New Orleans*, 2007 WL 4219174, at *2-3 (E.D. La. Nov. 26, 2007) (rejecting breach of contract claim brought by student who attended classes at another school following Hurricane Katrina: "plaintiff was able to attend classes . . . receive those credits towards his Loyola degree, and graduate without any delay" and "Plaintiff has pointed to no [contractual] provision that would entitle him to a free semester of law school.").

Additionally, under NYU's refund policy, to receive a full tuition refund, students were required to withdraw from their classes by February 24, 2020.  Exs. 26, 27, 28.  NYU did not

breach the terms of this policy by not providing tuition refunds *after* February 24, 2020, or by not providing tuition refunds to students who, like Mr. Zagoria, *never* withdrew from their classes. NYU did issue refunds to students for certain services that could not be provided in light of Covid-19, including for "spring break study abroad" and "study away" fees and costs. *See* Ex. 25.

Moreover, Mr. Zagoria's breach of contract claim must be dismissed because he does not allege (nor could he plausibly allege) that NYU acted in bad faith. To the extent an implied contract exists between students and a university, "[t]he essence of the implied contract is that an academic institution must act in good faith in its dealings with its students." *Matter of Olsson v. Bd. of Higher Educ. of City of N.Y.*, 49 N.Y.2d 408, 414 (Ct. App. 1980). Thus, "[b]reach of contract claims brought by students against universities are 'subject to judicial review only to determine whether the defendants abided by their own rules and whether they have acted in good faith or their action was arbitrary or irrational.'" *Rodriguez v. New York Univ.*, 2007 WL 117775, at *4 (S.D.N.Y. Jan. 16, 2007) (dismissing claims) (quoting *Babiker v. Ross Univ. School of Med.*, 2000 WL 666342, at *6 (S.D.N.Y. May 19, 2000), *aff'd* 86 F. App'x 457 (2d Cir. 2004)). Accordingly, courts dismiss breach of contract claims where there is no allegation that the university acted in bad faith. *See*, *e.g.*, *Ward*, 2000 WL 1448641, at *5 (dismissing claim where "there is nothing in the record . . . to suggest that defendants have either acted in bad faith, arbitrarily or irrationally."); *Olsson*, 49 N.Y.2d at 414 (dismissing claim where college "amply fulfilled its obligation to act in good faith").

Mr. Zagoria does not plead that NYU acted in bad faith to breach any applicable contract. While he points to statements on the Schack website regarding networking (*see* Compl. ¶ 12), he does not allege that NYU failed to provide networking opportunities in bad faith. And, he does not allege that NYU's purported failure to proceed with the travel associated with his Global

Markets course was done in bad faith.  Quite the contrary, NYU was forced to cancel international travel in a good faith effort to protect the health and safety of its students and staff in the face of the unprecedented Covid-19 pandemic.  *See* Exs. 15–19, 23.  Indeed, Mr. Zagoria acknowledges that NYU's "actions are attributable to the COVID 19 pandemic and the shelter-in-place order in effect in the State of New York."  Compl. ¶ 1.  He further admits that "NYU may not bear culpability for the campus closures or the inability to provide any classroom instruction."  *Id.* ¶ 2.  Accordingly, even if the statements on which Mr. Zagoria premises his claims were enough to specify a contract (which they are not), there is no colorable allegation that NYU acted in bad faith and breached any purported contract.

Because Mr. Zagoria fails to allege a breach or any bad faith conduct by NYU, the breach of contract claim must be dismissed.

### C.    Covid-19 Rendered Performance of the Alleged Contract Impossible.

Even if Mr. Zagoria could make out a claim for breach of contract (which he cannot), Covid-19 and resulting government orders rendered NYU's performance impossible. Impossibility excuses performance where the "destruction of the subject matter of the contract or the means of performance makes performance objectively impossible" as a result of "an unanticipated event that could not have been foreseen or guarded against in the contract." *Kolodin v. Valenti*, 115 A.D.3d 197, 200 (1st Dep't 2014); *see also Organizacion JD LTDA v. U.S. Dep't of Justice*, 18 F.3d 91, 95 (2d Cir. 1994) (affirming dismissal); *L. N. Jackson & Co. v. Royal Norwegian Gov't*, 177 F.2d 694, 697 (2d Cir. 1949) (reversing judgment for plaintiff on breach of contract claim where "performance [was] subsequently prohibited by an administrative order made with due authority by an officer of the United States").

