**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DANIEL ZAGORIA, On Behalf of Himself And All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>v.<br><br>NEW YORK UNIVERSITY,<br><br>                    Defendant. | **Case No.: 1:20-CV-3610-GBD** |

## PLAINTIFF DANIEL ZAGORIA'S OPPOSITION TO DEFENDANT NEW YORK UNIVERSITY'S MOTION TO DISMISS CLASS ACTION COMPLAINT

## **TABLE OF CONTENTS**

FACTUAL BACKGROUND AND SUMMARY OF ARGUMENT……………………….…1

ARGUMENT………………………………………………………………………….…….…5

I.     NYU'S THRESHOLD ARGUMENT MISCHARACTERIZES ZAGORIA'S
       CASE AS ONE FOR EDUCATIONAL MALPRACTICE WHEN IT IS NOT………5

II.    NYU'S ATTACKS ON ZAGORIA'S STANDING ARE WITHOUT MERIT……....9

       A. NYU's Attack On Zagoria's Standing To Represent Students
          At Other NYU Departments Is A Class Certification And
          Not A Pleadings Argument……………………………………….…………9

       B. Given NYU's Ongoing Conduct, Zagoria Has Standing To Seek
          Injunctive Relief………………………………………………………………10

III.   ZAGORIA PLEADS A BREACH OF CONTRACT CLAIM……………………...……12

       A. NYU Made Actionable Promises To All Putative Class Members
          That It Failed To Keep By Moving All Instruction Online……………...…………..13

       B. The COVID-19 Shutdown Order Does Not Immunize NYU From
          Money Damages Liability For Failing To Offer The Promised Instruction. ………..15

       C. NYU Erroneously Argues That Zagoria Must Allege And Show Any
          Breach Ny NYU Was Motivated By Bad Faith.  The Law Is Precisely
          The Opposite…………………………………………………………….…………..17

       D. Zagoria Properly Pled Damages……………………………………………………..19

IV.    NYU's ATTEMPT TO DISMISS THE UNJUST ENRICHMENT CLAIM FAILS…….22

       A. The Unjust Enrichment Claim Is Not Subject To Dismissal As Duplicative…………23

       B. Zagoria Sufficiently Alleges That NYU Was Unjustly Enriched……………………23

V.     ZAGORIA'S MONEY HAD AND RECEIVED CLAIM IS PROPERLY PLED…...…..25

CONCLUSION………………………………………………………………….…………..25

## FACTUAL BACKGROUND AND SUMMARY OF ARGUMENT

Defendant New York University's ("NYU") improperly long motion to dismiss Zagoria's Class Action Complaint ("CAC") is without merit and should be denied.[1]  Plaintiff Daniel Zagoria properly pleads cognizable claims for breach of contract ("Count I), unjust enrichment ("Count II), and money had and received (Count III).  Despite NYU's attempt at obfuscation by attaching 34 exhibits to a motion directed at the pleadings, or by referencing wholly irrelevant "good deeds" NYU has undertaken with funds it obtained and disbursed through the federal CARES Act to aid students, Zagoria's allegations are straightforward and properly state claims for relief.

Zagoria, an NYU student, is scheduled to graduate after the Summer 2020 term with a Master of Science Degree in Real Estate Investment and Finance from the Schack Institute of Real Estate at NYU's School of Professional Studies.  *See* CAC, at ¶6.  He paid NYU tens of thousands of dollars, being charged over $2,000 per credit unit, in addition to over $1,000 in fees.  *Id.*, at ¶¶6, 11.  He contends NYU did not honor its part of the contractual bargain or unjustly enriched itself.

When Zagoria enrolled, NYU gave him and other NYU applicants the choice to avail themselves of certain NYU degree programs and course offerings that NYU provided online, as opposed to through traditional in-person on-campus instructions.  *Id.*, at  ¶39  But to partake in these offerings and receive NYU's instruction in online format, Zagoria (as well as any other student enrolling at NYU) had to affirmatively elect that online option.  *Id.*  Otherwise, the promise and expectation was that instruction would be provided in-person onsite, as it has traditionally been offered to millions of college students across the country for decades.

Zagoria pled these specific allegations unambiguously:

---

[1] NYU's memorandum flouts this Court's 25-page limit by improperly single-spacing nearly a whole page of its brief.  *See* NYU Mem., at 2-3. Regardless, this prolix submission is unavailing.

A material component of this contractual relationship—whether documented in an express enrollment contract or in an implied-in-fact contract whose express terms are defined by the parties' conduct is that instruction by NYU to the class members would not take place through online remote learning but would occur at NYU's campus classrooms and facilities. **This is confirmed by the fact that NYU does offer prospective students an option to matriculate in online instruction for certain courses and programs offered in an online format from the outset. But to do so, a student must specifically elect to apply for, and matriculate in, an online course or program. The class members elected not to apply for or matriculate in online courses or programs offered by NYU, thereby confirming that what they bargained for was in-classroom instruction.**

*Id.* (emphasis added).

Despite these promises, Zagoria claims the university breached its obligations by ceasing all in-person on-campus instruction after the COVID-19 pandemic, and yet continued to pocket and retain the full tuition and fees Zagoria and putative class members paid for NYU's promise of in-person onsite instruction.  *Id.*, at ¶¶ 1, 2, 4, 24, 40.   As he alleged:

> [N]either the online instruction nor the lack of campus facilities equate with the bargained for service and instruction that students signed up for when they enrolled at NYU. NYU changed the bargain but has refused to make any refund of tuition or fees to the aggrieved students.

*Id.*, at ¶ 24.

Zagoria himself never elected the online option.  *Id.*, at ¶30. His degree program was not even one that NYU offered as an online choice at the Schack Institute OF NYU's School of Professional Studies.  *See* Ex. 1 to Katriel Decl. (copy of NYU website listing the graduate online degree options offered at Schack; Zagoria's degree program was not one available online at the time of his enrollment).  He, therefore, seeks redress for the difference in value between what he bargained for (in-person onsite instruction) and what NYU actually delivered (remote learning online instruction with no campus access).  *Id.*, at ¶47.

Zagoria seeks to represent a class of "students enrolled at NYU who pay or are obligated to pay any tuition or fees and any students enrolled at NYU in any future summer session or

semester in which NYU does not provide access to its campus facilities or on-campus instruction yet continues to charge full tuition and fees without any proration." *Id.*, at ¶27.  Confirming that NYU's promise for whose breach Zagoria seeks redress is the promise that instruction would be delivered in-person and onsite, Zagoria's class definition excludes "students who expressly registered for online courses at NYU before the commencement of the Spring 2020 semester." *Id*.

