**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

DANIEL ZAGORIA, on behalf of himself and all others similarly situated,

       Plaintiff,

       v.

NEW YORK UNIVERSITY,

       Defendant.

Case No. 1:20-cv-3610-GBD

---

## NYU'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE AND, IN THE ALTERNATIVE, TO RESPOND TO, PLAINTIFF DANIEL ZAGORIA'S NOTICE OF SUPPLEMENTAL AUTHORITY

Brian S. Kaplan
Keara M. Gordon
Colleen Carey Gulliver
Rachael C. Kessler
1251 Avenue of the Americas
New York, New York 10020-1104
Phone: (212) 335-4500
Facsimile: (212) 335-4501
brian.kaplan@us.dlapiper.com
keara.gordon@us.dlapiper.com
colleen.gulliver@us.dlapiper.com
rachael.kessler@us.dlapiper.com

*Attorneys for Defendant New York University*

## <u>TABLE OF CONTENTS</u>

**Page**

I.  THE NOTICE SHOULD BE STRICKEN TO THE EXTENT IT INCLUDES CASES THAT PRE-DATE MR. ZAGORIA'S OPPOSITION AND IMPROPERLY INCLUDES LEGAL ARGUMENTS..............................................................................1

    A.  The Court Should Not Consider *Milanov* and *Cross* Because They Were Decided Prior to Mr. Zagoria's Opposition. ........................................................1

    B.  The Notice Improperly Sets Forth Legal Arguments. .........................................2

II.  THE NON-BINDING CASES CITED DO NOT SALVAGE MR. ZAGORIA'S CLAIMS. ............................................................................................................3

    A.  *Cross v. University of Toledo*..............................................................................4

    B.  *Milanov v. University of Michigan* .....................................................................4

    C.  *Salerno v. Florida Southern College* .................................................................7

    D.  *Rosado v. Barry University* ................................................................................8

CONCLUSION................................................................................................................10

On November 4, 2020, plaintiff Daniel Zagoria (the "plaintiff") filed a Notice of Supplemental Authority (the "Notice") in support of his Opposition to defendant New York University's ("NYU") Motion to Dismiss (the "Opposition" ECF No. 39).  *See* ECF No. 48.  In it, Mr. Zagoria provides the Court with entirely non-binding, non-persuasive, and inapposite opinions from a state court in Michigan, one in Ohio, and two district courts in Florida.  None of those courts considered, applied, or distinguished the ample binding New York and in-Circuit precedent that NYU has presented in its Motion to Dismiss Mr. Zagoria's claims.  None of these non-binding opinions changes the conclusion here:  Mr. Zagoria's claims should be dismissed.

Procedurally, the Notice is objectionable because it includes: (1) two cases which pre-date the filing of Mr. Zagoria's Opposition and thus should have been included, if at all, at that time; and (2) improper legal arguments that go beyond merely notifying the Court of the authorities. NYU therefore respectfully moves the Court to strike Mr. Zagoria's Notice to the extent it discusses cases that were available to him prior to the filing of his Opposition (and which he failed to include in his Opposition) and to the extent it includes improper legal argument.  If the Court does consider each of the cases and Mr. Zagoria's accompanying legal arguments, NYU respectfully submits that the cases shed no light on how this Court should apply New York law.

I.     **THE NOTICE SHOULD BE STRICKEN TO THE EXTENT IT INCLUDES CASES THAT PRE-DATE MR. ZAGORIA'S OPPOSITION AND IMPROPERLY INCLUDES LEGAL ARGUMENTS.**

A.     **The Court Should Not Consider *Milanov* and *Cross* Because They Were Decided Prior to Mr. Zagoria's Opposition.**