In *Organizacion JD LTDA*, for instance, the plaintiffs sued two banks after the government seized money transfers intended for the plaintiffs on the basis that the transfers involved proceeds

related to drug trafficking. 18 F.3d at 93. The plaintiffs asserted several causes of action, including breach of contract. *Id.* at 95. The Second Circuit affirmed the District Court's dismissal of the breach of contract claims on impossibility grounds, holding that "the private intermediary banks cannot be subject to a damage action because the intervening government actions in ordering the seizures of the [transfers] rendered any enforceable contract impossible to perform." *Id.*; *see Kolodin*, 115 A.D. at 199-200 (finding impossibility where court order prevented performance).

Here, similarly, Covid-19 and the resulting government orders destroyed the means of NYU's performance with respect to certain allegations in the complaint. NYU's ability to provide in-person networking events and travel was rendered impossible by Covid-19 and associated government orders. *See* Exs. 15–19, 23. In fact, Mr. Zagoria admits that NYU's transition to remote learning was "attributable to the COVID 19 pandemic and the shelter-in-place order" Governor Cuomo issued and that "NYU may not bear culpability for the campus closures or the inability to provide any classroom instruction." Compl. ¶¶ 1, 2. Accordingly, any alleged non-performance by NYU is excused by impossibility, and Mr. Zagoria's breach of contract claim should be dismissed.

### D.    Mr. Zagoria Failed Adequately to Allege Damages.

Mr. Zagoria's breach of contract claim also must be dismissed because he fails sufficiently to allege damages. To state a claim for breach of contract under New York law, a plaintiff must plead that the defendant breached its contract and the plaintiff suffered damages as a result of the defendant's alleged breach. *See Doyle v. MasterCard Int'l Inc.*, 2016 WL 9649874, at *2 (S.D.N.Y. Dec. 15, 2016). A claim must be dismissed where the plaintiff does not allege that he "suffered cognizable damages as required by New York law." *See id.* at *2-3 (dismissing breach of contract claim). Since Mr. Zagoria in fact received educational credits in exchange for tuition paid (*see* Compl. ¶ 1; ECF No. 8, at 14), he has not and cannot plead that he suffered any damages.

Mr. Zagoria also cannot claim he received no benefit from the period of remote instruction – as he did earn credits – yet he asks for 100 percent of his tuition back.  In reality, a claim that the fact that Covid-19 required some period of the semester's instruction to be remote somehow devalued his education or the NYU degree he will earn is too speculative to be actionable under New York law.  To ascertain liability and damages, the Court would have to examine the method and effectiveness of each course of instruction by each professor prior to Covid-19 and then, after, assess the value of in-person instruction as compared to remote instruction as perceived by Mr. Zagoria, on a course by course basis, and calculate the percentage of tuition (if any) that should be refunded on a course by course basis.  *See Mihalakis v. Cabrini Med. Ctr.* 151 A.D.2d 345, 346 (1st Dep't 1989) (the "difference between the value of the internship program provided by defendants and the value of an internship program having the characteristics that the defendant represented to plaintiff" was too speculative to support a claim for fraud); *WestLB AG v. BAC Fla. Bank*, 912 F. Supp. 2d 86, 93 (S.D.N.Y. 2012) (allegations that plaintiff was damaged by "a general decline in the value" was "insufficient to adequately plead damages for a breach of contract").  Because he fails to allege any non-speculative way to do this analysis, Mr. Zagoria fails to allege any damages to support the claim for breach of contract and the claim must be dismissed.

**V.     Mr. Zagoria's Unjust Enrichment Claim Must Be Dismissed.**

**A.     The Unjust Enrichment Claim Is Duplicative of Mr. Zagoria's Breach of Contract Claim.**

Mr. Zagoria's unjust enrichment claim must be dismissed as duplicative.  Under New York law, a claim for unjust enrichment must be dismissed where it is "merely duplicative of [the] other causes of action."  *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 194 (S.D.N.Y. 2016); *see also Mahoney v. Endo Health Solutions, Inc.*, 2016 WL 3951185, at *11 (S.D.N.Y. Jul. 20, 2016) (dismissing unjust enrichment claim as duplicative because unjust enrichment "is not a catchall

cause of action" and "is not available where it simply duplicates, or replaces, a conventional tort

of contract claim.") (quotations omitted).  In *Bytemark, Inc. v. Xerox Corp.*, for instance, the Court

dismissed as duplicative the plaintiff's unjust enrichment claim "based on the same factual

allegations underlying its contract and tort claims."  342 F. Supp. 3d 496, 512 (S.D.N.Y. 2018).