Despite admitting that it has moved all instruction off-campus and online (in violation of its contractual promise), NYU seeks to avoid all liability.  It continues to pocket all the money that Zagoria and putative class members paid despite admitting NYU is unable to offer the in-person onsite instruction forming part of the bargain.  Its arguments for dismissal are all unavailing.

*First*, NYU baselessly claims that none of the claims are cognizable before this Court because Zagoria alleges claims for educational malpractice.  He does not.  While New York courts will not entertain claims for educational malpractice (however couched) that seek to have a court second-guess discretionary educational decisions made by teachers or school administrators, the law is equally clear that breach of contract claims by students are cognizable to seek redress for a school's breach of specific promised made by that school.  Zagoria's claims are not for educational malpractice but for the enforcement of NYU's own contractual bargain with its students.  *See* Argument Section I *infra*.

*Second*, NYU wrongly assails Zagoria's standing to represent students enrolled at NYU departments other than at the Schack Institute of Real Estate.  It claims the differences among the course of studies at NYU's various schools and departments deprives Zagoria of standing to represent NYU students, other than those at his same school of enrollment.  The argument is wrong on the merits because it ignore that the promise made (onsite in-person instruction) and the conduct alleged (moving all onsite in-person instruction to solely an online remote distance learning format

is the same across all NYU student class members).  More fundamentally, NYU's argument is not about "Article III standing" but about Zagoria's "Rule 23 standing" to represent a class of the scope he alleged.  New York courts consistently hold such judgments are to be made as a part of a motion for class certification, not a Rule 12(b)(6) motion. *See* Argument Section II *infra*.

*Third*, NYU assails the merits of Zagoria's breach of contract claim.  As shown, however, those attacks all fall short.  Zagoria has sufficiently pled the existence of a contract, NYU's specific promise of onsite in-person instruction, an NYU's breach, and resulting benefit-of-the-bargain damages.  This is all that is required.  NYU's claim that Zagoria was required to allege NYU's breach was motivated by "bad faith" is simply wrong as a matter of law; motivation is irrelevant to a breach of contract claim, as the Second Circuit, this Court, and New York state courts consistently hold.  Equally flawed is NYU's reliance on the "impossibility of performance" doctrine to avoid all liability.  That doctrine merely excuses NYU's obligation to perform but it assuredly does not permit NYU to pocket and retain the moneys Zagoria and class members paid as consideration for a contractual promise NYU now admits it could not keep.  And NYU's claim that Zagoria's damages are speculative is equally false and does not lead to dismissal at the pleadings stage.  *See* Argument Section III *infra*.

*Fourth*, NYU's attempt to dismiss the unjust enrichment claim as duplicative of Zagoria's breach of contract count and because it claims NYU was not unjustly enriched fails on both fronts. The claim is not subject to dismissal as duplicative because NYU disputes that the scope of Zagoria's contract with NYU covers the subject of the dispute—*i.e.,* whether NYU was obligated under the contract to provide in-person onsite instruction.  And, NYU's assertion that it was not unjustly enriched not only is a self-serving merits claim, but relies on the erroneous premise that to show NYU's enrichment was unjust Zagoria was required to allege (and ultimately prove) NYU

acted with deception, oppression, or intent to deceive.  New York law does not require that showing, holding instead that even fully innocent actors may be unjustly enriched if the,as here the circumstances would make it inequitable or unjust for them to retain the full benefits the plaintiff conferred upon them.  *See* Argument Section IV *infra*.

*Fifth*, NYU's attack on Zagoria's claim for money had and received also fails.  NYU recites the wrong requisite elements for the claim.  *See* Argument Section V *infra*.

For all the foregoing reasons, as detailed below, NYU's motion should be denied.

## ARGUMENT

### I.   NYU'S THRESHOLD ARGUMENT MISCHARACTERIZES ZAGORIA'S CASE AS ONE FOR EDUCATIONAL MALPRACTICE WHEN IT IS NOT.

The premise underlying NYU's motion is without merit.  NYU contends that "New York does not recognize claims that require the Court to second guess the decisions of educators or are akin to claims 'that the school breached its agreement by failing to provide an effective education.'" NYU Mem., at 7 (quoting *Andre v. Pace Univ.*, 655 N.Y.S.2d 777, 897 (2d Dep't 1996)).  It then miscasts Zagoria's case as making such claims.  NYU Mem., at 7-9.

 While educational malpractice claims that ask courts to second-guess educational quality decisions made by school instructors and administrators are not cognizable under New York law, breach of contract claims by which students seek to hold their university liable for failing to perform specific contractual promises assuredly *are* actionable.  As this Court has explained:

> New York courts have suggested that a student can sue a school for breach of contract.  When a student enrolls at a university, an implied contract arises: if the student complies with the terms prescribed by the university, she will obtain the degree she seeks. . . . .
>
> The terms of the implied contract are supplied by the bulletins, circulars and regulations made available to the student. 'Thus, 'if the contract with the school were to provide for certain specified services, such as for example, a designated

number of hours of instruction, and the school failed to meet its obligation, then a
contract action with appropriate consequential damages might be viable.'

*Gally v. Trustees of Columbia Univ.*, 22 F. Supp.2d 199, 206 (S.D.N.Y. 1998) (quoting *Paladino*

*v. Adelphi Univ.*, 454 N.Y.S.2d 868, 873 (2d Dep't 1982), other internal citations omitted).

Far from precluding courts from reviewing such claims of contractual breach, New York

caselaw is clear that such claims against a university are cognizable. Remarkably absent from

NYU's motion to dismiss is any mention of the ongoing class action against it styled as *Basso v.*

*New York University*, No. 16-cv-7295-VM (S.D.N.Y.) now pending in this Court before Judge

Marrero. In *Basso*, students enrolled at NYU's Asia campus of its Tisch School of the Arts sued

NYU for breach of contract. *Basso v. New York Univ.*, 2017 WL 1019505, at *1 (S.D.N.Y. Feb.

24, 2017). Their class action complaint claimed "NYU made representations that 'the faculty,

equipment, and facilities' at Tisch Asia would be of the same quality of NYU's Tisch School of

the Arts. NYU claimed that all faculty would be working professionals and that certain

mentorships and internships comparable to those offered at Tisch New York would be available

to Tisch Asia students." *Id* (citations to complaint omitted). When the students found these remote

facilities at Tisch's Asia's campus were not of the quality NYU had represented they would be,

they sued on behalf of a class of NYU students enrolled at that NYU campus. *Id*.