First, the Notice includes two out-of-state cases that Mr. Zagoria could have, but did not, include in his Opposition: *Milanov v. Univ. of Michigan*, 2020 Mich. Ct. Cl. LEXIS 1 (Jul. 27, 2020) and *Cross v. Univ. of Toledo*, 2020 WL 4726814 (Ohio Ct. Cl. Jul. 8, 2020).  *See* ECF No. 48 at 3, 6.  "[S]upplemental filings should direct the Court's attention to legal authority or evidence

1

that was *not available* to the filing party at the time that that party filed the original brief to which the subsequent supplemental filing pertains." *Barron v. Snyder's-Lance, Inc.*, 2014 WL 2686060, at *1 (S.D. Fla. June 13, 2014) (citation omitted; emphasis added); *see also Vega v. Semple*, 963 F.3d 259, 271, 283 (2d Cir. 2020) (permitting and considering supplemental authority regarding "new directive" issued after briefing was concluded); *United States v. Strock*, 2018 WL 647471, at *5 (W.D.N.Y. Jan. 31, 2018) (recognizing use of notice of supplemental authority to "address the *new authority* at issue") (emphasis added); *City of Bradenton v. Safety Nat'l Cas. Corp.*, 2017 WL 2448394, at *1 (M.D. Fla. June 6, 2017) (striking notice of supplemental authority "describing and attaching copies of five cases that were decided before [defendant] filed its motion for summary judgment").

NYU filed its Motion to Dismiss on August 3, 2020, and Mr. Zagoria filed his Opposition on August 17, 2020. *See* ECF Nos. 29–31, 38-39. *Milanov* was decided on July 27, 2020 – three weeks prior to the Opposition and *Cross* was decided on July 8, 2020 – nearly six weeks prior to the Opposition. *See* 2020 Mich. Ct. Cl. LEXIS 1; 2020 WL 4726814. Mr. Zagoria had a full and fair opportunity to include these cases and any associated argument in his Opposition and failed to do so. He cannot now use a notice of supplemental authority to remedy his failure and attempt to bolster his Opposition. Accordingly, NYU respectfully requests that the Court strike the references to *Milanov* and *Cross* from the Notice.

**B.     The Notice Improperly Sets Forth Legal Arguments.**

Second, the Court should strike improper legal arguments from the Notice. "In this Circuit, arguments raised for the first time in papers submitted after the parties' initial briefing 'need not be considered.'" *Strock*, 2018 WL 647471, at *5 (internal quotation omitted). The Court may grant a motion to strike where a notice of supplemental authority sets forth legal argument. *Solis*

*v. Commonwealth Fin. Sys., Inc.*, 2020 WL 2523047, at *2 (E.D.N.Y. May 15, 2020) (granting motion to strike); *see also Barron*, 2014 WL 2686060, at *2 (striking notice of supplemental authority that included "[t]wo pages of quotations and Plaintiffs' gloss as to the meaning of the[] cases"); *Eli Lilly & Co. v. Crabtree,* 485 F. Supp. 2d 982, 997 (S.D. Ind. 2006) (striking portions of legal argument from a notice of supplemental authority); *Seidman v. Paradise Valley Unified Sch. Dist. No. 69*, 327 F. Supp. 2d 1098, 1121 (D. Ariz. 2004) (same).  For example, in *Solis*, the plaintiff filed a notice of supplemental authority "[a]fter the motion was fully briefed," which "contained additional legal argument."  2020 WL 2523047, at *2.  The Court granted the motion to strike the improper legal arguments, holding "the Court declines to address any additional legal argument put forth in the Notice." *Id.*

Here, Mr. Zagoria goes well beyond merely notifying the Court of the authorities he cites; he repeatedly injects improper legal arguments throughout the seven-page "Notice."  The Notice quotes extensively from the cases and includes substantial detail regarding the parties' arguments and the courts' reasoning.  *See* ECF No. 48 at 1–7.  Such arguments are plainly improper for a notice of supplemental authority and should be stricken.