Moreover, courts have held that students may not assert unjust enrichment claims against

universities where the relationship is governed by a contract.  *See*, *e.g.*, *Yalincak v. New York Univ.*,

2009 WL 10714654, at *14 (D. Conn. Sept. 3, 2009) (applying New York law).  In *Yalincak*, the

plaintiff, a former NYU student, asserted multiple claims against NYU, including for breach of

contract and unjust enrichment.  *See id.* at *9-10, *14.  The Court dismissed the unjust enrichment

claim, finding that "[a]s plaintiff acknowledges, he and NYU had an implied contract . . . governed

by the university's bulletins and regulations.  Because Plaintiff and NYU had a contract, he cannot

bring an action for unjust enrichment."  *Id.* (citation omitted).

The same result is compelled here.  Mr. Zagoria's unjust enrichment claim is premised on

the same facts and seeks the same remedy as his breach of contract claim.  Mr. Zagoria's unjust

enrichment claims are almost verbatim restatements of his breach of contract allegations:

| **Unjust Enrichment Allegations** | **Breach of Contract Allegations** |
|---|---|
| "Plaintiff and the class members conveyed money to NYU in the form of tuition and fees for on-campus instruction and facilities that NYU did not provide and is not providing." (Compl. ¶ 52). | "NYU cannot continue to demand full payment of tuition and fees from Plaintiff and class members for services and facilities that NYU indisputably has failed and is failing to provide."  (Compl. ¶ 44). |

Mr. Zagoria's unjust enrichment claim must be dismissed.

**B.     NYU Was Not Unjustly Enriched.**

To state a claim for unjust enrichment under New York law, "a plaintiff must plead that

(1) the defendant was enriched (2) at the plaintiff's expense and (3) under the circumstances of

such enrichment equity and good conscience require the defendant to make restitution."
*Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014).  A
mere allegation that a defendant "received benefits, standing alone, is insufficient to establish a
cause of action to recover damages for unjust enrichment."  *Samad v. Goldberg*, 2016 WL
6678923, at *9 (S.D.N.Y. Nov. 14. 2016) (quoting *Goel v. Ramachandran*, 111 A.D.3d 783, 791
(2d Dep't 2013)).  Instead, a plaintiff must establish that under the circumstances "it is against
equity and good conscience to permit the defendant to retain what is sought to be recovered," *Goel*,
111 A.D.3d at 791 (quotation omitted), such as through allegations that there was "some mistake
or deception practiced upon" the plaintiff by the defendant.  *Id.* at 792 (dismissing unjust
enrichment claim); *see also*, *e.g.*, *Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d
201, 209 (S.D.N.Y. 2016) (dismissing unjust enrichment claim where "plaintiff [did] not
adequately allege[] that any enrichment was 'unjust'" because "[n]othing in the Amended
Complaint suggests that [defendant] was not entitled to any fee it earned.").

Here, there are no allegations of mistake or deception.  NYU did not deceive Mr. Zagoria
into paying tuition or fees knowing that months or years later an unprecedented global pandemic
followed by state-wide shelter-in-place orders would force NYU to take the unprecedented action
to close all in-person learning and transition to remote instruction, and he did not mistakenly
provide tuition payments to NYU under some false impression of what would happen in this
scenario.  Instead, Mr. Zagoria voluntarily paid tuition and fees to NYU in exchange for
educational services and credits, which he received from NYU via remote instruction.  As such, if
NYU "were required to reimburse plaintiff for [his] tuition payments he made, plaintiff would be
unjustly enriched as a result."  *See Roe*, 2007 WL 4219174, at *3 (rejecting unjust enrichment
claim).  Where, as here, Mr. Zagoria "receive[s] the benefits of the services defendants provided,"

he "does not have an equitable claim to return of the sums paid for such services." *Metal Cladding, Inc. v. Brassey*, 159 A.D.2d 958 (4th Dep't 1990); *see also Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.*, 196 F. Supp. 2d 378, 388 (S.D.N.Y. 2002) (rejecting unjust enrichment claim).   And, NYU refunded fees associated with certain services that could not be provided in light of Covid-19.   *See* Ex. 25.   Accordingly, the unjust enrichment claim must be dismissed.