As it does here, NYU argued that "New York law does not permit claims based on

allegations that a school or university failed to provide a quality education or misrepresented the

quality of the education offered." *Basso v. New York Univ.*, No. 16-cv-7295-VM, at Dkt. No. 25,

p. 1. Rejecting that argument, Judge Marrero upheld *Basso's* First Amended Complaint. He

found that, "[t]he promises regarding the background of professors and the quality of the

professional training are more specific than general promises regarding broad statements of policy.

That is enough to properly plead a breach of contract claim at this stage." *Basso*, 2017 WL

1019505, at *3.  And just last year, Judge Marrero granted the *Basso* plaintiffs motion for class

certification.  *See Basso v. New York Univ.*, 363 F. Supp.3d 413, 417 (S.D.N.Y. 2019).

*Basso* is no anomaly.  New York caselaw has held to the same effect for decades.  In yet

another breach of contract case against NYU—*Ansari v. New York Univ.*, 1997 WL 257473

(S.D.N.Y. May 16, 1997)—the plaintiff sued NYU on behalf of a putative class of dental students

who claimed that NYU's promotional promises of offering the "most sophisticated, state-of-the-

art clinical facilities" and that "each student will be assigned a tutor-advisor" who would be a

member of the faculty were all breached.  *Id.*, at *1.  The students alleged that NYU's campus and

instruction instead "looked like an urban warehouse with a pigeon's nest and accompanying

pigeons' droppings 2) the program did not have an x-ray machine until several months after Taft

requested one in a memorandum to Kaufman and Greenfield;  3) basic orthodontic supplies such

as wires, brackets, etching, jel and bonding material were constantly in short supply (*id.*); 4) there

were no faculty tutor-advisors." *Id*. (citations to complaint omitted).

Rejecting NYU's argument that New York courts were precluded from reviewing such

claims, this Court upheld the breach of contract claim.  *Id.*, at *3.  It explained that, "Plaintiff's

claim does not require an evaluation of uniquely professional academic decisions such as the

adequacy of the courses or methods of instruction. Rather, plaintiff's claim requires an evaluation

of whether defendants promised to provide services and failed to do so." *Id*.

And again, in *Village Community School v. Adler*, 478 N.Y.S.2d 546 (N.Y. Civ. Ct. 1984),

the court rejected a school's claim that its alleged failure to provide tutorial services it had

promised was not cognizable as breach of contract under New York law.  It explained:

> The case at bar is different from the aforementioned ones in that it is based upon a
> breach of contract entered into with a private institution. The facts of *Paladino v.
> Adelphi University,* 454 N.Y.S.2d 868 (2d Dept.1982), more  closely resemble the
> facts of the case before this court. That action was for breach of contract against a

private school for failure to provide an effective education. The court declined to
evaluate the soundness of the teaching methods because a breach of contract for
quality instruction would force them to become overseers of the learning
process. 454 N.Y.S.2d at 872. However, that made an exception for one situation
where liability could be imposed.

'If [a] contract with a school were to provide for certain specified services, ... and
the school failed to meet its obligation, ... a contract action with appropriate
consequential damages [may] be viable.' *Id.*, at 873.

This is the situation with which this court is now presented.

Ms. Adler alleges that The School agreed to detect learning deficiencies and to
provide the necessary tutorial and guidance services, but failed to do so. When
defendants promised to detect learning disabilities, they effectively waived the
implementation of competency testing and other educational tools as a
discretionary measure and made it a requirement for full contract performance. In
deciding whether to allow this action, this court is not required to review any
discretionary actions taken as a result of plaintiff's professional judgment. The laim
is therefore permissible.

*Id.*, at 547-48 (additional citations omitted); *see also Novio v. New York Academy of Art*, 317 F.

Supp.3d 803, 813-814 (S.D.N.Y. 2018) (collecting cases and upholding student's breach of

contract claim against college for school "denying her the career services and strong job support

it is contractually obligated to provide, including by refusing to provide her with references and

recommendations that are essential to obtaining employment").[2]

Zagoria's suit is fully cognizable under New York law.  As in *Basso*, *Anzari*, *Adler* and the

reasoning of *Paladino*, Zagoria makes a particular allegation that NYU promised to provide his

instruction onsite and in-person but failed to do so.  Evaluating whether NYU made that promise

---

[2] NYU's reliance on *Paynter v. NYU*, 319 N.Y.S.2d 893, 893 (1st Dep't 1971), a one-page *per
curiam* lower court opinion, is misplaced.  It held that a university's decision to cut short classes
by two weeks was not actionable.  *Paynter* did not point to any promise made by the university
as to class length. If it had, its holding would conflict with *Paladino's* reasoning that if the
school "designated number of hours of instruction, and the school failed to meet its obligation,
then a contract action with appropriate consequential damages might be viable." *Paladino*, 454
N.Y.S.2d at 873.

and failed to keep it does not require the Court to second-guess educational quality decision-making.  It merely asks whether NYU kept its contractual promise.

## II.      NYU'S ATTACKS ON ZAGORIA'S STANDING ARE WITHOUT MERIT.

NYU levies a twofold attack on Zagoria's Article III standing.  The first erroneously challenges Zagoria's standing to represent NYU students at departments other than the Schack Institute of Real Estate at NYU's School of Professional Studies where he is a graduate student. The second assails Zagoria's standing to seek any injunctive relief.  Neither attack has merit.

### A. NYU's Attack On Zagoria's Standing To Represent Students At Other NYU Departments Is A Class Certification And Not A Pleadings Argument.

Conflating a Rule 12(b)(6) motion with a Rule 23 motion for class certification, NYU attacks Zagoria's "Article III standing" to represent NYU students at NYU colleges or departments other than the Schack Institute of Real Estate at NYU's School of Professional Studies.  *See* NYU's Mem., at 10-12.  Even if this argument had merit (and it does not), it would only impact the scope of any class Zagoria could ultimately seek to represent; it would not impact the viability of his pleading.  The argument, therefore, does not provide a basis to grant NYU's Rule 12(b)(6) motion.