## II.     THE NON-BINDING CASES CITED DO NOT SALVAGE MR. ZAGORIA'S CLAIMS.

If the Court does consider each of the cases and Mr. Zagoria's improper legal arguments, (which it should not), NYU should be afforded "a fair opportunity to respond."  *Strock*, 2018 WL 647471, at *5 (quoting *Wilmington Savs. Fund Soc'y, FSB v. Universitas Educ., LLC*, 164 F. Supp. 3d 273, 292 (D. Conn. 2016)) (in considering notice of supplemental authority, the Court may only "'consider new arguments as long as the opposing party has a fair opportunity to respond'") (citation omitted).  Each of the cases cited by Mr. Zagoria is non-binding, out of Circuit, and inapposite.  None applies New York law, and none is persuasive.

A.      *Cross v. University of Toledo*

*Cross v. University of Toledo* is a non-binding, cursory, and inapposite decision that assessed claims under Ohio law and does not consider any of the New York precedent controlling here. *See* 2020 WL 4726814. The basis for the Court's holding that the plaintiff's claims were not impermissible claims for "educational malpractice" is not entirely clear and was made without the benefit of the plethora of New York case law NYU cited. In any event, in his Complaint and opposition brief, Mr. Zagoria expressly puts the quality of the education he received before and after NYU's transition to remote learning directly at issue by, for example:

- Alleging that online instruction is "of a different nature and of lesser value" (Compl., ECF No. 1, at ¶ 4);

- Claiming "online education devoid of campus interaction and facilities *plainly is not equivalent in nature or value* to the traditional in-classroom on-campus education for which NYUs students matriculated and paid" (*id.* at ¶ 25 (emphasis added));

- Arguing that the education Mr. Zagoria received is "not equivalent . . . and less valuable" than in-person education (*id.* at ¶ 24); and

- Admitting that the damages he seeks here are the "*difference between the value* of what NYU promised (in-person onsite instruction) and what NYU actually delivered (remote distance learning . . . )." *See* ECF No. 39 at 20 (emphasis added).

By Mr. Zagoria's own admissions, to adjudicate his claims the Court will necessarily have to assess the quality of Mr. Zagoria's education. New York law prohibits such claims. *See* ECF No. 30 at 7-9 (citing cases).

B.      *Milanov v. University of Michigan*

*Milanov v. University of Michigan* is similarly inapposite. *See* 2020 Mich. Ct. Cl. LEXIS 1. As an initial matter, it was decided under Michigan law, which does not have the same standard for pleading a breach of contract claim against a university. *See id.* at **14–15. Indeed, the *Milanov* Court acknowledged the lower standard when it held that, even though the plaintiffs had attached actual contracts to their papers, that:

4

> In fact, *it is not apparent that plaintiffs have identified an express contractual agreement* establishing their right to live, in-person instruction. Should it become clear at some point in the future that such an agreement does not exist, it could be grounds for revisiting summary disposition on Count I of the complaint as it concerns an express contractual right to live, in-person instruction. However, the Court will not dismiss Count I at the current time, for the reason that the allegations contained within the complaint are sufficient to fulfill plaintiffs' pleading obligations.

*Id.* at \*13 n.3 (emphasis added).  New York law does not permit such vague allegations; New York requires "a specific breached promise or obligation," *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 207 (S.D.N.Y. 1998), and "only *specific promises* set forth in a school's bulletins, circulars and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract."  *Keefe v. New York Law Sch.*, 71 A.D.3d 569, 570 (1st Dep't 2010) (emphasis added); *see also* ECF No. 30 at 13–16.