**VI.**   <u>**Mr. Zagoria's Money Had and Received Claim Must Be Dismissed.**</u>

**A.**   **Mr. Zagoria's Money Had and Received Claim Must Be Dismissed Because His Relationship with NYU Is Governed by Agreement.**

As a threshold matter, where "the parties have an express agreement regarding the money, then a claim for money had and received cannot exist." *Global Entm't, Inc. v. New York Tel. Co.*, 2000 WL 1672327, at *5 (S.D.N.Y. Nov. 6, 2000).   "The money had and received action is intended to apply when there is an *absence of . . . agreement*[.]" *Magi XXI, Inc. v. Stato Della Cita Del Vaticano*, 22 F. Supp. 3d 195, 207 (E.D.N.Y. 2014) (emphasis added).   Here, Mr. Zagoria had an agreement with NYU under which he was to pay tuition in exchange for NYU's delivery of education by way of academic courses and credits.   His relationship with NYU is governed by this agreement, barring his money had and received claim, which must be dismissed with prejudice.

**B.**   **Mr. Zagoria Fails to State a Claim for Money Had and Received.**

Even if the claim was not subject to dismissal because NYU and Mr. Zagoria's relationship is governed by an agreement, the claim is nonetheless subject to dismissal for failure to state a claim.   Under New York law, to state a claim for money had and received a plaintiff must allege that that: (1) the defendant received money belonging to the plaintiff; (2) the defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, the defendant should not be permitted to keep the money.   *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank,*

*Nat'l Ass'n*, 731 F.2d 112, 125 (2d Cir. 1984).  "Traditionally, the remedy for money had and received is available if one man has obtained money from another, through the medium of *oppression, imposition, extortion, or deceit, or by the commission of a trespass*."  *Panix Promotions, Ltd. v. Lewis*, 2002 WL 122302, at *2 (S.D.N.Y. Jan. 22, 2002) (quotation omitted, emphasis added); *see also Global Entm't*, 2000 WL 1672327, at *5 (a claim for money had and received stands where "one party possessed money that *in equity and good conscience* he ought not to retain and that belongs to another.") (emphasis added).

In *Panix Promotions*, for example, the Court dismissed the plaintiff's claim for money had and received where the plaintiff claimed it was "owed money – that it *intentionally* paid [the defendant] – because [the defendant] failed to perform."  *Id.* at *2 (emphasis in original).  The Court held that the plaintiff "has no possessory interest in the money that it seeks from [the defendant], as it was freely given to him with the expectation of performance, not repayment."  *Id.*

Here, as in *Panix Promotions*, Mr. Zagoria intentionally paid money to NYU in exchange for NYU's performance.  Mr. Zagoria has failed plausibly to allege that his tuition payments were *not* intentional.  Rather, he concedes that he knowingly and voluntarily paid NYU money for tuition and fees in exchange for educational credits.  *See* Compl. ¶ 11.  Mr. Zagoria never had any expectation of repayment of the money and, instead, only expected NYU's performance in the form of providing education, which it did.  Accordingly, Mr. Zagoria's money had and received claim must be dismissed.

## CONCLUSION

For the foregoing reasons, NYU's Motion to Dismiss should be granted, and the Complaint should be dismissed with prejudice.

Dated: August 3, 2020                          Respectfully submitted,

                                               **DLA PIPER LLP (US)**


                                               __/s/  Keara M. Gordon_____
                                               Brian S. Kaplan
                                               Keara M. Gordon
                                               Colleen Carey Gulliver
                                               Rachael C. Kessler
                                               1251 Avenue of the Americas
                                               New York, New York 10020-1104
                                               Phone: (212) 335-4500
                                               Facsimile: (212) 335-4501
                                               brian.kaplan@us.dlapiper.com
                                               keara.gordon@us.dlapiper.com
                                               colleen.gulliver@us.dlapiper.com
                                               rachael.kessler@us.dlapiper.com

                                               *Attorneys for Defendant New York University*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I am one of the attorneys for the defendant in this action and that on

August 3, 2020, I caused a copy of the foregoing to be filed with the Court's ECF system, which

will cause notice of its filing to be served electronically upon all counsel who have appeared in

this action.

<u>/s/ *Keara M. Gordon*      </u>
Keara M. Gordon