Regardless, NYU is wrong.  While Zagoria and the putative class of NYU students defined in his CAC may have attended different programs of study at NYU, all seek relief for the same alleged wrong.  All complain that NYU provided no on-campus instruction or access to NYU facilities to students who enrolled to receive onsite (not online) instruction yet failed to refund tuition or facility fees.  And, NYU admits that, during these semesters, it offered no on-campus instruction to any of its students.  Under these circumstances, where all students share the same grievance based on the same conduct against the same defendant, the named plaintiff class representative undeniably may maintain an action on behalf of a class of NYU students, regardless of their course of study:

–9–

> [C]ourts in this Circuit have held that, subject to further inquiry at the class certification stage, a named plaintiff has standing to bring class action claims under state consumer protection laws for products that he did not purchase, so long as those products, and the false or deceptive manner in which they were marketed, are 'sufficiently similar' to the products that the named plaintiff <u>did</u> purchase.

*Daniel v. Tootsie Roll Indus., LLC*, 2018 WL 3650015, at *5 (S.D.N.Y.  Aug. 1, 2018) (quoting

*Mosley v. Vitalize Labs., LLC*, 2015 WL 5022635, at *7 (E.D.N.Y. Aug. 24, 2015)).

NYU's argument is one of class standing under Rule 23, as opposed to Article III standing

germane to the pending Rule 12(b)(6) motion.  *See Moses v. Apple Hosp. REIT Inc.*, 2016 WL

8711089, at *4 (E.D.N.Y. Sept. 30, 2016) (where the individual plaintiff has Article III standing to

sue, "the more prudent approach is to analyze class standing at the class certification

stage"); *Kacocha v. Nestle Purina Petcare Co.*, 2016 WL 4367991, at *11 (S.D.N.Y. Aug. 12,

2016); (whether class members' "injuries are sufficiently similar" is a question best "addressed

upon motion for class certification" (citation and quotation marks omitted)); *Hart v. BHH, LLC*,

2016 WL 2642228, at *3 (S.D.N.Y. May 5, 2016) (courts "deny motions to dismiss"

regarding class standing because "any concerns regarding the differences can be addressed at

the class certification stage" (citation and quotation marks omitted)).   Because NYU's erroneous

argument relates to the scope of any class that may be certified as opposed to the viability of

Zagoria's complaint, it does not support NYU's Rule 12(b)(6) motion to dismiss the CAC.

### B.   Given NYU's Ongoing Conduct, Zagoria Has Standing To Seek Injunctive Relief.

NYU's attack on Zagoria's standing to seek injunctive relief fares no better.  It is

erroneously premised on the notion that Zagoria is scheduled to graduate NYU at the conclusion

of the Summer 2020, well before any judgment would be entered in this action.   Despite the fact

that NYU is continuing to engage in the same conduct (*i.e.,* failing to deliver onsite in-person

instruction while retaining all tuition and fees paid by putative class members), NYU asserts that Zagoria's impending graduation will moot his injunctive relief claims.

NYU is wrong.  The mootness argument overlooks the well-established exception for claims for injunctive relief that are "capable of repetition yet evading review."  A plaintiff who has standing at the inception of his lawsuit but has events occur thereafter that moot his claim, may avail himself of the "capable of repetition yet evading review" doctrine.  As this Court has explained, "there are exceptions to the mootness doctrine where a plaintiff has standing to pursue a claim at the commencement of the case but loses a personal interest as the case moves forward." *White v. First American Registry*, 230 F.R.D. 365, 368 (S.D.N.Y. 2005).

In a college lawsuit class action, where enrollment always is limited to a few years or less and litigation is likely to take several years, any plaintiff with standing to seek injunctive relief at the beginning of the suit is likely to find that the case continues even after that student graduates. The "capable of repetition yet evading review" doctrine ensures that a plea for injunctive relief will not evade adjudication.

To be applicable, the alleged wrong must "be capable of repetition" to the same complaining party.  But, when a class action (as opposed to an individual action) is alleged, the "capable of repetition" assessment is made as to any members of the putative class.  *See Dunn v. Blumsein*, 405 U.S. 330, 333, n.2 (1972) ("Although appellee now can vote, the problem to voters posed by the Tennessee residence requirements is "capable of repetition, yet evading review."  he laws in question remain on the books, and Blumstein has standing to challenge them as a member of the class of people affected by the presently written statute."); *Williams v. Conway*, 312 F.R.D. 248, 254 (N.D.N.Y. 2016) (mooting of named plaintiff did not moot injunctive relief claim because "capable of repetition yet evading review doctrine" safeguarded claims of putative class members).

Unsurprisingly, New York courts have applied the doctrine in the context of class action complaints brought by students against their colleges and thereby upheld such complaints over a mootness challenge after the named plaintiff graduated.  *See Altman v. Bedford Central Sch. Dist.*, 245 F.3d 49, 71 (2d Cir. 2001) ("Thus, *in the absence of a class action*, the 'capable of repetition, yet evading review' exception is not available when the issue is students' rights and the complaining students have graduated from the defendant institution.") (emphasis added).   Here, Zagoria's pleading sufficiently supports injunctive relief.  *See* Zagoria's Class Action Complaint, at ¶¶ 48-49 (alleging that NYU's conduct in continuing to charge and failing to refund any portion of full tuition despite not offering any onsite in-person instruction is ongoing); *id.*, at ¶ 11 (alleging that Zagoria is scheduled to graduate NYU at the conclusion of the Summer 2020 term); *id.*, at ¶ 27 (alleging that Zagoria bring this lawsuit not only on behalf of himself but also on behalf of a class of "students enrolled at NYU who pay or are obligated to pay any tuition or fees and any students enrolled at NYU in any future summer session or semester in which NYU does not provide access to its campus facilities or on-campus instruction yet continues to charge full tuition and fees without any proration.").

Because Zagoria was an NYU student at the time he filed suit (and still is) and was subject to NYU's ongoing conduct, he has standing to seek injunctive relief.  Because his action was pled as a class action on behalf of putative class members who are continuing to be subjected to NYU's conduct even after Zagoria is scheduled to graduate, his CAC falls within the "capable of repetition yet evading review" mootness exception and he has standing to seek such injunctive relief.

III.   **ZAGORIA PLEADS A BREACH OF CONTRACT CLAIM.**

Under New York law, "[w]hen a student enrolls at a university, an implied contract arises." *Gally*, 22 F. Supp.2d at 206.  The scope of that contractual bargain is determined by the bulletins,

circulars and regulations made available to the student. *See Clarke v Trustees of Columbia Univ.*, 1996 WL 609271, at *5 (S.D.N.Y. Sept. 28, 1998).  "Thus, 'if the contract with the school were to provide for certain specified services, such as for example, a designated number of hours of instruction, and the school failed to meet its obligation, then a contract action with appropriate consequential damages might be viable.'" *Id.* (quoting *Paladino.*, 454 N.Y.S.2d at 873)).  Zagoria, having enrolled at NYU's graduate program, sufficiently pleads a factual basis for an existing contract between NYU and him.  He also pleads all other elements of a breach of contract claim.