Second, New York law, unlike Michigan law, is clear that courts should not intervene in educational decisions.  *See* ECF No. 30 at 7–9; *see, e.g.*, *Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*, 2005 WL 1214281, at \*10 (S.D.N.Y. May 20, 2005); *Andre v. Pace Univ.*, 655 N.Y.S.2d 777, 897 (2d Dep't 1996); *Gertler v. Goodgold*, 107 A.D.2d 481, 485 (1st Dep't 1985), *aff'd* 66 N.Y.2d 946 (1985); *Paynter v. New York Univ.*, 319 N.Y.S.2d 893, 894 (1st Dep't 1971).  The *Milanov* Court did not consider or apply any of this authority when it found that it could review the complaint there at issue.  ECF No. 48 at 3. There, the Court noted that the university relied solely on *Regents of the University of Michigan v. Ewing*, 474 U.S. 214 (1985), which the Court found to be inapposite because it involved due process claims rather than contract claims.  *See id* at \*\*8-9.  As set forth in NYU's Motion to Dismiss, New York's precedent plainly applies to contract claims and requires dismissal.

Third, and similarly, the *Milanov* court did not consider any of the New York authority NYU cites regarding the doctrine of impossibility.  ECF No. 48 at 4.  As set forth in NYU's Reply

brief, the New York cases Mr. Zagoria cites in support of his argument that NYU is required to refund tuition even if its performance was rendered impossible involve impossibility of *full performance*, but here, NYU continued to provide the same classes, taught by the same faculty, which provided academic credits, and NYU conferred diplomas on thousands of students, including Mr. Zagoria; it only did so via remote instruction – a modality to which Mr. Zagoria agreed when he signed up for summer classes knowing full well that they would be remote.  *See* Defendant's Reply Memorandum of Law in Support of Motion to Dismiss, ECF No. 42 at 6, n.4. And, while the Court in Michigan determined that the plaintiff did not establish why impossibility could be asserted as an affirmative defense, Governor Cuomo's Executive Order undeniably prohibited in-person classes (*see* ECF No. 31-19), and New York courts have dismissed claims based on impossibility at the pleading stage.  *See* ECF No. 30 at 19 (citing to *Organizacion JD LTDA v. U.S. Dep't of Justice*, 18 F.3d 91, 95 (2d Cir. 1994) (affirming dismissal)).

Finally, *Milanov* is also distinguishable regarding the unjust enrichment claim.  There, the unjust enrichment claim was pled in the alternative, and the Court found it was sufficiently pled under Michigan law "because plaintiffs allege that they *received a lesser education* than that which they stood to receive from live, in-person instruction."  *See* 2020 Mich. Ct. Cl. LEXIS 1, at **17–20 (emphasis added).  Here, in contrast, Mr. Zagoria failed to plead his claim in the alternative (*see* ECF No. 42 at 10 (citing Compl. ¶¶ 51–61)), and any allegation that he "received a lesser education" invokes a requirement for the Court to evaluate the quality of a student's education, which is inappropriate under New York law.  (ECF No. 30 at 7–9).  And, of course, the *Milanov* Court did not consider any of the New York precedent that NYU cited in its Motion to Dismiss and which demonstrate why Mr. Zagoria's claim fails under New York law.  *See* ECF No. 30 at 21–24; ECF No. 42 at 8–10.

## C.     *Salerno v. Florida Southern College*

The Middle District of Florida's decision in *Salerno v. Florida Southern College* is distinguishable for numerous reasons.  *See* 2020 WL 5583522 (M.D. Fla. Sept. 16, 2020).  First, the *Salerno* Court, applying Florida law and examining the factual allegations pled there, allowed allegations that a contract existed for in-person instruction to proceed because "terms . . . *generally set forth* in university catalogs, student manuals, student handbooks, and other university policies and procedures" "*impl[ied]* in-person participation."  2020 WL 5583522, at **4–5.  Here, in contrast and as described above, New York law demands more specificity for a statement to form the basis of a breach of contract claim against a university and survive a motion to dismiss.  *See Doe v. Columbia Univ.*, 2020 WL 1528545, at *6 (S.D.N.Y. Mar. 31, 2020); *Keefe*, 71 A.D.3d at 570.  In *Doe*, the Court dismissed a breach of contract claim where the plaintiff failed to "make specific, non-conclusory allegations" regarding how the defendant university breached an alleged contract.  *Doe*, 2020 WL 1528545, at *6.  And in *Keefe*, the Court affirmed dismissal of a breach of contract claim because "only *specific promises* set forth in a school's bulletins, circulars and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract."  *Keefe*, 71 A.D.3d at 570 (emphasis added).  Measured against these standards, Mr. Zagoria's non-specific and broad allegations fail to state a claim.