### A.  NYU Made Actionable Promises To All Putative Class Members That It Failed To Keep By Moving All Instruction Online.

The gravamen of Zagoria's case is that NYU failed to deliver the educational services and facilities for which NYU students bargained and paid.  He claims that, while NYU failed to do so, it kept and continued demanding full payment of tuition and fees from Zagoria and the putative class members.  *See* CAC, at ¶¶ 3-4.  Central to his claim of breach is that the students and NYU bargained for on-campus classes at NYU but did not receive them.  To support his allegation that on-campus instruction was part of the contractual bargain, Zagoria alleged that NYU did, in fact, offer prospective applicants to some of its programs an online instruction option, but students had to affirmatively elect to enroll in that online option to agree to attend classes online as opposed to in-person at NYU's campus:

> A material component of this contractual relationship—whether documented in an express enrollment contract or in an implied-in-fact contract whose terms are defined by the parties' conduct is that instruction by NYU to the class members would not take place through online remote learning but would occur at NYU's campus classrooms and facilities. This is confirmed by the fact that NYU does offer prospective students an option to matriculate in online instruction for certain courses and programs offered in an online format from the outset. But to do so, a student must specifically elect to apply for, and matriculate in, an online course or program. The class members elected not to apply for or matriculate in online courses or programs offered by NYU, thereby confirming that what they bargained for was in-classroom instruction.

CAC, ¶ 39.

Zagoria, who never enrolled in NYU's online degree program option before NYU's campus shutdown (*id.*, at ¶ 30) , therefore seeks to represent a class of NYU students who, like him, did not select NYU's online offerings; the natural consequence being that they and NYU instead agreed that their instruction would be provided in-person at NYU.  *Id.*, at ¶ 27 ("Excluded from the class are students who expressly registered for online courses at NYU before the commencement of the Spring 2020 semester.").  If, as NYU concedes, it delivered no courses in person on-campus during the Spring or Summer 2020 semesters, then Zagoria has properly pled a breach of this specific contractual agreement.  Adjudicating that alleged breach does not require the Court to second-guess educational quality choices made by NYU's professors.  Instead, as in *Anazari* and *Basso*, this presents a straightforward case of NYU not delivering a specific service (onsite in-person instruction) that the class members paid for but did not receive.

Zagoria's allegation is not conclusory.  NYU's own public representations support it.  For example, when Zagoria enrolled in his Master of Real Estate Investment and Finance graduate degree program at NYU's School of Professional Studies, that School went to great lengths to single out on its website the four specific graduate degree programs for which an online course offering was an available option.  Zagoria's graduate degree program in Real Estate Investment and Finance was not one of them, meaning that instruction for Zagoria was <u>not</u> to take place online.  That website expressly represents that:

**Graduate Programs Online**

The NYU School of Professional Studies offers numerous graduate degree programs online, as well as programs that provide an option for both online and onsite study.  Students and faculty members from around the world meet online in virtual classrooms that allow for a stimulating learning experience and exchange of ideas.

**ONLINE GRADUATE DEGREES**

MS IN HUMAN RESOURCE MANAGEMENT AND DEVELOPMENT

MS IN MANAGEMENT AND SYSTEMS (STEM)

MS IN PROFESSIONAL WRITING

MS IN TRANSLATION

Ex. 1 to Katriel Decl [DKT. No. 35-1].

Zagoria's graduate degree program in Real Estate Investment and Finance from NYU's School of Professional Studies was not to be offered online. He signed up for an onsite program. NYU did not deliver because it shut NYU's campus and moved all instruction online. Zagoria has more than adequately pled an enforceable promise to support his breach of contract claim.

**B. The COVID-19 Shutdown Order Does Not Immunize NYU From Money Damages Liability For Failing To Offer The Promised Instruction.**

NYU's attempted reliance on the COVID-19 shutdown orders to immunize itself from any liability is fatally flawed. NYU charges that "resulting government orders rendered NYU's performance impossible. Impossibility excuses performance where the "destruction of the subject matter of the contract or the means of performance makes performance objectively impossible" as a result of "an unanticipated event that could not have been foreseen or guarded against in the contract." (NYU Mem., at 19 (quoting *Kolodin v. Valenti*, 115 A.D.3d 197, 200 (1st Dep't 2014))." NYU misapprehends the doctrine of impossibility of performance.

While Zagoria concedes that NYU may have been unable to perform due to the COVID-19 shutdown orders, his claim is that NYU cannot pocket the money Zagoria and NYU students paid while acknowledging it could not deliver the services for which these students contracted. *See* CAC, at ¶ 4 ("NYU has breached its contractual duties by ceasing all in-classroom instruction at all campuses and shutting down campus facilities *while continuing to assess and collect full tuition*

*and fee payment from Plaintiff and the class members as if full performance had been rendered to them*.") (emphasis added).

New York law is crystal clear that impossibility of performance does not permit NYU to keep the money conveyed to it by Zagoria and his fellow students while conceding it is impossible for NYU to deliver the on-campus educational services to which the parties agreed:

> Defendant argues that he has made an effort to return to his home country of Nigeria but that due to the economic and political conditions in Nigeria, it was impossible for him to fulfill the condition of the contract. However, even assuming 'impossibility of performance' by defendant, plaintiff's performance conferred a financial benefit to defendant which defendant acknowledges receiving. Defendant cannot keep the benefit without paying for it. Defendant here is not seeking to excuse himself from further performance of the contract, but from payment of a debt. Under these circumstances plaintiff is entitled to restitution for its performance.

*University of Minn. v. Agbo*, 673 N.Y.S.2d 812, 812 (App. Term. 1998) (internal citations omitted); *see Leisure Time Travel, Inc. v. Villa Roma Resort and Conference Ctr., Inc.*, 52 N.Y.S.3d 621, 623 (N.Y. Sup. Ct. 2017) ("However, the defense of impossibility of performance only excuses the *performance* of an executory contract. It has never been held available for the purpose of unjustly enriching one party at the expense of the other.") (emphasis added, citations omitted).

As its name implies, New York's "impossibility of performance" doctrine merely excuses a defendant's *performance* of its contractual obligations due to circumstances rendering performance impossible.  It does not grant that defendant license to exact a windfall by continuing to demand and keep the money it received in consideration for its performance.