Second, the *Salerno* Court, assessing Florida law, never addressed the requirement under New York law that a plaintiff must (and here Mr. Zagoria fails to) allege that the university acted in bad faith in breaching a purported contract.  *See* ECF No. 30 at 18–19; ECF No. 42 at 6–7 (citing *Rodriguez v. New York Univ.*, 2007 WL 117775 (S.D.N.Y. Jan. 16, 2007); *Matter of Olsson v. Bd. of Higher Educ. of City of N.Y.*, 49 N.Y.2d 408 (1980); *Babiker v. Ross Univ. School of Med.*, 2000 WL 666342, *6 (S.D.N.Y. May 19, 2000), *aff'd*, 86 F. App'x 457 (2d Cir. 2004)).

Third, the *Salerno* Court did not analyze NYU's defense of impossibility.  As explained in NYU's motion to dismiss, Governor Cuomo's Executive Order closing schools made it illegal for NYU to provide in-person instruction given the significant health threat associated with large gatherings.  *See* ECF No. 30 at 19–20; ECF No. 42 at 6.

Fourth, the *Salerno* Court, again applying Florida law, found that the allegations of that case were "not about the quality of the College's education."  ECF No. 48 at 2.  The Court does not provide an explanation of its reasoning, and NYU respectfully disagrees, but in any event, this case is different.  Here, as described above, Mr. Zagoria alleges repeatedly that his claims are about the quality of the education he received and as damages, he seeks a refund of tuition based on an alleged diminution in quality following the transition to remote instruction.  *See* ECF No. 39 at 20; Compl., at ¶¶ 4, 25, 27.  New York law prohibits such claims.  *See* ECF No. 30 at 7–9.

Finally, *Salerno* does not save Mr. Zagoria's unjust enrichment claim.  ECF No. 48 at 3.  As set forth in NYU's Motion to Dismiss, Mr. Zagoria fails to allege that NYU has "possessed money that in equity and good conscience [it] ought not to retain."  *See* ECF No. 30 at 22-25; ECF No. 42 at 9-10.  *Salerno* does not address such an argument.  And, in any event, under New York law, Mr. Zagoria cannot plead a claim that is duplicative of his contract claim.  ECF No. 30. at 21–22; ECF No. 42 at 10.  As a result, the *Salerno* Court's ruling under Florida law is inapplicable here.

### D.    *Rosado v. Barry University*

The Southern District of Florida's decision in *Rosado v. Barry University* is distinguishable for many of the same reasons as *Salerno*, which the *Rosado* Court was "persuaded by."  *See* 2020 WL 6438684, at *3 (S.D. Fla. Oct. 30, 2020); *supra* Section II(C).  This Court – applying New York law – need not be.

First, the Court there did not consider the argument NYU made here that pursuant to well-established New York precedent, courts should not intervene in educational decisions. *See Rosado*, 2020 WL 6438684; ECF No. 30 at 7-9.

Second, it did not consider the requirement under New York law that a plaintiff must (and here Mr. Zagoria fails to) allege that the university acted in bad faith in breaching a purported contract. *See Rosado*, 2020 WL 6438684; Section II(C).