This much was explained in *Flaster v. Seaboard Gage Corp.*, 61 N.Y.S.2d 152 (N.Y. Sup. Ct. 1946).  In *Flaster*, a maker of compact cases for women's cosmetics contracted with and pre-paid $2,500 to a metal tool manufacturer to provide metal tool machines to make the compact cases.  *Id.*, at 153.  Thereafter, however, government orders issued in connection with the country's

efforts in fighting World War II required the defendant to allocate its personnel and equipment to the manufacture goods for the war effort, instead of private industry. *Id.*, at 155-56 This rendered its performance to the plaintiff impossible—and defendant did not deliver the metal tooling plaintiff required to manufacture the cosmetic cases. *Id.*.   The court acknowledged that the government orders rendered defendant's performance impossible, but clarified that while the defendant's performance was excused, it could not retain the payments the plaintiff had made for that performance:

> Concurrent with such impossibility of performance, the contract originally not having been illegal, *the obligation arose on the part of the defendant to return to the plaintiffs the cash consideration paid*.

*Id.*, at 156 (emphasis added).

> And, this Court has held to the same effect for nearly a century:

> Even if the defendants' further performance of their promise to pay were impossible in the eye of the law, the defendants would still be liable to repay what they had borrowed. 'The performance of one who has merely contracted to pay money will not generally become excusably impossible; but this may happen when a partly performed contract is forbidden by supervening change of law. Money previously paid in such a case, for which no return has been received, should be recoverable.'

*Central Hanover Bank & Trust Co. v. Siemens & Halske Aktiengesellschaft*, 15. F. Supp. 927, 929 (S.D.N.Y. 1936) (quoting Williston on Contracts, § 1972).

NYU's tortured reading of the "impossibility of performance" doctrine would have it work only to NYU's favor—absolving it from performing but requiring Zagoria to fully perform his obligation (by forcing him to pay NYU for full tuition and fees).  This is not what the law holds.

### C. NYU Erroneously Argues That Zagoria Must Allege And Show Any Breach Ny NYU Was Motivated By Bad Faith.  The Law Is Precisely The Opposite.

NYU similarly misstates the law in arguing that Zagoria must allege that any breach by

NYU was motivated by bad faith.  *See* NYU's Mem., at 18-19.   New York law is precisely the opposite.  A defendant's motivation is wholly irrelevant to a breach of contract case.  If a defendant fails to perform its contractual obligation, its motivation for doing so—whether evil or benign—is beside the point.   As the Second Circuit has put it, "[a] breach is a breach; it is of marginal relevance what motivations led to it." *Koufakis v. Carvel*, 425 F.2d 892, 906 (2d Cir. 1970).

This Court has time and again recognized this truism of New York contract law and reiterated that, "[p]roof of motive or state of mind is not necessary to prevail on a breach of contract claim." *Hakabi v. SanDisk Corp.*, 891 F. Supp.2d 527, 546 (S.D.N.Y. 2012); *see Zurich Am. Ins. Co. v. Ace Am. Reinsurance Co.,* 2006 WL 3771090, at *1 (S.D.N.Y. Dec. 22, 2006) ("[M]otive is generally irrelevant in breach of contract actions [.]").

If, as Zagoria alleges, NYU and Zagoria's contractual bargain included NYU's promise that it would provide its instruction in-person onsite, NYU's failure to do so would not absolve it from liability merely because it could show that its failure was driven by benign motive.   "A breach is a breach; it is of marginal relevance what motivations led to it." *Koufakis*, 425 F.2d at 906.

NYU's cited authorities are not to the contrary.  NYU principally relies on *Matter of Olsson v. Bd. of Higher Educ. of City of N.Y.*, 49 N.Y.2d 408, 414 (Ct. App. 1980) (quoted and cited in NYU's Mem., at 18).   But *Olsson* was not a breach of contract action.   It was an administrative petition brought under Article 78 of the CPLR.  *Id.*, at 412.   That decision says nothing about the elements for a breach of contract claim under New York law; it addressed the standards governing a wholly distinguishable Article 78 proceeding.

Equally unavailing is NYU's reliance on *Rodriguez v. New York Univ.*, 2007 WL 117775, at *4 (S.D.N.Y. Jan. 16, 2007) (cited and quoted in NYU's Mem., at 18) for the proposition that, "[b]reach of contract claims brought by students against universities are 'subject to judicial review

only to determine whether the defendants abided by their own rules and whether they have acted in good faith or their action was arbitrary or irrational." NYU's Mem., at 18.  Again, *Rodriguez* was *not* a breach of contract case.  Instead, in *Rodriguez*, the student plaintiff, who was hispanic, brought a civil rights case under 42 U.S.C. § 1981 for racial discrimination.  *See Rodriguez*, 2007 WL 117775, at * 4.  This Court noted that, "the plaintiff may state a § 1981 claim by alleging that the University breached a contract with him, *and that the breach was motivated by racial prejudice*." *Id.* (emphasis added).  In that context of a Section 1981 racial discrimination claim founded on an allegation of a contractual breach motivated by racial prejudice the Court found the defendant's motivation pertinent.  But that was because in a Section 1981 action, unlike a mere breach of contract cause of action, the defendant's motivation is a requisite element.

None of the authorities NYU relied upon do anything to disturb the well-recognized notion that, "breach of contract does not require proof of scienter." *In re Beacon Assocs. Litig.*, 745 F. Supp.2d 386, 434, n.37 (S.D.N.Y. 2010) (quoted in *Oorah, Inc. v. Schick*, 2012 WL 3233674, at *2 (E.D.N.Y.  Aug. 6, 2012)).  "In the first place, intent is not relevant to a cause of action for breach of contract.  The only issue is whether the Defendants breached the contract." *Greenwood v. Daily News, L.P.*, 2005 WL 1389052, at *4 (N.Y. Sup. Ct. Jun. 7, 2005). A showing of bad faith is not a requisite element of Zagoria's breach of contract claim.

### D.  Zagoria Properly Pled Damages.

NYU wrongly argues Zagoria's  breach of contract claim is foreclosed because "he fails to sufficiently allege damages." NYU's Mem., at 20.  NYU misreads the CAC as seeking a full refund of all tuition and fees paid by him: "Mr. Zagoria also cannot claim he received no benefit from the period of remote instruction – as he did earn credits – yet he asks for 100 percent of his tuition back."  *Id.*, at 21.  This is incorrect, as even cursory review of the pleading shows.