*Rosado* is also distinguishable for additional reasons. Third, the Court found that the plaintiff there pled a specific and viable contract based on documents that generally "refer[ed] to in-person classes and amenities," the overall circumstances, the plaintiff's allegation that she "paid higher tuition and fees when she enrolled in Barry's on-campus program, rather than Barry's online courses, which cost substantially less" (*Rosado*, 2020 WL 6438684, at *1, *3), and that the university "accepted $773 more per credit for in-person classes from Rosado" (*id.* at *3). Under New York law, such circumstantial allegations (most of which are not pled here) are insufficient to state a breach of contract claim, and a plaintiff must instead point to specific language creating a contractual obligation to provide in-person instruction. *See id.*

Fourth, the university in *Rosado* argued for dismissal of the breach of contract claims on the basis that any breach "was *de minimis*, since Rosado would still earn credits toward a diploma." *Id.* at *4. NYU respectfully disagrees with the court's analysis that any breach resulting from the transition to remote instruction was not immaterial, but in any event, NYU's challenge to Mr. Zagoria's claims is broader, as he fails to state a claim because he does not "allege: (1) a specific promise by NYU sufficient to establish a contract [for in-person education]; (2) any breach of an alleged contract; or (3) any resulting damages or harm to him" under New York law. *See* ECF No. 30 at 12.

Fifth, the *Rosado* Court's impossibility holding is distinguishable.  While Florida may have had "overlapping and sometimes contradictory state and local regulations, and evolving standards, for dealing with the virus" (*id.* at *4), New York did not.  As set forth in NYU's Motion to Dismiss, Governor Cuomo issued clear and direct Executive Orders "clos[ing] all schools in the state, prohibit[ing] all large gatherings, and . . . ban[ning] all non-essential gatherings of individuals of any size for any reason."  *See* ECF No. 30 at 4 (quotation omitted).  As a result, it can hardly be disputed that it would have been illegal for NYU to continue in-person classes, which effectively "destroy[ed] the means of NYU's performance with respect to certain allegations in the complaint."  *Id.* at 20.  Indeed, Mr. Zagoria "admits that NYU's transition to remote learning was 'attributable to the COVID 19 pandemic and the shelter-in-place order' Governor Cuomo issued and that 'NYU may not bear culpability for the campus closures or the inability to provide any classroom instruction.'"  *Id.* (quoting Compl. ¶¶ 1, 2).

Finally, Mr. Zagoria argues that NYU put forth a waiver argument comparable to that in *Rosado,* but he misrepresents NYU's argument.  *See* ECF No. 48 at 6.  NYU never argued ratification, which is what the Court addressed in *Rosado*.  *See* ECF No. 48 at 6.  NYU's argument, in contrast, is that Mr. Zagoria lacks Article III standing to seek injunctive relief because he will not be taking NYU classes beyond the Summer 2020 term and therefore faces no threat of future harm.  *See* ECF No. 30 at 12.  *Rosado* did not analyze standing to seek injunctive relief and is inapplicable here.

## **CONCLUSION**

Respectfully, the Court should strike Mr. Zagoria's Notice to the extent it includes cases available to him at the time he filed his Opposition and improper legal arguments.  If the Court does consider this material, it is not persuasive.  These cases do not involve or apply clear New

York precedent, are non-binding, and distinguishable.   The Complaint should be dismissed with

prejudice for the reasons set forth in NYU's Motion to Dismiss.

Dated: November 11, 2020                              Respectfully submitted,

**DLA PIPER LLP (US)**

_/s/ Keara M. Gordon_
Brian S. Kaplan
Keara M. Gordon
Colleen Carey Gulliver
Rachael C. Kessler
1251 Avenue of the Americas
New York, New York 10020-1104
Phone: (212) 335-4500
Facsimile: (212) 335-4501
brian.kaplan@us.dlapiper.com
keara.gordon@us.dlapiper.com
colleen.gulliver@us.dlapiper.com
rachael.kessler@us.dlapiper.com

_Attorneys for Defendant New York
University_

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I am one of the attorneys for the defendant in this action and that on November 11, 2020, I caused a copy of the foregoing to be filed with the Court's ECF system, which will cause notice of its filing to be served electronically upon all counsel who have appeared in this action.

/s/ *Keara M. Gordon*
Keara M. Gordon