Instead, Zagoria alleges that what he got (remote online distant learning) was not what he bargained for (in-person onsite instruction) without NYU making any accommodation for that failure to deliver the bargained-for service: "NYU changed the bargain but has refused to make any refund of tuition or fees to the aggrieved students." Zagoria's Class Action Complaint, at ¶ 24. He has never alleged that he is entitled to a full refund of all tuition and fees paid.  Instead, throughout his pleading, Zagoria emphasized that what he prays for is a *partial* refund for the difference between the value of what NYU promised (in-person onsite instruction) and what NYU actually delivered (remote distance learning with no campus facility access):

> Plaintiff and class members are entitled to an award of money damages or *partial* restitution in an amount to be determined at trial as redress for NYU's breach.

Zagoria's Class Action Complaint, at ¶ 47 (emphasis added); *see also id.*, at ¶ 34 ("The cost of litigating an *individual student's claim for partial refund* of *tuition or fees* make such individual litigation unfeasible given the costs of bringing such an action relative to the amount of damages that could be recovered in an individual action.") (emphasis added); *id.*, at ¶ 55 ("Plaintiff and the class members are entitled to and do hereby pray for an order of *partial* restitution as redress for NYU's unjust enrichment.") (emphasis added); *id.*, at ¶ 56 ("NYU also continues to defy and deny any requests for partial tuition or fee reimbursement, claiming falsely that it is offering the same services as had been bargained for by Plaintiff and the class members.") (emphasis added).

NYU ignores these well-pleaded damages allegations to set up its strawman argument that Zagoria "cannot claim he received no benefit from the period of remote instruction – as he did earn credits – yet he asks for 100 percent of his tuition back."  NYU's Mem., at 21.  Instead, his prayer for a partial refund of tuition and fees as redress for the difference between what was bargained-for and what NYU provided directly tracks the measure of contract damages long-recognized by New York law. *See Merill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184-85 (2d

Cir. 2007) (applying New York contract law: "A party injured by breach of contract is entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms.  It follows that appellant is entitled to the benefit of its bargain, measured as the difference between the value of GEM as warranted by Merrill Lynch and its true value at the time of the transaction.") (citing *Boyce v. Soundview Tech. Group, Inc.,* 464 F.3d 376, 384 (2d Cir.2006)).

Nor does NYU gain any traction by charging in conclusory fashion that Zagoria's measure of damages is so fatally speculative to warrant dismissal.  *See* NYU's Mem., at 21.  That self-serving charge has no place on a motion to dismiss at the pleadings stage.  *See Shan Campbell Galley, Inc. v. Frieze Events, Inc.*, 441 F. Supp.3d 1, 5-6 (S.D.N.Y. 2020) ("the complaint also alleges lost profit or 'benefit of the bargain' damages, the remedy that would ordinarily be applicable here. These damages 'need not be determined with mathematical precision, but they must be capable of measurement based upon known reliable factors without undue speculation.  At this stage, an allegation of lost profits is sufficient; whether any particular measure of lost profits, such as the difference between gross sales at the 2017 Fair and the 2018 Fair, is sufficiently reliable presents an issue of fact to be determined over the course of this litigation.") (internal citations omitted); *SIGA Techs., Inc. v. Fischetti,* 774 N.Y.S.2d 709, 709 (App. Div. 1st Dep't 2004) (affirming denial of summary judgment, "there has been insufficient discovery ... A determination on whether damages are too speculative would be premature at this juncture"); *see Cayuga Harvester, Inc. v. Allis-Chalmers Corp.,* 465 N.Y.S.2d 606, 619 (App. Div. 4th Dep't 1983) ("The IAS Court's dismissal of Plaintiffs' damages at the pleading stage without any discovery or a more developed record was erroneous.").

NYU's authorities do not advance its cause.  *Mihalakis v. Cabrini Med. Ctr.*, 151 A.D.2d 345, 346 (1st Dep't 1989) (cited and quoted in NYU's Mem., at 21), which NYU cites as holding

that the 'difference between the value of the internship program provided by defendants and the value of an internship program having the characteristics that the defendant represented to plaintiff' was too speculative to support a claim for fraud," is not on point.   *Mihalakis'* quoted passage pertained to the plaintiff's separate claim for fraud wherein she sought to recover future earnings as a physician that she claimed she sustained by the defendant's allegedly wrongful termination of  her medical internship program.   That same court *upheld the plaintiffs separate breach of contract claim* against the medical institution for its allegedly wrongful termination of the residency instruction that plaintiff had bargained to receive.   *Id.*, at 346 ("We agree with IAS that the second cause of action for breach of contract is not preempted by the National Labor Relations Act . . . and is thus sufficient to state a cause of action.").

And, NYU's reliance on *WestLB AG v. BAC Fla. Bank*, 912 F. Supp. 2d 86, 93 (S.D.N.Y. 2012) (cited in NYU's Mem., at 21) is even more off base.   That opinion's dismissal had nothing to do with the speculative measure of damages but, instead, merely held that a lender cannot plead cognizable contract damages due to the borrower's failure to maintain property used as collateral where the borrower has not defaulted on the loan and continues to make its payment obligations. *Id.* ("absent a default, [plaintiff's] claim for damages based on the subordination of its security interest is an undefined future harm [that] is too speculative to constitute a compensable injury") (quoting *Bank of Midwest, N.A. v. Hypo Real Estate  Capital Corp.*, 2010 WL 4449366, at *3 (S.D.N.Y.  Oct. 13, 2010)).   Whatever import *WestLB AG* may have to the ripeness of a lender's claim for damages from a borrower, it has no bearing whatsoever to Zagoria's case.

## IV.   NYU's ATTEMPT TO DISMISS THE UNJUST ENRICHMENT CLAIM FAILS.

NYU seeks dismissal of Zagoria's unjust enrichment claim (Count II) on two bases.   It argues that count must be dismissed as duplicative of Zagoria's breach of contract claim, and it asserts that it was not unjustly enriched.   Neither argument for dismissal has merit.

### A.  The Unjust Enrichment Claim Is Not Subject To Dismissal As Duplicative.

NYU's claim that the unjust enrichment claim must be dismissed as duplicative of his breach of contract action proves too much.  While unjust enrichment claims are subject to dismissal if they restate the undisputed breach of contract allegations, that argument is unavailable if, as here, a defendant disputes the contract exists or covers the dispute at issue.  *See Trahan v. Lazar*, 2020 WL 2086610, at *22 (S.D.N.Y. Apr. 30, 2020) (unjust enrichment can be plead as an alternative claim to breach of contract "if there is 'a bona fide dispute concerning existence of a contract or whether the contract covers the dispute in issue.'") (quoting *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 43 F. Supp.3d 309, 317 (S.D.N.Y. 2014)).

Here, NYU disputes that the scope of any implied contract governing the relationship between Zagoria and NYU addresses whether NYU was obligated to offer in-person onsite instruction.  As NYU puts it, Zagoria "does not point to any language promising that classes would be held in person." NYU Mem., at 15.  *See also id.*, at 13 ("As an initial matter, the implied contract between NYU and Mr. Zagoria was, at most, that NYU would provide him ability to earn academic credits, and ultimately a degree, in exchange for tuition payments.").  Because the parties dispute whether NYU and Zagoria's contract covers an obligation to offer in-person instruction—the basis for Zagoria's alternative unjust enrichment claim—Zagoria alternative unjust enrichment count is not subject to dismissal as unduly duplicative of his breach of contract claim:

> Here, there is a dispute regarding whether the Agreements govern this dispute because Plaintiff argues that the Agreements do not cover the Pre-Cornerstone IP, which Defendants dispute. Therefore, Plaintiff's unjust enrichment claim, as pleaded, is not duplicative, and Defendants' motion to dismiss Claim is DENIED.

*Trahan v. Lazar*, 2020 WL 2086610, at *22.

### B.  Zagoria Sufficiently Alleges That NYU Was Unjustly Enriched.

NYU also urges dismissal of the unjust enrichment claim by arguing in self-serving fashion

that it was not enriched unjustly. *See* NYU's Mem., at 22-24. Its argument is based on the mistaken assumption that to be unjustly enriched, NYU must be shown to have acted deceptively or with intent to deceive. *Id.*, at 23 ("Here, there are no allegations of mistake or deception."). The law, however, is not in accord.

Instead, as the New York Court of Appeals has explained at length, New York's law of unjust enrichment does not require wrongful conduct on the defendant's part—even wholly innocent parties can be unjustly enriched. What that claim requires is that circumstances render it unjust for the defendant to retain benefits conferred to it by the plaintiff:

> Unjust enrichment, however, does not require the performance of any wrongful act by the one enriched. Innocent parties may frequently be unjustly enriched. What is required, generally, is that a party hold property 'under such circumstances that in equity and good conscience he ought not to retain it.'

*Simonds v. Simonds*, 380 N.E.2d 189, 194 (N.Y. 1978) (quoting *Miller v Schloss*, 113 N.E. 337, 339 (N.Y. 1916)).

As New York's lower courts have similarly explained:

> There still remains the question as to whether, by reason of Roberta Lengel's acquisition of the proceeds of the insurance policy, she thereby became unjustly enriched to the detriment of plaintiffs. In this connection, she argues that she was innocent of any wrongdoing and that she cannot be held to have been unjustly enriched in the absence of some deceit, fraud or wrongful act on her part.
>
> The theory of unjust enrichment is the existence of an obligation created by law because someone has obtained something of value under such circumstances that in equity and good conscience he ought not to retain it.
>
> 'Unjust enrichment is not necessarily 'unlawful' or 'wrongful' enrichment. Restitution does not presuppose a wrong by the person who receives the money, property, or benefit.'

*Lengel v. Lengel*, 382 N.Y.S. 2d 678, 681 (N.Y. Sup. Ct. 1976) (quoting 50 N.Y. Jurisprudence, Sec. 5, p. 157, other citations omitted).

Despite NYU's arguments to the contrary, Zagoria was not required to allege NYU acted with oppression, malice, deceit, or intent to cause mistake in order to prevail on his unjust

enrichment claim.  His only requirement was to allege facts from which a fact-finder ultimately could conclude it would be unjust for NYU to retain all the moneys that Zagoria and putative class members conveyed to NYU at a time when NYU has not been delivering the online onsite instruction the parties contemplated would be provided.  He has done so.  Indeed, Zagoria makes clear that NYU continues to tout the benefits of its campus facilities at a time when it is not making any of those facilities available to him or the putative class members.

A fact-finder could conclude it would be unjust to permit NYU to retain the fees students paid for these facilities and onsite instruction even though NYU is unable to deliver them.  That is all a claim for unjust enrichment requires.  There is no basis to dismiss Count II of the CAC.

## V.   ZAGORIA'S MONEY HAD AND RECEIVED CLAIM IS PROPERLY PLED.

NYU's attack on the money had and received claims fails for the same reasons its attack on the unjust enrichment claim fails.  NYU claims recovery for money had and received is unavailing where the relationship is governed by a contract.  NYU Mem., at 24.  But, NYU ignores that it disputes whether any agreement between NYU and Zagoria addresses an obligation to provide in-person instruction.  Likewise, NYU's argument that the claim  requires a showing of oppression, extortion, or other wrongful conduct is inaccurate.  Wrongful conduct is not a requisite element under New York law.  *See Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.,* 731 F.2d 112, 125 (2d Cir.1984) (listing requisite elements for money had and received).

## CONCLUSION

For all the foregoing reasons, NYU's motion to dismiss the CAC should be denied.

Dated: August 17, 2020                    Respectfully submitted,


                                          THE KATRIEL LAW FIRM. P.C.

                                          /s/ Roy A. Katriel

                                          Roy A. Katriel, Esq. (*pro hac vice*)
                                          **THE KATRIEL LAW FIRM, P.C.**
                                          2262 Carmel Valley Road, Suite 201
                                          Del Mar, CA  92014
                                          Telephone: (619) 363-3333
                                          e-mail: rak@katriellaw.com

                                          Ralph B. Kalfayan, Esq. (*pro hac vice*)
                                          e-mail: ralph@rbk-law.com
                                          Veneeta Jaswal, Esq. (*pro hav vice*)
                                          e-mail: veneeta@rbk-law.com
                                          **THE KALFAYAN LAW FIRM, APC**
                                          2262 Carmel Valley Road, Suite 200
                                          Del Mar, CA 92014
                                          Telephone: (619) 232-0331
                                          Facsimile: (619) 232-4019

                                          Azra Mehdi (AM-9719)
                                          **THE MEHDI FIRM, P.C.**
                                          347 5th Avenue, Suite 1402
                                          New York, NY 10016
                                          Telephone: (415) 293-8039
                                          e-mail: azram@themehdifirm.com


                                          *Counsel for Plaintiff Daniel Zagoria and the
                                          Putative Class*